**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEIL DARISH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Neil Darish ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of public filings by Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased the publicly traded securities of Northern Dynasty from December 21, 2017 through November 25, 2020, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, purchased Northern Dynasty's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.      Defendant Northern Dynasty engages in the exploration of mineral properties in the United States. Its principal mineral property is the Pebble copper-gold-molybdenum project comprising 2,402 mineral claims that covers an area of approximately 417 square miles located in southwest Alaska (the "Pebble Project"). Northern Dynasty is incorporated in British Columbia, Canada with its principal executive offices located at 15th Floor, 1040 West Georgia Street, Vancouver, British Columbia, Canada V6E 4H1. The Company's securities are traded on New York Stock Exchange ("NYSE") under the ticker symbol "NAK."

8.      Defendant Ronald William Thiessen ("Thiessen") has served as Northern Dynasty's Chief Executive Officer ("CEO"), President, and Director throughout the Class Period.

9.      Defendant Mark C. Peters ("Peters") has served as Northern Dynasty's Chief Financial Officer ("CFO") since April 2019.

10.     Defendant Marchand Snyman ("Snyman") served as Northern Dynasty's Chief Financial Officer ("CFO") from August 2008 until April 2019.

11.     Defendant Tom Collier ("Collier") served as CEO of Pebble Partnership Limited, a subsidiary of the Company, until September 23, 2020.

12.     Defendants Thiessen, Peters, Synman, and Collier are sometimes referred to herein as the "Individual Defendants."

13.     Each of the Individual Defendants:

      (a)     directly participated in the management of the Company;

      (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

      (c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     Northern Dynasty is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Northern Dynasty under *respondeat superior* and agency principles.

16.     Defendants Northern Dynasty and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

17.     On December 21, 2017, Northern Dynasty announced in a press release that it was submitting a permit application to the U.S. Army Corps of Engineers ("USACE") for the Pebble Project, stating, in relevant part:

**December 21, 2017 Vancouver–** Northern Dynasty Minerals Ltd. (TSX: NDM; NYSE MKT: NAK) ("Northern Dynasty" or the "Company") announces that its wholly-owned US-based subsidiary Pebble Limited Partnership (the "Pebble Partnership") has finalized documentation and will file for a US Clean Water Act 404 permit with the US Army Corps of Engineers on Friday, December 22, thereby initiating federal and state permitting for the Pebble Project under the National Environmental Policy Act ("NEPA").

\*        \*        \*

"The project design we're taking into permitting includes a substantially reduced development footprint and meaningful new environmental safeguards that respond directly to the priorities and concerns we've heard from stakeholders in Alaska. Not only are we confident that Pebble as currently envisaged will secure development permits from federal, state and local regulatory agencies, we are confident it will co-exist with the world class fisheries of Bristol Bay and earn the support of the people of the region and the state."

Thiessen added, "Pebble continues to gain positive momentum, and we will have more progress milestones to announce in 2018."

**Development Highlights**

Under the development scenario the Pebble Partnership will submit for federal and state permitting on December 22, 2017:

- The footprint of Pebble's major mine facilities (pit, tailings storage facility) will be substantially smaller than previous planning iterations, at approximately 5.9 square miles;
- There will be no primary mine operations in the Upper Talarik watershed, minimizing the project's environmental footprint and addressing stakeholder concerns related to potential impacts on local salmon productivity;
- The Tailing Storage Facility ("TSF") will incorporate a more conservative design, including enhanced buttresses, greater slope angles and an improved factor of safety;
- Potentially acid generating tailings will be separated from other tailings and stored in a lined TSF. All tailings storage will be consolidated in a single drainage-area (the North Fork Koktuli);
- The mine plan does not include permanent waste rock piles, significantly reducing risks associated with water quality;
- Cyanide will not be used in the mineral recovery process at Pebble. (While cyanide is used safely in Alaska and around the world to enhance gold recoveries, Pebble has taken a decision not to employ it in direct response to stakeholder concerns);

- A new ferry route across Iliamna Lake will be evaluated in order to minimize road construction, stream crossings, bridges and culverts, as well as the proposed mine's impact on local wetlands; and
- The mine will be designed to withstand the greatest possible seismicity predicted by science.

**Community Benefits**

Anticipated benefits associated with the Pebble Project include:

- During mine operations, estimated annual payments to the Lake & Peninsula Borough will be $19-21 million; estimated annual payments to the State of Alaska will be $49-66 million per year;

- Total direct and indirect jobs created for Alaskans during mine operations will be 1,500-2,000;

- The Pebble Partnership will advance a revenue sharing plan to enhance local and regional financial benefits associated with development of Pebble;

- The project will align with State of Alaska public priorities by facilitating the development of low-cost energy for rural communities;

- The Pebble Partnership will work with local commercial fishing interests on ways to help with non-Pebble related challenges associated with price and run variability, and the decline of local participation in the fishery; and

- The Pebble Partnership will advance a business development and mentoring initiative to ensure that Alaska Native village corporations are ready to compete for construction and operations-phase contracts.

18.     On January 18, 2018, Northern Dynasty provided an update on the Pebble

Project's permit application via a press release, stating, in pertinent part, the following:

January 29, 2018 Vancouver- Northern Dynasty Minerals Ltd. (TSX: NDM; NYSE MKT: NAK) ("Northern Dynasty" or the "Company") confirms the Environmental Impact Statement ("EIS") permitting process for Southwest Alaska's Pebble Project continues to advance under the guidance of lead federal agency, the US Army Corps of Engineers (the "Corps").

*       *       *

Thiessen said Northern Dynasty believes EPA Administrator Scott Pruitt's announcement will have no effect on the process or outcome of regulatory permitting for the Pebble Project. "Nothing has changed," he said, noting that the EIS process initiated by the Corps earlier this month will continue to proceed efficiently and that no new environmental regulations or process steps have been introduced.

"We expect the permitting process for Pebble to advance expeditiously over the next few years, and that a draft and final EIS will be completed upon which final permitting decisions for the Pebble Project will be made," Thiessen said. "Ultimately, we believe the Pebble EIS will describe a project that protects clean water and the world-class fisheries of Bristol Bay, and presents the opportunity for substantial economic benefits for the people of the region and the state. We'd encourage all Alaskans and all interested stakeholders to participate fully in the thorough, objective and rigorous review of the Pebble Project."

19.     On March 29, 2018, the Company filed with the Canadian Securities Exchange Audited Financial Statements for the period ended December 31, 2017 (the "2017 Financials"). The 2017 Financials contained signed certifications by Defendants Thiessen and Snyman attesting to the accuracy of the financial statements and the disclosure of all fraud.

20.     The 2017 Financials stated the following concerning the Pebble Project's permitting:

As a result of the joint settlement, the Group through the Pebble Partnership, filed documentation for a CWA 404 permit with the US Army Corps of Engineers ("USACE") on December 22, 2017, thereby initiating federal and state permitting for the Pebble Project under the National Environmental Protection Act ("NEPA") which documentation was accepted as complete by the USACE in January 2018.

21.     Included with the 2017 Financials were a Management's Discussion and Analysis, which stated the following concerning the Pebble Project, in pertinent part:

Following four years of construction activity, the proposed Pebble mine will operate for a period of 20 years.

*       *       *

The development proposed in Pebble's Project Description is substantially smaller than previous iterations, and presents significant new environmental safeguards, including:

•a development footprint less than half the size previously envisaged;

•the consolidation of most major site infrastructure in a single drainage (the North Fork Koktuli), and the absence of any primary mine operations in the Upper Talarik drainage;

•a more conservative Tailings Storage Facility ("TSF") design, including enhanced buttresses, flatter slope angles and an improved factor of safety;

•separation of potentially acid generating ("PAG") tailings from non-PAG bulk tailings for storage in a fully-lined TSF;

•no permanent waste rock piles; and

•no secondary gold recovery plant (no cyanide usage).

22.    On April 1, 2019, the Company filed with the Canadian Securities Exchange Audited Financial Statements for the period ended December 31, 2018 (the "2018 Financials"). The 2018 Financials contained signed certifications by Defendants Thiessen and Snyman attesting to the accuracy of the financial statements and the disclosure of all fraud.

23.    The 2018 Financials stated the following concerning the Pebble Project's permitting:

The Group through the Pebble Partnership initiated federal and state permitting for the Pebble Project under the National Environmental Protection Act, by filing documentation for a Clean Water Act 404 permit with the US Army Corps of Engineers ("USACE") in December 2017. The USACE published a draft Environmental Impact Statement("DEIS") in February 2019 and is facilitating a formal consultation and public comment process with respect to the DEIS from March 1 through May 30, 2019.

24.    Included with the 2018 Financials were a Management's Discussion and Analysis, which stated the following concerning the Pebble Project, in pertinent part:

In the latter part of 2017, a project design based on a smaller mine concept was developed for the Pebble Project, as described in the Project Description which is part of the application for a CWA404 permit. The CWA404 permit application was submitted to the USACE on December 22, 2017, initiating federal permitting for the Pebble Project under NEPA. From April to August 2018, the Pebble Project was advanced through the Scoping Phase (including a public comment period) of the EIS process, with the resulting Scoping Document released by USACE on August 31, 2018. USACE released the Draft EIS on February 20, 2019.The Draft EIS envisages the project developed as an open pit mine and processing facility with supporting infrastructure, a significantly smaller development footprint than previously envisaged, and other additional environmental safeguards as described in the Project Description. It assesses the access route described in the Project Description as well as other alternatives.

*     *     *

Following four years of construction activity, the proposed Pebble mine will operate for a period of 20 years as a conventional drill-blast-shovel operation.

*     *     *

In response to stakeholder concerns, the footprint of the proposed development in the updated Project Description is substantially smaller than previously envisaged. The current mine plan proposal consolidates most major site infrastructure in a single drainage, and includes other new environmental safeguards:

• a more conservative Tailings Storage Facility ("TSF") design, including enhanced buttresses, flatter slope angles and an improved factor of safety;

• separation of potentially acid generating ("PAG") tailings from non-PAG bulk tailings for storage in a fully-lined TSF;

• co-storage of PAG waste rock within the PAG TSF and transfer of the PAG tailings and waste rock to the open pit at closure;

• no permanent waste rock piles; and

• no cyanide usage.

25.    On October 28, 2019, the Company reported that Pebble Partnership Limited CEO Tom Collier had appeared before a US Congressional Committee and Infrastructure's Subcommittee on Water Resources and the Environment to the Pebble Project, stating, in pertinent part:

October 28, 2019 Vancouver – Northern Dynasty Minerals Ltd. (TSX: NDM; NYSE American: NAK) ("Northern Dynasty" or the "Company") reports that on October 23, 2019, Pebble Limited Partnership ("Pebble Partnership" or "PLP") CEO Tom Collier appeared before the US Congressional Committee on Transportation and Infrastructure's Subcommittee on Water Resources and the Environment to discuss recent advances by the Pebble Project through the federal Environmental Impact Statement ("EIS") permitting process.

Collier said the Democrat-controlled committee invited six Pebble critics to appear as witnesses at the hearing, including paid activists and consultants, as well as himself. The CEO of Northern Dynasty's 100%-owned US subsidiary said it is clear that sworn opponents of the project are alarmed at the steady progress Pebble continues to make toward a Final EIS and Record of Decision ("ROD") from the US Army Corps of Engineers ("the Corps").

26.     On March 30, 2020, the Company filed with the Canadian Securities Exchange Audited Financial Statements for the period ended December 31, 2019 (the "2019 Financials"). The 2019 Financials contained signed certifications by Defendants Thiessen and Peters attesting to the accuracy of the financial statements and the disclosure of all fraud.

27.     The 2019 Financials stated the following concerning the Pebble Project's permitting:

The Group through the Pebble Partnership initiated federal and state permitting for the Pebble Project under the National Environmental Protection Act ("NEPA"), by filing documentation for a Clean Water Act ("CWA") 404 permit with the US Army Corps of Engineers ("USACE") in December 2017. The USACE published a draft Environmental Impact Statement ("Draft EIS") in February 2019 and completed a 120-day public comment period on the Draft EIS on July 2, 2019.  On July 30, 2019, the US Environmental Protection Agency announced that it has taken action to withdraw a Proposed Determination initiated under Section 404(c) of the CWA in 2014, which attempted to pre-emptively veto the Pebble Project before it received an objective, scientific regulatory review under NEPA.

28.     Included with the 2019 Financials were a Management's Discussion and Analysis, which stated the following concerning the Pebble Project, in pertinent part:

Following four years of construction activity, the proposed Pebble mine will operate for a period of 20 years as a conventional drill-blast-shovel operation.

\*       \*       \*

In response to stakeholder concerns, the current mine plan proposal has a smaller footprint, consolidating major site infrastructure in a single drainage. Other new environmental safeguards include:

• a more conservative Tailings Storage Facility ("TSF") design, including enhanced buttresses, flatter slope angles and an improved factor of safety;

• separation of potentially acid generating ("PAG") tailings from non-PAG bulk tailings for storage in a fully-lined TSF;

• co-storage of PAG waste rock within the PAG TSF and transfer of the PAG tailings and waste rock to the open pit at closure;

• no permanent waste rock piles; and

• no cyanide usage.

\*       \*       \*

During the fourth quarter, the Company advanced its Compensatory Mitigation Plan for the Pebble Project to address impacts to wetlands as required by the Clean Water Act. This plan was submitted to the USACE subsequent to quarter end. Five projects were delineated – sewer system improvements in three communities near the project, removal of marine debris, which poses hazards to wildlife along the beach near the site of the proposed port at Amakdedori, and culvert upgrades to remove Pacific salmon fish passage barriers.

29.     The statements referenced in ¶¶16-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Pebble Project was contrary to Clean Water Act guidelines and to the public interest; (2) the Company planned that the Pebble Project would be larger in duration and scope than conveyed to the public; (3) as a result, the Company's permit applications for the Pebble Project would be denied by the U.S.

11

Army Corps of Engineers; and (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

30.    On August 24, 2020, the U.S. Army released a statement concerning the Pebble Project, stating that it would result in "significant degradation of the environment and would likely result in significant adverse effects on the aquatic system or human environment." The U.S. Army further found that "the project, as currently proposed, cannot be permitted under section 404 of the Clean Water Act." The U.S. Army requested that the Company submit a mitigation plan in response to this finding.

31.    On this news, Northern Dynasty's stock price fell $0.55 per share, or 37.9%, to close at $0.90 per share on August 24, 2020.

32.    On September 21, 2020, the Environmental Investigation Agency (EIA) released a recording between investigators and Company executives that demonstrated that Northern Dynasty, contrary to previous public statements, actually planned to build a mine that would last up to 180 years. The EIA's press release stated, in relevant part:

> **Washington DC** — Today the Washington DC-based non-profit the Environmental Investigation Agency (EIA) released recordings of conversations between EIA investigators and executives of Pebble Limited Partnership and Northern Dynasty Minerals (Pebble), the companies behind the contested Pebble Mine project in Alaska. The recordings, which EIA has dubbed "The Pebble Tapes," reveal Pebble's plans to build a large and long-lived mine at the headwaters of Bristol Bay in western Alaska.
>
> ***The tapes also reveal Pebble's apparent plans to use the infrastructure included in its mine plan to open up other expansive swathes of western Alaska to mining, including through the activation of the Donlin Mine, a project that already has federal permits and could become economically viable overnight if the Pebble project is approved.***
>
> Tom Collier, the CEO of Pebble Limited Partnership, and Ronald Thiessen, the president and CEO of Northern Dynasty, of which Pebble is a wholly-owned

subsidiary, spoke with EIA investigators during August and September after the investigators expressed interest in investment opportunities related to the Pebble project. ***Their conversations, which were recorded, contain multiple statements by Collier and Thiessen that contradict, or in some instances color, previous public statements by company executives as well as assertions in official company materials that Pebble is intended to be only a small 20-year mine, as described in the Clean Water Act permit application for the project.***

Statements made by Collier in the recordings also call into question the Congressional testimony he submitted on behalf of Pebble regarding the company's plans for expansion. In October 2019, Collier submitted written testimony to the House Subcommittee on Water Resources and the Environment stating that, "Pebble has planned a smaller, smarter mine" and that it has "no current plans, in its application or in any other way, for expansion."

The proposal from Pebble considered in the Environmental Impact Statement (EIS) is for an operations phase for the mine that would last for 20 years with a daily process rate of 180,000 tons. The EIA recordings capture a different version of Pebble's plans indicating that the company envisions a project with a 180-200 year mine life, and with expansion after the first 20 years, including an expected increase in daily production rates to between 220,000 and 320,000 tons.

EIA Executive Director Alexander von Bismarck said, "These tapes show that potential investors are given an entirely different vision for this massive mine than the government and the public. We think that is important information to release. The public, and especially the people of Alaska, should know about the scope of a project with permanent impacts on one of the most pristine ecosystems on Earth."

When asked by investigators if growth of the mine past the scale currently applied for would be "unstoppable," Thiessen simply said "Yes." Then he explained further: "Once you have something like this in production why would you want to stop? And even, at the end of the day its footprint is so tiny. If we mined the whole valley it's 25 square miles." In another conversation, Thiessen asked, "Who's gonna stop a mine that has 180— at a 160,000 metric tons per day, the first deposit that we've discovered at Pebble – and there will be more – but the first one lasts 180 years."

In response to a question from EIA about expansion after the first 20 years Collier characterized the likelihood of expansion as almost 100%. He also explained how the recently-approved "northern corridor route" facilitates expansion, stating: "And so now we're going to be building a northern corridor. We'll have a slurry pipeline as part of it so the concentrate will go down to the coast by pipeline. And it makes a lot of things easier for us. It makes expansion much easier."

Pebble also told EIA that it plans to submit an application for expansion after the permit now being considered by the Army Corps of Engineers, is approved.

Thiessen confirmed, "during that twenty years, you're gonna make the application to continue for another twenty."

Similarly, Thiessen shared with EIA its interest in developing additional mines in the area saying, "Now Pebble itself has…425 square miles of mineral claims, and so there could be more mines on the Pebble lands over time…We have other sites that we've drilled into and we have ore-grade mineralization in other areas in that 425 square miles but we don't talk about it too much because right now we want people to focus on only Pebble…"

Pebble also confirmed its interest in using the infrastructure that will be put in place as part of the Pebble project to facilitate activation of the Donlin mine. According to Thiessen, the Donlin mine is economically unviable unless it can use the roads and pipelines that will be built by Pebble to export its ore. Thiessen explained, "There is another project that's 175 miles north of Pebble. It's called the Donlin Project… …there is a lot of logic to us joining forces to make a single corridor." Collier also weighed in stating, "if you flip the Pebble switch on, it's likely that you may be also flipping on the Donlin switch."

***"While the public is told this is a 20-year project, investors are told it will go for up to 200 years. While the public is told it will be 5 square miles, investors are told that it could spread over the entire valley and literally pave the way for other mines, hundreds of miles away," said von Bismarck.***

The Pebble Tapes cover discussions between EIA investigators and Pebble on a number of other topics including: the Alaska Governor, the Army Corps of Engineers, the Northern Corridor, Alaska senators, Alaska politics, corporate structure, water treatment, Trump Administration and EPA veto.

33.    On November 25, 2020, Northern Dynasty reported that the U.S. Army Corps of

Engineers had rejected its permit applications related to the Pebble Project, stating, in relevant

part:

> VANCOUVER, BC / ACCESSWIRE / November 25, 2020 / Northern Dynasty Minerals Ltd. (TSX:NDM) (NYSE American:NAK) ("Northern Dynasty" or the "Company") announces that today, its 100%-owned, US-based subsidiary Pebble Limited Partnership (the "Pebble Partnership") received formal notification from the US Army Corps of Engineers ("USACE") that its application for permits under the Clean Water Act and other federal statutes has been denied. The lead federal regulator found Pebble's 'compensatory mitigation plan' as submitted earlier this month to be 'non-compliant', and that the project is 'not in the public interest'.

34.     On this news, Northern Dynasty's stock price fell $0.40 per share, or 50%, to close at $0.40 per share on November 25, 2020, damaging investors.

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Northern Dynasty securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Northern Dynasty, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Northern Dynasty securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Northern Dynasty;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Northern Dynasty to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Northern Dynasty securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Northern Dynasty shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Northern Dynasty filed periodic public reports;

- Northern Dynasty regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Northern Dynasty's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Northern Dynasty was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

43.     Based on the foregoing, the market for Northern Dynasty securities promptly digested current information regarding Northern Dynasty from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder<br>Against All Defendants**

45.　　Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.　　This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.　　During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.　　Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Northern Dynasty securities during the Class Period.

49.　　Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Northern Dynasty were materially false and misleading; knew that such statements or documents would be issued or disseminated to the

18

investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Northern Dynasty, their control over, and/or receipt and/or modification of Northern Dynasty's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Northern Dynasty, participated in the fraudulent scheme alleged herein.

50.      Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Northern Dynasty personnel to members of the investing public, including Plaintiff and the Class.

51.      As a result of the foregoing, the market price of Northern Dynasty securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Northern Dynasty securities during the Class Period in purchasing Northern Dynasty securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

52.      Had Plaintiff and the other members of the Class been aware that the market price of Northern Dynasty securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they

would not have purchased Northern Dynasty securities at the artificially inflated prices that they did, or at all.

53.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

54.      By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Northern Dynasty securities during the Class Period.

<u>**COUNT II**</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

55.      Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.      During the Class Period, the Individual Defendants participated in the operation and management of Northern Dynasty, and conducted and participated, directly and indirectly, in the conduct of Northern Dynasty's business affairs. Because of their senior positions, they knew the adverse non-public information about Northern Dynasty's misstatement of revenue and profit and false financial statements.

57.      As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Northern Dynasty's financial condition and results of operations, and to correct promptly any public statements issued by Northern Dynasty which had become materially false or misleading.

58.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Northern Dynasty disseminated in the marketplace during the Class Period

concerning Northern Dynasty's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Northern Dynasty to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Northern Dynasty within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Northern Dynasty securities.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Northern Dynasty.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  December 4, 2020                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*