Regina Calcaterra
Janine L. Pollack
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036-5803
Tel: (212) 899-1760
Email: rcalcaterra@calcaterrapollack.com
        jpollack@calcaterrapollack.com

BERGER MONTAGUE PC
Sherrie R. Savett
Michael Dell'Angelo
Andrew Abramowitz
Donnell Much
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
        mdellangelo@bm.net
        aabramowitz@bm.net
        dmuch@bm.net

*Attorneys for Proposed Lead Plaintiffs*
*Movants Antonio Sierra Hernandez,*
*Jeremy Spears, and Christopher Wu*
*And Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL DARISH, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER,<br><br>       Defendants. | Case No. 1:20-cv-05917-ENV-RLM |

CHARLES HYMOWITZ, Individually and on behalf of all others similarly situated,

                      Plaintiff,

      v.

NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER,

                   Defendants.

Case No. 1:20-cv-06126-PKC-RLM

**MEMORANDUM OF LAW IN SUPPORT OF
MOVANTS ANTONIO SIERRA HERNANDEZ, JEREMY SPEARS,
AND CHRISTOPHER WU'S MOTION FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND................................................................................................ 3

ARGUMENT ........................................................................................................................ 6

I.      THE ACTIONS SHOULD BE CONSOLIDATED................................................... 6

II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF ................................. 7

        a.      The PSLRA Standard for Appointing Lead Plaintiff............................... 7
        b.      Movants are the "Most Adequate Plaintiff"............................................. 8
                i.      Movants' Motion Is Timely .......................................................... 8
                ii.     Movants Have a Substantial Financial Interest ............................ 8
                iii.    Movants Satisfy Rule 23's Typicality and Adequacy Requirements.......... 9
                        a.      Movants' Claims Are Typical of Those of the Class...................... 9
                        b.      Movants Satisfy the Adequacy Requirement of Rule 23 .............. 10

III.    MOVANTS' SELECTION OF LEAD COUNSEL MERITS APPROVAL...................... 12

CONCLUSION.................................................................................................................... 13

i

## TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................... 6

*Faig v. Bioscrip, Inc.*,
  No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) .............................. 10

*Ferrari v. Impath, Inc.*,
  2004 WL 1637053 (S.D.N.Y. July 20, 2004) ............................................................... 6

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  No. 08 MDL 1963 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ................................. 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .......................................................................................... 12

*In re Elan Corp. Sec. Litig.*,
  No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) .............................. 10

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ................................... 6

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
  No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016) .............................. 9

*Kemp v. Universal Am. Fin. Corp.*,
  No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ................................. 9

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016) ........................................................................... 9

*Lowinger v. Global Cash Access Holdings, Inc.*,
  No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) .............................. 6

*Martingano v. Am. Int'l Grp., Inc.*,
  No. 06CV1625(JG)(JMA), 2006 WL 1912724 (E.D.N.Y. July 11, 2006) .............................. 8

*Micholle v. Ophthotech Corp.*,
  No. 17-CV- 210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ......................... 8, 10

*Randall v. Fifth St. Fin. Corp.*,
  No. 15-cv-7759 (LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ................................. 9

*Smithtown Bancorp, Inc.*,
  No. 10-CV-01405 (SLT)(RER), 2011 WL 3511057 (E.D.N.Y. May 31, 2011) ...................... 9

ii

*Tan v. NIO, Inc., 19-CV-1424 (NGG)(VMS)*,
   2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ............................................................. 9

*Xu v. Gridsum Holding Inc.*,
   No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ...................... 6

**Statutes**

15 U.S.C. § 78u ............................................................. 1, 2, 6, 7, 8, 9, 11, 12

**Rules**

Federal Rule of Civil Procedure 42(a) ............................................................. 7

Rule 23 of the Federal Rules of Civil Procedure ............................................... 2, 9, 10

**Other Authorities**

1995 U.S.C.C.A.N. 730 ............................................................. 12

H.R. Conf. Rep. No. 104-369 ............................................................. 12

Proposed Lead Plaintiffs Antonio Sierra Hernandez, Jeremy Spears, and Christopher Wu ("Movants") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their Motion for the entry of an Order: (i) consolidating the above-captioned actions; (ii) appointing Movants as Lead Plaintiff on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company") between December 21, 2017 and November 25, 2020, both dates inclusive (the "Class Period"); (iii) approving Movants' selection of Berger Montague PC ("Berger Montague") as Lead Counsel and Calcaterra Pollack LLP ("Calcaterra Pollack") as Liaison Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Movants respectfully submit that they should be appointed Lead Plaintiff on behalf of all investors who acquired Northern Dynasty securities during the Class Period (the "Class") and who were damaged as a result of Defendants' alleged fraud. These actions (the "Actions") allege violations of Sections 10(b) and 20(a) of the Exchange Act against the Company and the individuals who served as Chief Executive Officer and Chief Financial Officer during the Class Period (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant or

---

[1] Copies of Movants' Certifications pursuant to the PSLRA are attached as Ex. A to the Declaration of Janine L. Pollack, Esq. ("Pollack Decl."), furnished herewith.

1

movants have the "largest financial interest" in the relief sought by the Class, and also whether such movant or movants have made a *prima facie* showing that they are typical and adequate Class representatives under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons stated herein, Movants respectfully submit that they are the "most adequate plaintiffs" under the PSLRA and should be appointed Lead Plaintiff. Movants have incurred a collective loss of $109,499 on their Class Period transactions in Northern Dynasty securities, calculated on both a last-in-first-out ("LIFO") basis and first-in-first-out ("FIFO") basis. Movants have the largest known loss of any other movant and a substantial financial interest in recovering losses attributable to Defendants' violations of federal securities laws.

Further, Movants satisfy the typicality and adequacy requirements of Rule 23 in that: (i) their claims arise from the same course of events as those of the other Class members, (ii) they rely on similar legal theories to prove Defendants' liability, and (iii) they have retained experienced counsel and are committed to vigorously prosecuting the claims.

Finally, pursuant to the PSLRA, Movants respectfully request that the Court approve their selection of Berger Montague as Lead Counsel and Calcaterra Pollack as Liaison Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Berger Montague is a nationally recognized leader representing investors in shareholder litigation and securities class actions for nearly fifty years, and has the expertise and resources necessary to handle this complex litigation. Calcaterra Pollack also has extensive experience representing investors in securities class actions and other complex litigation.

Accordingly, Movants respectfully request that the Court appoint them as Lead Plaintiff

2

for the Class, consolidate all pending and subsequent actions asserting violations of the federal securities laws arising from the same alleged misconduct, and approve their selection of Lead Counsel.

## FACTUAL BACKGROUND

Northern Dynasty, headquartered in Vancouver, British Columbia in Canada, engages in the exploration of mineral properties in the U.S. Its principal property is the Pebble copper-gold-molybdenum project located in southwest Alaska (the "Pebble Project").

The Class Period begins on December 21, 2017, when Northern Dynasty announced that it was submitting a permit application to the U.S. Army Corps of Engineers ("USACE") for the Pebble Project. In that press release, the Company stated that it "will file for a US Clean Water Act 404 permit" with the USACE, "thereby initiating federal and state permitting for the Pebble Project under the National Environmental Policy Act ('NEPA')." Defendants represented that "[t]he project design we're taking into permitting includes a substantially reduced development footprint and meaningful new environmental safeguards that respond directly to the priorities and concerns we've heard from stakeholders in Alaska." In particular, the Company touted the following "Development Highlights" associated with the Pebble Project:

- "The footprint of Pebble's major mine facilities (pit, tailings storage facility) will be substantially smaller than previous planning iterations, at approximately 5.9 square miles";

- "There will be no primary mine operations in the Upper Talarik watershed, minimizing the project's environmental footprint and addressing stakeholder concerns related to potential impacts on local salmon productivity";

- "The mine plan does not include permanent waste rock piles, significantly reducing risks associated with water quality"; and

- "The mine will be designed to withstand the greatest possible seismicity predicted by science."

3

Throughout the Class Period, Defendants made a number of additional statements, including in filings with the U.S. Securities and Exchange Commission ("SEC"), regarding the Pebble Project, its anticipated environmental impact, and thus the likelihood that the USACE would grant the Company the Clean Water Act permit for which it applied. These actions allege that Defendants' statements were materially false and/or misleading in that they failed to disclose that: (i) the Company's Pebble Project was contrary to Clean Water Act guidelines and to the public interest; (ii) the Company planned that the Pebble Project would be larger in duration and scope than conveyed to the public; and (iii) as a result, the Company's permit applications for the Pebble Project would be denied by the USACE.

Investors first began to learn the truth about the Pebble Project on August 24, 2020, when the U.S. Army released a statement to the effect that the Pebble Project would result in "significant degradation of the environment and would likely result in significant adverse effects on the aquatic system or human environment." The U.S. Army further found that "the project, as currently proposed, cannot be permitted under section 404 of the Clean Water Act." The U.S. Army requested that the Company submit a mitigation plan in response to this finding. On this news, Northern Dynasty's common share price fell $0.55 per share, or 37.9%, to close at $0.90 per share on August 24, 2020.

On September 21, 2020, the Environmental Investigation Agency ("EIA"), a Washington, DC-based nonprofit, released a recording between its own investigators and Northern Dynasty executives that revealed that, contrary to Defendants' public statements, the Company actually planned to build a mine that would last up to 180 years. According to the EIA's press release:

> The recordings, which EIA has dubbed "The Pebble Tapes," reveal Pebble's plans to build a large and long-lived mine at the headwaters of Bristol Bay in western Alaska.

*The tapes also reveal Pebble's apparent plans to use the infrastructure included in its mine plan to open up other expansive swathes of western Alaska to mining, including through the activation of the Donlin Mine, a project that already has federal permits and could become economically viable overnight if the Pebble project is approved.*

Tom Collier, the CEO of Pebble Limited Partnership, and Ronald Thiessen, the president and CEO of Northern Dynasty, of which Pebble is a wholly-owned subsidiary, spoke with EIA investigators during August and September after the investigators expressed interest in investment opportunities related to the Pebble project. *Their conversations, which were recorded, contain multiple statements by Collier and Thiessen that contradict, or in some instances color, previous public statements by company executives as well as assertions in official company materials that Pebble is intended to be only a small 20-year mine, as described in the Clean Water Act permit application for the project.*

\*\*\*

EIA Executive Director Alexander von Bismarck said, "These tapes show that potential investors are given an entirely different vision for this massive mine than the government and the public. We think that is important information to release. The public, and especially the people of Alaska, should know about the scope of a project with permanent impacts on one of the most pristine ecosystems on Earth."

\*\*\*

*"While the public is told this is a 20-year project, investors are told it will go for up to 200 years. While the public is told it will be 5 square miles, investors are told that it could spread over the entire valley and literally pave the way for other mines, hundreds of miles away," said von Bismarck.*

Emphasis added.

Finally, on November 25, 2020, Northern Dynasty reported that the USACE had rejected its permit applications related to the Pebble Project. The Company acknowledged that "the lead federal regulator found Pebble's 'compensatory mitigation plan' as submitted earlier this month to be 'non-compliant', and that the project is 'not in the public interest.'" On this news, Northern Dynasty's common share price fell $0.40 per share, or 50%, to close at $0.40 per share on November 25, 2020.

5

**ARGUMENT**

**I.      THE ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) ("[T]he Court shall not make the determination of the most adequate plaintiff until after the decision on the motion to consolidate is rendered.") (quotation marks omitted).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve common questions of law or fact." *Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) (quotation marks omitted). In securities class action cases, such as this one, courts have deemed consolidation particularly appropriate where the actions "are based on the same public statements and reports" if there are "common questions of law and fact and [if] the defendant will not be prejudiced." *Ferrari v. Impath, Inc.,* 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004). *See also Lowinger v. Global Cash Access Holdings, Inc*., No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008). "[S]light differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

Here, the Actions are well-suited for consolidation. Each Action alleges a substantially similar fraudulent scheme relating to similar parties, transactions, and events. Each Action asserts that Defendants made materially false and misleading statements and omissions concerning the Pebble Project, its environmental impact, and the prospect for obtaining Clean Water Act permits from the USACE. Because consolidation will promote judicial efficiency and conserve the

resources of the Class and all other parties, consolidation is appropriate pursuant to Federal Rule of Civil Procedure 42(a).

Accordingly, Movants respectfully request that the Court consolidate the Actions, as well as any subsequently filed actions.

## II.  MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

Movants respectfully submit that they should be appointed Lead Plaintiff because they filed the instant Motion in a timely manner, they have a substantial, if not the largest, financial interest in this litigation, and they satisfy the typicality and adequacy requirements of Rule 23.

### a.  The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

7

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as Lead Plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Martingano v. Am. Int'l Grp., Inc.*, No. 06CV1625(JG)(JMA), 2006 WL 1912724, at *3 (E.D.N.Y. July 11, 2006); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018). Under the criteria established by the PSLRA, Movants are the most adequate plaintiffs and should be appointed Lead Plaintiff.

       **b.**        **Movants are the "Most Adequate Plaintiff"**

          **i.**        **Movants' Motion Is Timely**

Movants have timely filed this Motion to serve as Lead Plaintiff. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed above-captioned action caused notice regarding the pending nature of this case to be published on *Business Wire,* a widely-circulated, business-oriented news wire service, on December 4, 2020. *See* Pollack Decl., Ex. B. Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before February 2, 2021. Movants have filed this Motion seeking appointment as Lead Plaintiff within this deadline and have thus satisfied the procedural requirements of the PSLRA.

          **ii.**        **Movants Have a Substantial Financial Interest**

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate

8

plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Movants have incurred a substantial loss of $109,499 on their Class Period transactions in Northern Dynasty securities calculated on both a LIFO and FIFO basis. *See* Pollack Decl., Ex. C. *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-01405 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff"). Accordingly, Movants have a substantial financial interest as qualified movants seeking Lead Plaintiff status and are presumptively the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same).

### iii.    Movants Satisfy Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Federal Rule of Civil Procedure 23." *See Tan v. NIO, Inc.*, 19-CV-1424 (NGG)(VMS), 2020 WL 1031489, at *2 (E.D.N.Y. Mar. 3, 2020); *see also In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016). At the lead plaintiff selection stage, all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016). Here, Movants satisfy both requirements.

### a.  Movants' Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and

9

plaintiff's claims are based on the same legal theory. *See Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Movants' claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movants allege that Defendants made material misstatements and omissions regarding Northern Dynasty's Pebble Project in violation of the federal securities laws. Like all the members of the Class, Movants purchased Northern Dynasty securities in reliance on Defendants' public statements, including their alleged misrepresentations and omissions, and were damaged thereby.

Because Movants' claims arise from the same course of events as the claims of all other Class members, the typicality requirement is satisfied. *See Micholle*, 2018 WL 1307285, at *6.

### b.  Movants Satisfy the Adequacy Requirement of Rule 23

In addition, Movants satisfy the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."

Courts in this District assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (quoting *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, No. 08 MDL 1963 (RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Movants will fairly and adequately represent the interests of the proposed Class. They have resources and motivation sufficient to pursue the above-captioned action to a successful

10

conclusion. As set forth in the Joint Declaration of Movants Antonio Sierra Hernandez, Jeremy Spears, and Christopher Wu furnished herewith, Movants are all sophisticated, experienced investors who are committed to jointly overseeing and directing their counsel, Berger Montague, in this litigation. In advance of filing this motion, Movants participated, both individually and jointly, in numerous telephone conferences and email correspondence with their counsel. Among other things, these communications addressed the lead plaintiff appointment process, issues related to the class form of the action, the claims and likely defenses of the parties, the schedule for the litigation, counsel's experience, and the strategy for maximizing a recovery. Movants also, together with their counsel, devised and agreed upon mechanisms to coordinate and jointly collaborate on periodic reporting, development of strategy, and oversight and stewardship of the litigation and counsel. In sum, Movants are committed to working together and have already developed and implemented a robust framework for partnership, if appointed as Lead Plaintiff. *See* Pollack Decl., Ex. D.

Moreover, Movants have retained experienced counsel with an enduring and extensive record of prosecuting securities class actions vigorously and efficiently, *see infra* Section III, and timely submitted their choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) & (B)(v).

Furthermore, no antagonism exists between Movants' interests and those of the absent Class members. Rather, they are aligned. Like all other Class members, Movants suffered substantial losses due to Defendants' alleged misconduct and, therefore have a sufficient and identical interest in the outcome of this case to ensure vigorous prosecution of the litigation for the benefit of all Class members.

Finally, there is no evidence to suggest that Movants are "subject to unique defenses that

11

render such plaintiff incapable of representing the class," because no such evidence exists. 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II). Accordingly, Movants satisfy the adequacy requirement.

### III.   MOVANTS' SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." H.R. Conf. Rep. No. 104-369, at 35 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Movants have selected the law firm of Berger Montague to represent the Class. Berger Montague has a long record of success in securities litigation and has achieved many of the largest securities recoveries since Congress enacted the PSLRA. The firm advises clients on litigation and recovery options in securities proceedings throughout the United States and internationally. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases, both within this District and beyond, where substantial settlements were achieved on behalf of investors, including: *In re Merrill Lynch Securities Litigation* (S.D.N.Y.) (recovery of $475 million); *In re Sotheby's Holding, Inc. Securities Litigation* (S.D.N.Y.) (a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant); *In re KLA Tencor Securities Litigation* (N.D. Cal.) (settlement of $65); *In re CIGNA Corp. Securities Litigation* (E.D. Pa.) (settlement of $93 million); and *In re Rite Aid Corp. Securities Litigation* (E.D. Pa.) (settlements totaling $334 million). *See* Pollack Decl., Ex. E.

In addition, Movants have selected the law firm of Calcaterra Pollack to serve as Liaison

Counsel. Calcaterra Pollack is a women-owned firm specializing, among other things, in securities, antitrust and consumer class actions. Its partners have over five decades of collective experience in complex federal and state litigation including experience representing individual and institutional investors in federal and state securities litigation, and on matters of corporate governance and shareholder rights. Calcaterra Pollack currently serves as Co-Counsel representing public pension and employee benefit funds operated by North America's largest public transportation authority in *Metropolitan Transportation Authority Defined Benefit Pension Plan Master Trust, et al. v. Allianz Global Investors U.S., LLC, et al.*, Case No. 1:20-cv-07842 (S.D.N.Y.). The complaint alleges negligence and breaches of contract and fiduciary duties in connection with over $200 million in losses sustained via an alternative investment fund (Structured Alpha 1000) trading in short and long index option positions. *See* Pollack Decl., Ex. F.

In light of the foregoing, by approving Movants' selection of Berger Montague as Lead Counsel and Calcaterra Pollack as Liaison Counsel for the Class, the Court can be assured that the Class will receive the highest quality representation. Thus, the Court should approve these selections.

### CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant their Motion and enter an Order: (i) consolidating the above-captioned actions; (ii) appointing Movants Antonio Sierra Hernandez, Jeremy Spears, and Christopher Wu as Lead Plaintiff; (iii) approving Movant's selection of Berger Montague as Lead Counsel and Calcaterra Pollack as Liaison Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: February 2, 2021          Respectfully submitted,

                    */s/ Janine L. Pollack*
                    Regina Calcaterra
Janine L. Pollack
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036-5803
Tel: (212) 899-1760
Email: rcalcaterra@calcaterrapollack.com
jpollack@calcaterrapollack.com

Sherrie R. Savett
Michael Dell'Angelo
Andrew Abramowitz
Donnell Much
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
       mdellangelo@bm.net
       aabramowitz@bm.net
       dmuch@bm.net

***Attorneys for Lead Plaintiff Movants***
***Antonio Sierra Hernandez, Jeremy Spears,***
***and Christopher Wu and Proposed Lead Counsel***
***for the Class***

14

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2021, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


                                    */s/ Janine L. Pollack*
                                    Janine L. Pollack

15