**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEIL DARISH, Individually and on behalf of all others similarly situated, <br><br>                Plaintiff, <br><br>       v. <br><br> NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER, <br><br>                Defendants. | Case No: 1:20-cv-05917-ENV-RLM <br><br> <u>CLASS ACTION</u> |
| CHARLES HYMOWITZ, Individually and on behalf of all others similarly situated, <br><br>                Plaintiff, <br><br>       v. <br><br> NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER, <br><br>                Defendants. | Case No: 1:20-cv-06126-PKC-RLM <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF JIM
MCCORMICK AND LAURENT MARTEL'S MOTION
FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS
<u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.     CONSOLIDATION OF THE ACTIONS IS APPROPRIATE .......................................... 4

II.    THE COURT SHOULD APPOINT MOVANTS AS LEAD PLAINTIFF ........................ 5

       A.     The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ............. 5

       B.     Movants Satisfy the Lead Plaintiff Provisions of the PSLRA ................................ 7

              1.     Movants Filed a Timely Motion ................................................................. 7

              2.     Movants Have the Largest Financial Interest in the Relief Sought ........... 8

              3.     Movants Meet Rule 23's Typicality and Adequacy Requirements ........... 9

                     a.     Movants' Claims Are Typical of the Claims of the Class ............ 10

                     b.     Movants Are an Adequate Representative.................................... 11

III.   MOVANTS' CHOICE OF COUNSEL SHOULD BE APPROVED............................... 13

CONCLUSION........................................................................................................................ 13

i

## TABLE OF AUTHORITIES

**Cases**

*Aude v. Kobe Steel, Ltd.*,
   No. 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018) ................ 10

*Batter v. Hecla Mining Co.*,
   No. 19-cv-4883(ALC), 2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. Mar. 25, 2020).................... 7

*Brady v. Top Ships Inc.*,
   324 F. Supp. 3d 335 (E.D.N.Y. 2018)................................................................................. 5, 8

*Chahal v. Credit Suisse Grp. AG*,
   No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) ......... 8

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ........ 8

*Dookeran v. Xunlei Ltd.*,
   No. 18-cv-467 (RJS), 2018 U.S. Dist. LEXIS 62575  (S.D.N.Y. Apr. 12, 2018)......... 10, 11, 12

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005)............................................................................................ 1, 9

*Faig v. BioScrip, Inc.*,
   No. 13 Civ. 06922 (AJN), 2013 U.S. Dist. LEXIS 178754 (S.D.N.Y. Dec. 19, 2013) ............ 10

*Ferrari v. Impath, Inc.*,
   No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004).................. 5

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011). ....................................................................................... 6, 9

*Ford v. VOXX Int'l Corp.*,
   No. CV 14-4183 (JS)(AYS), 2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015)............ 9

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)................... 11

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................................ 9

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)............................................................................................. 4, 5

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................... 13

*Martingano v. Am. Int'l Grp., Inc.*,
   No. 06-CV-1625 (JG) (JMA), 2006 U.S. Dist. LEXIS 47855 (E.D.N.Y. July 11, 2006) .......... 5

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998)....................................................................................... 8

*Omdahl v. Farfetch Ltd.*,
   No. 19-cv-8657 (AJN), 2020 U.S. Dist. LEXIS 103935 (S.D.N.Y. June 10, 2020).................. 6

*In re Orion Secs. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008).................... 10

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v.*
   *Fairfax Fin. Holdings Ltd.*,
   No. 11-cv-5097(JFK), 2011 U.S. Dist. LEXIS 117545 (S.D.N.Y. Oct. 12, 2011)................... 11

*Primavera Familienstifung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ........................................................................................... 5

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 10-cv-00864 (SLT) (RER), 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011) ..... 10

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006)...................... 8

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. Mar. 9, 2001) ............................................................................... 4

**Statutes**

15 U.S.C. § 78u-4 ..................................................................................................... passim

**Rules**

Fed. R. Civ. P. 42(a) ..................................................................................................... 4, 5

Fed. R. Civ. P. 23..................................................................................................... passim

Movants Jim McCormick and Laurent Martel (together, "Movants") hereby respectfully submit this Memorandum of Law in Support of Movants' Motion for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## **PRELIMINARY STATEMENT**

Presently pending before the Court are two securities class action lawsuits (the "Actions" or "Consolidated Action")[1] brought on behalf of a "Class" consisting of all persons and entities other than Defendants (defined below) that purchased or otherwise acquired Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company") securities from December 21, 2017 through November 25, 2020, both dates inclusive (the "Class Period"). The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Northern Dynasty and certain of its current and former senior officers ("Defendants").

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and

---

[1] The Actions pending in this Court include: *Darish v. Northern Dynasty Minerals Ltd., et al.*, Case No. 1:20-cv-05917-ENV-RLM, filed on December 4, 2020 (the "*Darish* Action"); and, *Hymowitz v. Northern Dynasty Minerals Ltd., et al.*, Case No. 1:20-cv-06126-PKC-RLM, filed on December 17, 2020 (the "*Hymowitz* Action").

1

adequacy requirements of Rule 23.") (internal quotations omitted).    Movants have lost $340,258.356 as a result of the alleged fraud during the Class Period.[2]  Movants believe that they have the largest financial interest in the outcome of the Actions.  Moreover, Movants satisfy the requirements of Rule 23 in that their claims are typical of the claims of the Class, and in that they will fairly and adequately represent the interests of the Class.

Accordingly, the Court should grant Movants' Motion in its entirety.

## FACTUAL BACKGROUND

Northern Dynasty engages in the exploration of mineral properties in the United States. ¶ 7.[3]  Its principal mineral property is the Pebble copper-gold-molybdenum project comprising 2,402 mineral claims that covers an area of approximately 417 square miles located in southwest Alaska (the "Pebble Project").  *Id*.  Northern Dynasty is incorporated in British Columbia, Canada with its principal executive offices located at 15th Floor, 1040 West Georgia Street, Vancouver, British Columbia, Canada V6E 4H1.  *Id*.  The Company's securities are traded on New York Stock Exchange under the ticker symbol "NAK."  *Id*.

On December 21, 2017, Northern Dynasty announced that it was submitting a permit application to the U.S. Army Corps of Engineers ("USACE") for the Pebble Project stating:  "Not only are we confident that Pebble as currently envisaged will secure development permits from federal, state and local regulatory agencies, we are confident it will co-exist with the world class fisheries of Bristol Bay and earn the support of the people of the region and the state."  ¶ 17.

---

[2]  Signed certifications identifying Jim McCormick's and Laurent Martel's transactions in Northern Dynasty, as well as a chart calculating their losses, and a joint declaration executed by them evidencing their intention to pursue the Consolidated Action in a cohesive and collaborative manner, are attached to the Declaration of Melissa A. Fortunato, dated February 2, 2021 ("Fortunato Decl."), as Exhibits 1, 2, and 3, respectively.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint for Violations of the Federal Securities Laws filed on December 4, 2020 in the *Darish* Action (the "Complaint").  ECF No. 1.  The facts set forth in the Complaint are incorporated herein by reference.

2

On March 29, 2018, the Company filed with the Canadian Securities Exchange Audited Financial Statements for the period ended December 31, 2017 (the "2017 Financials"). ¶ 19. The 2017 Financials stated that the Clean Water Act 404 permit documentation was accepted as complete in January 2018 and that after four years of construction activity, the proposed Pebble mine will operate for a period of twenty years. ¶¶ 20-21. The 2017 Financials also stated that the development would be substantially smaller than previous iterations and would include significant new environmental safeguards. ¶ 21.

The Company continued to indicate that it was making progress on the Pebble Project through its audited financial statement filings with the Canadian Securities Exchange for 2018 and 2019 although the project plan proposal had become smaller and included additional environmental safeguards. ¶¶ 22-28.

These statements were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Pebble Project was contrary to Clean Water Act guidelines and to the public interest; (2) the Company planned that the Pebble Project would be larger in duration and scope than conveyed to the public; (3) as a result, the Company's permit applications for the Pebble Project would be denied by the U.S. Army Corps of Engineers; and (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times. ¶ 29.

On August 24, 2020, the U.S. Army Corps of Engineers released a statement concerning the Pebble Project, stating that it would result in "significant degradation of the environment and would likely result in significant adverse effects on the aquatic system or human environment."

3

¶ 30. The U.S. Army Corps of Engineers further found that "the project, as currently proposed, cannot be permitted under section 404 of the Clean Water Act." *Id*. The U.S. Army Corps of Engineers requested that the Company submit a mitigation plan in response to this finding. *Id*.

On this news, Northern Dynasty's stock price fell $0.55 per share, or 37.9%, to close at $0.90 per share on August 24, 2020. ¶ 31.

On September 21, 2020, the Environmental Investigation Agency (EIA) released a recording between investigators and Company executives that demonstrated that Northern Dynasty, contrary to previous public statements, actually planned to build a mine that would last up to 180 years. ¶ 32.

On November 25, 2020, Northern Dynasty reported that the U.S. Army Corps of Engineers had rejected its permit applications related to the Pebble Project. ¶ 33.

On this news, Northern Dynasty's stock price fell $0.40 per share, or 50%, to close at $0.40 per share on November 25, 2020, damaging investors. ¶ 34.

## ARGUMENT

### I.    CONSOLIDATION OF THE ACTIONS IS APPROPRIATE

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]title has been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "Courts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990), *cert.*

4

*denied*, 498 U.S. 920 (1990)); *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 343 (E.D.N.Y. 2018) ("[I]n light of the highly similar allegations and claims in the two putative class actions against defendants, consolidation is appropriate in order to serve the interests of judicial economy."). Consolidation is particularly appropriate in securities class action litigation. *See Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625 (JG) (JMA), 2006 U.S. Dist. LEXIS 47855, at \*4-5 (E.D.N.Y. July 11, 2006) ("In securities class action cases…courts have deemed consolidation particularly appropriate where the actions 'are based on the same public statements and reports' if there are 'common questions of law and fact and [if] the defendant will not be prejudiced.'") (quoting *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at \*7-8 (S.D.N.Y. July 15, 2004)); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities class actions is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions here present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. The Actions name the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *Celotex*, 899 F.2d at 1285.

## II.   THE COURT SHOULD APPOINT MOVANTS AS LEAD PLAINTIFF

### A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead

5

plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

First, the PSLRA provides that (1) the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after the filing of the first complaint, and (2) any class member may move for appointment as Lead Plaintiff within 60 days after the date on which the notice is published. 15 U.S.C. § 78u-4(a)(3)(A); *see Foley v. Transocean Ltd*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by any purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." *Id*. The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Omdahl v. Farfetch Ltd.*, No. 19-cv-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *6 (S.D.N.Y. June 10, 2020). This presumption may be rebutted only upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

6

As set forth below, Movants have complied with the procedural prerequisites of the PSLRA and have, what is to the best of their knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movants are also unaware of any unique defenses against them that Defendants could raise. Therefore, Movants are entitled to the presumption that they are the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Consolidated Action.

**B.** **Movants Satisfy the Lead Plaintiff Provisions of the PSLRA**

As described in further detail below, Movants should be appointed lead plaintiff because they satisfy all of the requirements of the PSLRA. Movants filed a timely motion to be appointed lead plaintiff, hold the largest financial interest in the relief sought by the Class, and satisfy the typicality and adequacy requirements of Rule 23.

**1.** **Movants Filed a Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *Darish* Action published notice of the action on December 4, 2020, within 20 days of the filing of the first-filed complaint, through *Businesswire*, a widely circulated national business-oriented wire service. *See* Fortunato Decl., Ex. 4; *Batter v. Hecla Mining Co.*, No. 19-cv-4883(ALC), 2020 U.S. Dist. LEXIS 51665, at *7-8 (S.D.N.Y. Mar. 25, 2020) (finding that a notice published on *PRNewswire* satisfied Rule 23). The notice informed members of the proposed Class of the 60-day deadline to seek appointment as lead plaintiff, which is February 2, 2021. *See* Fortunato Decl., Ex. 4; 15 U.S.C. § 78u-4(a)(3)(A) and (B). Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movants timely move this Court to be appointed lead plaintiff on behalf of all members of the Class.

7

### 2.      Movants Have the Largest Financial Interest in the Relief Sought

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  As demonstrated herein, Movants have the largest known financial interest in the relief sought by the Class.  *See* Fortunato Decl., Ex. 2. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff.  *See Top Ships,* 324 F. Supp. 3d at 344-45, 349-50; *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *5-6 (S.D.N.Y. June 21, 2018); ("In deciding which proposed lead plaintiff has 'the largest financial interest in the relief sought by the class,' courts in this district tend to consider four criteria, known as the <u>Lax</u> factors . . . Courts generally find the fourth factor, [net loss suffered], to be the most compelling.") (emphasis in original, citations omitted); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *8 (E.D.N.Y. Mar. 2, 2007); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

Within the Class Period, Movants purchased Northern Dynasty securities in reliance upon the materially false and misleading statements issued by Defendants and were injured thereby. Movants have suffered substantial losses of $340,258.56 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements. *See eSpeed*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *Transocean Ltd.*, 272 F.R.D. at 129; *see also* Fortunato Decl., Ex. 2 (Loss Chart). Movants, thus, have a significant financial interest in the outcome of the Consolidated Action. To the best of Movants' knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.    Movants Meet Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See Ford v. VOXX Int'l Corp.*, No. CV 14-4183 (JS)(AYS), 2015 U.S. Dist. LEXIS 92705, at *6 (E.D.N.Y. Apr. 13, 2015) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012));

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591, at \*8 (S.D.N.Y. Apr. 4, 2018) ("The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements.").

As detailed below, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff.

### a.   Movants' Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  A plaintiff satisfies the typicality requirement if the plaintiff has:  (1) suffered the same injuries as the absent class members; (2) the injuries are as a result of the same course of conduct by defendants; and (3) the plaintiff's claims are based on the same legal issues that prove the defendant's liability.  *See Faig v. BioScrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 U.S. Dist. LEXIS 178754, at \*9 (S.D.N.Y. Dec. 19, 2013).  "The lead plaintiff's claims, however, 'need not be identical' to the claims of the class to satisfy this requirement."  *Id*.; *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at \*12 (S.D.N.Y. July 7, 2008) ("Indeed, [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal quotations omitted).

In this case, the typicality requirement is met because Movants' claims are identical to, and neither compete nor conflict with, the claims of the other Class members.  *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864 (SLT) (RER), 2011 U.S. Dist. LEXIS 88552, at \*12 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 U.S. Dist. LEXIS 62575, at \*7 (S.D.N.Y. Apr. 12, 2018)

10

(finding typicality requirement "easily met" when proposed lead plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants") (quoting *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11-cv-5097(JFK), 2011 U.S. Dist. LEXIS 117545, at *5 (S.D.N.Y. Oct. 12, 2011)).  Movants, like the other members of the Class, acquired Northern Dynasty securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby.  Thus, Movants' claims are typical, if not identical, to those of the other members of the Class because Movants suffered losses similar to those of other Class members and their losses were a result of Defendants' common course of wrongful conduct.  Accordingly, Movants satisfy the typicality requirement of Rule 23(a)(3).  *See Xunlei Ltd.*, 2018 U.S. Dist. LEXIS 62575, at *7.

Movants therefore satisfy the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### b.      Movants Are an Adequate Representative

Movants are also an adequate representative for the Class.  Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class."  Adequate representation will be found if:  "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Xunlei*, 2018 U.S. Dist. LEXIS 62575, at *6 (citation omitted); *see also In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and [they] ha[ve] retained competent and experienced counsel.").  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the

11

interests of the movant are clearly aligned with the members of the putative class and whether there is evidence of any antagonism between the interests of a movant and other members of the class. 15 U.S.C. § 78u-4(a)(3)(B).

Movants meet the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movants and those of the other members of the putative Class, but Movants have a significant and compelling interest in prosecuting the Consolidated Action based on the large financial loss they have incurred as a result of the wrongful conduct alleged therein. *See Xunlei*, 2018 U.S. Dist. LEXIS 62575, at *7 (Movants' "substantial losses provide a sufficient incentive to vigorously litigate this case"). Indeed, Movants have already taken steps which demonstrate that they both recognize and will protect the interests of the Class, including: (1) executing certifications detailing their Class Period transactions and expressing their willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; (3) committing to providing fair and adequate representation, overseeing counsel, and obtaining the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy, among other things (*see* Fortunato Decl., Ex. 3); and (4) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movants will prosecute the Consolidated Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movants sustained the largest amount of losses from Defendants' alleged wrongdoing, Movants are the presumptive lead plaintiff in

12

accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Consolidated Action.

### III.   MOVANTS' CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'").  The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movants have selected and retained BES as proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Fortunato Decl., Ex. 5), BES is highly accomplished in, and is currently acting as lead counsel in, a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of BES have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that if the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court:  (1) consolidate the above-captioned actions; (2) appoint Movants as Lead Plaintiff on behalf the Class; (3) approve Movants' selection of BES as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: February 2, 2021                        Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

13

By: */s/ Melissa A. Fortunato*
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email:  fortunato@bespc.com
Email:  passmore@bespc.com

*Counsel for Movants and Proposed*
*Lead Counsel for the Class*

14

## CERTIFICATE OF SERVICE

I, Melissa A. Fortunato, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 2nd day of February, 2021.

*/s/ Melissa A. Fortunato*
Melissa A. Fortunato

15