UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEIL DARISH, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER,<br><br>     Defendants. | Case No.  1:20-cv-05917-ENV-RLM<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LAWRENCE KELEMEN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION |
| CHARLES HYMOWITZ, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>NORTHERN DYNASTY MINERALS LTD., RONALD WILLIAM THIESSEN, MARK C. PETERS, MARCHAND SNYMAN, and TOM COLLIER,<br><br>     Defendants. | Case No.  1:20-cv-06126-PKC-RLM |

Movant Kelemen[1] respectfully submits this Memorandum of Law in further support of his motion for consolidation of the Related Actions, appointment as Lead Plaintiff on behalf of the Class and approval of his selection of Pomerantz as Lead Counsel for the Class (Dkt. No. 14); and in opposition to the competing motion of Hackney (Dkt. No. 8).[2]

## PRELIMINARY STATEMENT

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the litigation; and who satisfies the adequacy and typicality requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The movant or movant group who satisfies both of the foregoing statutory criteria is entitled to a strong presumption that it is the "most adequate plaintiff" of the Class—*i.e.*, the Lead Plaintiff—a presumption that can be rebutted only upon "proof" that the presumptive lead plaintiff is inadequate, atypical and/or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

It is uncontested that Kelemen is the "most adequate plaintiff" pursuant to the PSLRA. Of the movants before the Court, only Kelemen clearly satisfies both of the statutory criteria. *First*, having incurred a loss of *$636,738* in connection with his Class Period purchases of Northern Dynasty securities, Kelemen clearly has the largest financial interest in this litigation among any movants seeking to serve as Lead Plaintiff. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev*

---

[1] All capitalized terms herein are defined in Kelemen's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 15, 27.

[2] Initially four other movants or groups of movants filed similar competing motions: (1) the Hernandez Group (Dkt. No. 5); (2) McCormick and Martel (Dkt. No. 13); (3) Whitmore (Dkt. No. 10); and (4) Manzek and Mooney (Dkt. No. 19). Each of the foregoing movants has since filed a notice of non-opposition to the competing motions. *See* Dkt. Nos. 24-26, 28. Significantly, both the Hernandez Group and Whitmore noted in their respective notices of non-opposition that Kelemen appears to possess the largest financial interest in this litigation and is the presumptive lead plaintiff of the Class. Dkt. Nos. 24 at 2, 28 at 2.

*v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004). ***Second***, in addition to his significant financial interest, Kelemen has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23. *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

The only other remaining movant, Hackney, does not challenge Kelemen's status as the "most adequate plaintiff"—and thus the presumptive Lead Plaintiff—of the Class. Rather, Hackney seeks to be appointed as Co-Lead Plaintiff alongside Kelemen, with his choice of counsel approved as Co-Lead Counsel alongside Kelemen's proposed Lead Counsel, Pomerantz. Although Hackney does not dispute Kelemen's adequacy within the meaning of Rule 23, he argues that because Kelemen sold his Northern Dynasty securities ***after*** the first corrective disclosure that exposed the Defendants' fraud on August 24, 2020 and thus did not hold Northern Dynasty stock for the final three months of the Class Period, Kelemen supposedly "does [not] have any interest in proving the second disclosure was a disclosure of fraud, nor that it caused any damages." Dkt. No. 29 at 3. On this purported basis, Hackney argues that Kelemen "is not the . . . member[] of the purported plaintiff class . . . most capable of adequately representing the interests of the class members[.]" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).

Hackney's position is unavailing. First, absent any showing that the movants are prepared to coordinate their efforts effectively, courts generally disfavor co-leadership arrangements in PSLRA actions—even when ***all*** potential co-lead plaintiffs actually want to participate in a co-leadership structure. *See*, *e.g.*, *Elstein v. Net 1 UEPS Techs., Inc.*, 13 Civ. 9100 (ER), 2014 U.S. Dist. LEXIS 100574, at *17-*18 (S.D.N.Y. July 23, 2014); *In re*

2

*Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001); *Reimber v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411 (NRB) *et al.*, 2008 U.S. Dist. LEXIS 38729, at *8 (S.D.N.Y. May 9, 2008). Obviously when, as here, only *one* movant (Hackney) unilaterally advocates for a co-leadership arrangement, *against the objections* of the other movant (Kelemen), concerns about a group's willingness and ability to work collaboratively are even more compelling. Second, Hackney gives no reason to override this strong preference against appointing a co-leadership structure because Kelemen's sales of Northern Dynasty stock after the initial disclosure of the fraud on August 24, 2020 have no bearing whatsoever on his adequacy, nor provide any other reason to appoint Hackney as a Co-Lead Plaintiff. Rather, courts in the Second Circuit routinely appoint lead plaintiffs who, like Kelemen, held the securities at issue through a partial corrective disclosure and then sold their securities before the end of the Class Period. *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238-39 (E.D.N.Y. 2011); *Montoya v. Mamma.com Inc.*, Nos. 05 Civ. 2313 (HB) *et al.*, 2005 U.S. Dist. LEXIS 10224, at *6-*7 (S.D.N.Y. May 31, 2005); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, Nos. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *17-*18 (S.D.N.Y. Jan. 25, 2006). Indeed, it is hornbook law that "'when a complaint alleges an essential continuity of omissions or material misrepresentations, the claim of the class representative is considered typical for the class for the entire period from the date of the first objectionable report to the date of the full disclosure.'" *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 610 (S.D. Ohio 2003) (quoting Herbert & Alba Conte, 7 NEWBERG ON CLASS ACTIONS § 22.26). Kelemen individually is thus perfectly adequate and typical within the meaning of Rule 23 and thus qualified to serve as Lead Plaintiff without unsolicited assistance from Hackney.

Accordingly, for the reasons set forth herein and in his moving and opposition briefs, Kelemen respectfully requests that the Court grant his motion in its entirety and deny Hackney's request for co-leadership appointment alongside Kelemen.

## ARGUMENT

### A.     It Is Undisputed that Kelemen is the "Most Adequate Plaintiff" of the Class

No movant—Hackney included—has disputed that Kelemen is the "most adequate plaintiff"—and thus the presumptive Lead Plaintiff—of the Class in this litigation within the meaning of the PSLRA.   The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23.   *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).   Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.   15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Here, Kelemen is the most adequate class representative.   As discussed in detail in Kelemen's opposition brief, Kelemen has satisfied the PSLRA's requisite financial interest and Rule 23 criteria to secure the presumption that he is the "most adequate plaintiff" of the Class, and thus the presumptive Lead Plaintiff in this litigation.   *See* Dkt. No. 27.

No movant has contested Kelemen's satisfaction of the PSLRA's financial interest and Rule 23 criteria.   Two movants who initially filed competing motions—the Hernandez Group

4

and Whitmore—expressly acknowledged in their respective notices of non-opposition that Kelemen has the largest financial interest in this litigation and appears to be the presumptive lead plaintiff. *See* Dkt. Nos. 24 at 2, 28 at 2. Nor has Hackney disputed Kelemen's status as the presumptive lead plaintiff—rather, he concedes that Kelemen possesses the largest financial interest and does not challenge his satisfaction of the Rule 23 criteria. *See* Dkt. No. 29 at 2-3.

### B. Hackney's Request for Appointment to a Co-Leadership Role Should Be Denied

Hackney does not oppose Kelemen's appointment as Lead Plaintiff, but argues that because Kelemen sold all of his shares of Northern Dynasty stock on August 24, 2020, after the first corrective disclosure that revealed the Defendants' fraud, and thus did not hold any Northern Dynasty securities for the last three months of a 35-month Class Period, Kelemen's "financial interest only extends through the first part of the Class Period" and urges the Court to appoint Hackney as a Co-Lead Plaintiff alongside Kelemen in order to ensure that "[a] member with an interest in the Class Period between August 24th and November 25th" is in a position to represent the interests of similarly situated Class members. Dkt. No. 29 at 3.

For the reasons set forth below, the Court should deny Hackney's request.

### 1. Courts Disfavor the Appointment of Unrelated Investors and Multiple Firms to Co-Leadership Roles

First, courts generally decline to appoint unrelated investors as Co-Lead Plaintiffs and multiple firms as Co-Lead Counsel in PSLRA actions, absent a robust showing that the movants and firms are prepared to coordinate effectively and efficiently on behalf of the class. *Net 1 UEPS Techs.*, 2014 U.S. Dist. LEXIS 100574, at *17-*18 ("courts have required that unrelated plaintiffs ***make an evidentiary showing of their willingness and ability*** to serve as lead plaintiff") (emphasis added); *Razorfish*, 143 F. Supp. 2d at 309 (declining to appoint lead plaintiff group with "***no independent existence*** and . . . composite members [who] have ***no prior***

5

*relationship*") (emphases added); *Ambac Fin. Group*, 2008 U.S. Dist. LEXIS 38729, at *8 (appointment of lead plaintiff group "inappropriate where the group . . . has not evinced an ability (and a *desire*) to work collectively to manage the litigation") (emphasis added).

Considering that courts are wary of unrelated investor groups even in cases where *all* would-be group members actually desire to serve together as co-lead plaintiffs, all of the foregoing concerns about coordination and cohesiveness are obviously amplified where, as here, only one movant, Hackney, *unilaterally* advocates for a co-leadership structure, asking the Court to appoint him as a Co-Lead Plaintiff alongside Kelemen, *against* the wishes of Kelemen—who, again, is the *uncontested presumptive lead plaintiff*.  Hackney and Kelemen have no prior relationship with one another.  Each of them initially sought appointment as Lead Plaintiff individually, and Hackney only opportunistically sought to bootstrap his own motion onto Kelemen's after it became clear that Kelemen, not Hackney, was the presumptive lead plaintiff under the PSLRA.  Nor is there any obvious benefit that Hackney's involvement would bring to the prosecution of this action such that his appointment as a Co-Lead Plaintiff would be warranted.  As discussed *infra* at Section A.3., Kelemen is perfectly adequate and typical within the meaning of Rule 23 and thus qualified to represent the Class as the sole Lead Plaintiff in this litigation.  Under these circumstances, there is simply no reason to assume that granting Hackney's request to appoint him as a Co-Lead Plaintiff alongside Kelemen would yield a coherent and cohesive co-leadership structure that would benefit the Class.

### 2.   The Timing of Kelemen's Class Period Stock Sales Have No Bearing on His Adequacy

Second, even assuming *arguendo* that courts did *not* disfavor the type of co-leadership structure that Hackney proposes, Hackney's purported basis for seeking Co-Lead Plaintiff appointment—namely, that Kelemen sold his Northern Dynasty stock after the Company's fraud

6

first came to light on August 24, 2020—lacks merit.  In PSLRA actions, "courts have routinely appointed investors as lead plaintiff when they sell their shares of stock after a partial disclosure and are not holding any shares at the time of a later disclosure."  *FalconStor Software*, 277 F.R.D. at 238-39 (internal quotations omitted).  *See also Mamma.com*, 2005 U.S. Dist. LEXIS 10224, at *6-*7 (appointing lead plaintiff that sold securities at issue after a partial corrective disclosure preceding the end of the class period, finding that "loss causation does not require *full* disclosure and can be established by *partial* disclosure during the class period which causes the price of shares to decline") (emphases added); *Friedman, Billings, Ramsey Group*, 2006 U.S. Dist. LEXIS 3028, at *17-*18 (appointing lead plaintiff, finding movant "not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period" in "a case involving partial disclosures").  "It is now settled . . . that the claims of such a plaintiff are typical of the claims of the class if all of the documents relied upon are part of a common course of conduct or common scheme to defraud."  Alba Conte & Herbert B. Newberg, 7 NEWBERG ON CLASS ACTIONS § 22:26, at 126 (Thomson/West 4th Ed.) (footnote citing cases omitted).

Here, Kelemen acquired all of his shares of Northern Dynasty stock prior to August 24, 2020 and held Northern Dynasty shares at the time of the corrective disclosure that occurred on that date—which, as Hackney acknowledges, "caused the inflation in the stock to collapse" (Dkt. No. 29 at 2)—and then sold his shares later in the day on August 24, 2020, after the corrective disclosure which caused Kelemen to incur his Class Period losses.  Then, three months later, the second and final corrective disclosure—which further revealed the same fraudulent conduct initially disclosed on August 24, 2020—occurred on November 25, 2020, thereby ending the Class Period.  Thus, while Kelemen did not hold any shares at the end of the Class Period, he still incurred a significant loss—$636,738—as a result of the August 24, 2020 disclosure.  As an

investor who sold his shares of Northern Dynasty stock prior to the end of the Class Period but *after* a partial disclosure, Kelemen is identical in all relevant respects to the movants that courts of the Second Circuit appointed as lead plaintiffs in the *FalconStor Software*, *Mamma.com*, and *Friedman, Billings, Ramsey Group* actions.

Hackney has not argued that the timing of Kelemen's sales of Northern Dynasty stock has any bearing on the magnitude or recoverability of his losses. Nor has Hackney argued that selling his Northern Dynasty stock after the August 24, 2020 corrective disclosure renders Kelemen inadequate, atypical or subject to any unique defense. Hackney has only argued that Kelemen has no "interest in proving the second disclosure was a disclosure of fraud, nor that it caused any damages." Dkt. No. 29 at 3. Yet Kelemen, if appointed Lead Plaintiff, will obviously have every incentive to pursue as expansive a fraud theory as possible against the Defendants, in order to maximize the Class's total recovery, which will necessarily involve pursuing recovery of losses incurred in connection with *any* corrective disclosure of the alleged fraud. The mere timing of Kelemen's own purchases does not outweigh his incentive—and indeed, his fiduciary duty—to maximize the Class's recovery.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in his moving brief (Dkt. No. 15), Kelemen respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

Dated:  February 23, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lawrence Kelemen and Proposed*
*Lead Counsel for the Class*