```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NEIL DARISH, Individually and on
Behalf of All Others Similarly Situated,

                      Plaintiff,                              MEMORANDUM
                                                              AND ORDER

        -against-                                             20-cv-5917 (ENV)

NORTHERN DYNASTY MINERALS LTD.,
et al.,

                      Defendants.
------------------------------------------------------------x
CHARLES HYMOWITZ, Individually and on
Behalf of All Others Similarly Situated,

                      Plaintiff,

        -against-                                             20-cv-6126 (ENV)

NORTHERN DYNASTY MINERALS LTD.,
et al.,

                      Defendants.
------------------------------------------------------------x
```

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

## INTRODUCTION

On December 2, 2020, plaintiff Neil Darish filed a putative class action, <u>Darish v. Northern Dynasty Minerals Ltd., et al.</u>, on behalf of investors who purchased publicly traded securities of Northern Dynasty Minerals Ltd. ("Northern Dynasty" or "the Company") during the period from December 21, 2017 to November 25, 2020 (the "Class Period"). <u>See</u> Complaint (Dec. 4, 2020) ("Darish Compl.") ¶ 1, Electronic Case Filing Docket Entry ("DE") DE #1 in

20cv5917.[1] The Darish Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by Northern Dynasty and its executive officers, Ronald Thiessen, Mark Peters, and Marchand Snyman, as well Tom Collier, an officer of Pebble Partnership Limited, a subsidiary of Northern Dynasty (collectively, "defendants"). Darish Compl. ¶¶ 1-2, 7-12. A separate putative class action commenced on December 17, 2020, by Charles Hymowitz, alleges that the same defendants committed the same deceptive acts during the same Class Period as alleged in the Darish Complaint, and thereby violated the same laws and regulations. See Complaint (Dec. 17, 2020) ("Hymowitz Compl.") ¶¶ 1-2, 7-11, DE #1 in 20cv6126.

Currently pending before this Court are motions for consolidation of the above-captioned cases, as well as competing motions for the appointment of lead plaintiff and approval of lead counsel, filed on February 2, 2021 by the following movants and groups of movants: (1) Antonio Sierra Hernandez, Jeremy Spears, and Christopher Wu ("Hernandez Group") ("Hernandez Grp. Mot."), DE #5; (2) William Hackney ("Hackney") ("Hackney Mot."), DE #8; (3) Daryl Whitmore ("Whitmore") ("Whitmore Mot."), DE # 10; (4) Jim McCormick and Laurent Martel ("McCormick Group") ("McCormick Grp. Mot."), DE #13; (5) Lawrence Kelemen ("Kelemen") ("Kelemen Mot."), DE #14; and (6) Ryan Manzek and Michael Mooney ("Manzek Group") ("Manzek Grp. Mot."), DE #19. On February 3, 2021, the Honorable Eric N. Vitaliano entered an order referring the movants' competing motions to the undersigned magistrate judge. See

---

[1] Some of the submissions referenced herein were docketed into the court files of both of the above-captioned cases. Citations in this opinion are to the referenced docket entry in the first-filed case, Darish (20-cv-5917), except that the Complaint in the second-filed case, Hymowitz v. Northern Dynasty Minerals Ltd., 20cv6126, is cited herein as "Hymowitz Compl."

Order Referring Motion (Feb. 3, 2021) ("Referral Order").[2] For the reasons that follow, this Court grants Kelemen's motion for consolidation, appointment as lead plaintiff, and approval of lead counsel. The cases are hereby consolidated, Kelemen is appointed as lead plaintiff, and his choice of counsel, Pomerantz LLP, is appointed as lead counsel.[3]

## BACKGROUND

Northern Dynasty is a Canadian mineral exploration company that operates in the United States. See Darish Compl. ¶ 7. Its principal mineral property is the Pebble Project ("Pebble Project"), a collection of 2,402 mineral claims covering an area of approximately 417 square miles in southwest Alaska. See id. Northern Dynasty securities are traded on the New York Stock Exchange under the ticker symbol "NAK." See id.

Defendant Thiessen served as Northern Dynasty's Chief Executive Officer ("CEO"), President, and Director throughout the Class Period. Darish Compl. ¶ 8. Since April 2019, defendant Peters has served as Northern Dynasty's Chief Financial Officer ("CFO"). Darish Compl. ¶ 9. From August 2008 until April 2019, defendant Snyman was the Company's CFO. Darish Compl. ¶ 10. Until September 23, 2020, defendant Collier served as CEO of Pebble Partnership Limited ("Pebble Partnership"), Northern Dynasty's subsidiary. Darish Compl. ¶ 11.

---

[2] On February 17, 2021, Judge Vitaliano entered a separate order in the Hymowitz case, referring a motion to consolidate and to be appointed lead plaintiff, which was filed by the Hernandez Group and is identical to the motion it filed in Darish. See Order Referring Motion (Feb. 17, 2021) in 20cv6126.

[3] An order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation). See Fed. R. Civ. P. 72(a). Multiple courts, including ones in this District, have concluded that such motions are nondispositive. See, e.g., In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849 (NGG)(RER), 2006 WL 3511375, at *2 (E.D.N.Y. Dec. 6, 2006) (deciding that "[t]he parties' nondispositive motions to . . . appoint a lead plaintiff and lead counsel were thus properly addressed by [Magistrate] Judge Reyes."); Roofers' Pension Fund v. Papa, Civil Action No. 16-2805, 2017 WL 1536222, at *3 (D.N.J. Apr. 27, 2017) (finding that the Magistrate's Order regarding the appointment of a class action lead plaintiff and counsel was nondispositive per Fed. R. Civ. P. 72(a)); see also In re Sequans Commc'ns S.A. Sec. Litig., 289 F.Supp.3d 416 (E.D.N.Y. 2018) (magistrate judge resolves, in opinion and order, competing motions to be appointed lead plaintiff).

3

According to the complaints in both actions, these individuals made false representations to the public through press releases, statements to the Canadian Securities and Exchange, and statements before committees of the Congress of the United States, as described below. Darish Compl. ¶¶ 17-28.

Prior to 2020, Northern Dynasty made several statements to bolster public confidence that the U.S. Government would deem the proposed Pebble Project compliant with environmental laws. For example, the Company issued a press release indicating that its Pebble Project designs would include a "substantially reduced development footprint." Darish Compl. ¶ 17. On October 28, 2019, after defendant Collier, the CEO of Pebble Partnership, appeared before a U.S. Congressional committee, Northern Dynasty announced that it was making "steady progress" towards final governmental approval of the Pebble Project. See Darish Compl. ¶ 25. From March 2018 until March 2020, Northern Dynasty filed a series of financial statements and associated documents with the Canadian Securities Exchange, in which the Company represented, *inter alia*, that the Pebble Project would operate for a period of 20 years. See Darish Compl. ¶¶ 19-24, 26-28.

According to both complaints, Northern Dynasty's plans for the Pebble Project did not reflect the "reduced footprint" previously described to the public and governmental authorities; the Company intended for the Pebble Project to take shape on a grander scale. On August 24, 2020, the U.S. Army announced that the Project would result in "significant degradation of the environment" and that without a mitigation plan, the Army would reject the Pebble Project permits as proposed. See Darish Compl. ¶ 30. On the day of that announcement, Northern Dynasty's stock price fell 37.9 percent. See Darish Compl. ¶ 31. The following month, on September 21, 2020, the Environmental Investigation Agency ("EIA"), a Washington DC-based

non-profit, released a recording in which Company executives told investigators that the Pebble Project's footprint would be far larger and its operating life expectancy far longer (i.e., up to 180 years) than Northern Dynasty's previous public statements about the Project. See Darish Compl. ¶ 32. Furthermore, a project of the scope described by Northern Dynasty to EIA violated the Clean Water Act and was unlikely to secure U.S. government approval. See Darish Compl. ¶ 29. On November 25, 2020, the U.S. Army Corps of Engineers rejected permit applications for the Pebble Project, noting that the "compensatory mitigation plan" that Northern Dynasty submitted in November 2020 was "non-compliant," see Darish Compl. ¶ 33; with that news, the NAK stock price fell and, that day, its shares closed 50 percent lower than their opening price, see Darish Compl. ¶ 34.

The Darish and Hymowitz Complaints are substantially similar. Both propose the same Class Period, Darish Compl. ¶ 1; Hymowitz Compl. ¶ 1, allege the same causes of action, see Darish Compl. ¶ 2; Hymowitz Compl. ¶ 2, against the same defendants, Darish Compl. ¶¶ 7-11; Hymowitz Compl. ¶¶ 7-11. In pertinent part, the two pleadings rely on the same press releases and public filings as evidence of the alleged fraud, see, e.g., Darish Compl. ¶¶ 17, 18, 20, 21; Hymowitz Compl. ¶¶ 18, 19, 21, 22, and reference the same evidence that the share price dropped upon revelations that defendants' previous statements were misleading. See, e.g., Darish Compl. ¶¶ 30, 31; Hymowitz Compl. ¶¶ 31-33, 35. Both complaints allege that the governmental announcements on August 24, 2020 and November 25, 2020 were disclosures of fraud that resulted in NAK shareholder losses. See, e.g., Darish Compl. ¶¶ 30-31, 33-34; Hymowitz Compl. ¶¶ 31-32, 34-35.

On February 2, 2021, six putative class members filed motions asking the Court to consolidate the related actions, along with competing applications to appoint the movant as lead

5

plaintiff and approve their choice of class counsel.  See Hernandez Grp. Mot.; Hackney Mot.; Whitmore Mot.; McCormick Mot.; Kelemen Mot.; Manzek Grp. Mot.  On February 16, 2021, four movants — Hernandez Group, Whitmore, McCormick Group, and Manzek Group — filed notices of non-opposition to the appointment of a different lead plaintiff, with two such movants— Hernandez Group and Whitmore — characterizing Kelemen as presumptively the most appropriate lead plaintiff.  See Hernandez Grp. Notice of Non-Opposition, DE #24; Whitmore Notice of Non-Opposition, DE #28; McCormick Grp. Notice of Non-Opposition, DE #25; Manzek Grp. Notice of Non-Opposition, DE #26.  Therefore, only two motions — those of Kelemen and Hackney — remain pending.

## DISCUSSION

### I.  Notice Requirement and the Filing of Timely Motions

As an initial matter, the PSLRA requires that the plaintiff who files the first action publish notice to the class within 20 days of filing the action, in a widely circulated national business-oriented publication or wire service, advising members:

(I)  of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On December 4, 2020, the same day that Darish filed his complaint, Darish's counsel, The Rosen Law Firm, published a notice in *Business Wire* announcing that a securities class action had been filed against the aforementioned defendants.  See Ex. B to Declaration of Janine L. Pollack, DE #7-2; see also Ex. D to Declaration of Lucas E. Gilmore, DE #11-2; Ex. 1 to Whitmore Memorandum of Law, DE #12-1; Ex. C to Declaration of Jeremy A. Lieberman

("Lieberman Decl."), DE #17-3; Ex. 4 to Declaration of Melissa A. Fortunato, DE #18-4; Ex. B to Declaration of Javier Bleichmar, DE #21-2. The published press release advised those "who wishe[ed] to serve as lead plaintiff" to file the appropriate motion no later than February 2, 2021. See id. No moving party has challenged the adequacy of the December 4, 2020 notice, and the filing of a press release through *Business Wire* is an appropriate means of satisfying the PSLRA's notice requirement. See, e.g., Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (collecting cases).

Based on the December 4, 2020 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of the purported class expired on February 2, 2021. Accordingly, having been filed on or before February 2, 2021, all of the pending motions for appointment were timely filed with this Court. See Kelemen Mot.; Hackney Mot.

## II. Consolidation

In order "to avoid unnecessary cost or delay," a court may consolidate multiple actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). To determine whether consolidation is appropriate, district courts must consider:

> "[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple trial alternatives."

Brady v. Top Ships Inc., 324 F.Supp.3d 335, 343 (E.D.N.Y. 2018) (Bianco, J.) (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (alternations in original)). Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statement and reports[.]" Rauch v.

7

Vale S.A., 378 F.Supp.3d 198, 204 (E.D.N.Y. 2019) (quoting Constance Sczesny Tr. v. KPMG LLP, 223 F.R.D. 319, 322 (S.D.N.Y 2004)). Indeed, the consolidation of stockholder suits often benefits both the courts and the parties. See In re Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998); see also Kaplan v. Gelfond, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (the benefits of consolidation to courts and parties is a "well recognized" principle), reconsidered in part on other grounds sub nom. In re IMAX Sec. Litig., 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Here, all movants in both actions — including those who have withdrawn their requests to be appointed lead plaintiffs — have expressed support for consolidation, and defendants have not opposed it. See Brady 324 F.Supp.2d at 343. For example, Hackney advocates for consolidation because the complaints are "based upon the same alleged misconduct, name almost the same Defendants, allege similar class periods, overlap in class definition, and assert many of the same claims." Memorandum in Support (Feb. 2, 2020) at 4, DE #9. Similarly, Kelemen argues that "the Related Actions allege substantially the same wrongdoing[.]" Memorandum in Support (Feb. 2, 2020) ("Kelemen Mem.") at 5, DE #15.

Based on its review of the two complaints, this Court concurs that these cases involve common questions of law and fact. See Rauch, 378 F.Supp.3d at 204. Specifically, the pleadings assert the same causes of action based on the same alleged deception and resulting loss, over the same period against the same defendants, and seek similar relief. Notably, the complaints marshal much of the same evidence in describing the Company's deception and the revelations thereof. As the Court cannot discern any prejudice to defendants from consolidating these matters, and the substance of the two complaints is similar, if not identical, it is appropriate to consolidate them into a single case.

## III.     Appointment of Lead Plaintiff

As soon as practicable after reaching a decision on consolidation, a Court must appoint a lead plaintiff or plaintiffs.  See 15 U.S.C. § 78u-4(a)(3)(B)(ii) see also Constance Sczesny Tr., 223 F.R.D. at 322; Chitturi, 2020 WL 8225336, at *3.

The PSLRA establishes the procedure for the appointment of a lead plaintiff in an Exchange Act case.  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation.  See In re Olsten Corp., 3 F.Supp.2d at 294 ("By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" (quoting H.R. Rep. No. 104-369 at 32 (1995))).

Procedurally, the law directs the court "to appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (generally known as the "most adequate plaintiff").  15 U.S.C. § 78u-4(a)(3)(B)(i).  Courts follow a two-step process to determine the most adequate plaintiff.  See generally In re Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012).  In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently "rebutted" by a member of the purported plaintiff class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted "only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff –

>   (aa) will not fairly and adequately protect the interests of the class; or
>
>   (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

### A. Largest Financial Interest

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), but offers no statutory guidance for determining which plaintiff has the largest financial interest. See Takara Tr. v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses."); accord In re Gentiva, 281 F.R.D. at 117. Courts in the Second Circuit have adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First Merchs. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); accord Chitturi, 2020 WL 8225336, at *4; In

re Gentiva, 281 F.R.D. at 112. Most crucial to the Court's determination is the fourth factor – the approximate financial loss suffered. See Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Based on the record before the Court, Kelemen is the movant remaining in contention who has the largest financial interest: during the Class Period, Kelemen is alleged to have suffered losses totaling $636,738.[4] See Keleman Loss Chart, DE #17-2. As previously noted, in their notices of non-opposition, both the Hernandez Group and Whitmore referred to Keleman as the movant with the greatest financial interest. Hackney, the other movant remaining in contention, suffered losses totaling $210,590.16, see Hackney Loss Chart, DE #11-2, and concedes that Kelemen has a larger financial interest, see Reply in Support (Feb. 23, 2021) ("Hackney Reply") at 2, DE #30.

## B. Satisfaction of Rule 23

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., LLC, 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citation and quotations omitted). Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

---

[4] Keleman suffered greater financial losses than any other movant. The movants with the second greatest loss, the Manzek Group, suffered losses of $539,139, almost $100,000 less than Kelemen's loss. See Kelemen Memorandum of Law in Further Support (Feb. 16, 2021). at 4-5, DE #27.

11

In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether the lead plaintiff's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary showing that his or her claims satisfy the typicality and adequacy requirements of Rule 23. See <u>In re Olsten Corp.</u>, 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."); accord <u>In re</u> Gentiva, 281 F.R.D. at 112 (citation omitted). At this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification." <u>Weinberg v. Atlas Air Worldwide Holdings, Inc.</u>, 216 F.R.D. 248, 252-53 (S.D.N.Y. 2003) (citation and quotations omitted).[5]

Kelemen has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement. Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Brady</u>, 324 F.Supp.3d at 350 (quoting <u>In re</u> Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). Like other members of the putative class, Kelemen's claims arise out of "Defendants' misrepresentations or omissions" about the Pebble Project plans: specifically, the size of the footprint of the project, the projected duration of the project, and the likelihood that the U.S. Government would approve it. The Company's deception is alleged to have "artificially inflated" Northern Dynasty securities prices, and the subsequent revelation of this deception

---

[5] "[A]ny finding that Rule 23 requirements have been met at this stage do[es] not preclude a later challenge in the context of a Rule 23 class certification motion." <u>Ford v. Voxx Int'l Corp.</u>, No. 14-CV-4183(JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015).

caused the stock price to plummet.  See Reply In Support (Feb. 23, 2021) ("Kelemen Reply") at 6-7, DE #31.  Thus, Kelemen, as the movant with the largest financial interest in the litigation, has preliminarily demonstrated typicality under Rule 23(a).

Kelemen has also preliminarily satisfied the adequacy requirement of Rule 23(a).  The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Kaplan, 240 F.R.D. at 94 (citations omitted).  Based on Kelemen's submissions, the Court is satisfied that Kelemen's retained counsel, Pomerantz LLP, is experienced, competent, and well-qualified to conduct the class action securities litigation at hand.  See *infra* Part IV.  Kelemen maintains a sufficient financial interest in the outcome of the case to vigorously advocate on behalf of the class and, in his papers, he denies the existence of any conflicts of interest with absent class members, see Kelemen Mem. at 10, and none is apparent to the Court.

### C. Rebutting the Statutory Presumption

With respect to the next stage of the judicial inquiry, Hackney concedes that Keleman suffered the greatest loss but argues that because Kelemen sold his shares after the first but before the second alleged disclosure of the fraud, Kelemen has less "incentive and interest to prove the fraud continued . . . or that investors in the second half of the Class Period are entitled to any damages."  Hackney Reply at 3.  While conceding that Kelemen's status as an "in-and-out trader" is not "fatal" to Kelemen's motion for appointment as lead counsel, see id. at 2, Hackney argues that Kelemen requires a co-lead plaintiff (i.e., Hackney) "to adequately and most capably represent [stock buyers] after August 24, 2020[,]" id. at 3; see Response to Motion (Feb. 16,

13

2021) ("Hackney Response") at 3, 5, DE #29. Kelemen in turn objects to Hackney's appointment as co-lead plaintiff. See Kelemen Reply at 2-4, 5-6.

As Kelemen correctly observes, and Hackney does not dispute, investors who sell all or most of their holdings prior to the end of the class period may nonetheless serve as lead plaintiffs where they have adequately alleged loss causation based on a partial corrective disclosure of the fraud. See In re Gentiva, 281 F.R.D. at 115 ("Courts who have refrained from appointing [in-and-out traders as] lead plaintiffs have done so in the complete absence of partial corrective disclosures or in light of speculative or highly questionable partial disclosures."); Montoya v. Mamma.com Inc., No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) ("[L]oss causation does not require *full* disclosure and can be established by *partial* disclosure during the class period which causes the price of shares to decline."); Juliar v. Sunopta Inc., No. 08 CIV. 933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009); see also In re Gen. Elec. Sec. Litig., No. 09 CIV.1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009) (Chin, J.) (where the movant alleged an earlier partial disclosure, the fact that the movant sold shares during the class period did not "definitively detract" from its stated loss).

Applying this principle, courts have rejected in-and-out traders who failed to plausibly allege any partial disclosures to which they could tether their losses. See, e.g., Galmi v. Teva Pharm. Indus. Ltd., 302 F.Supp.3d 485, 500-04 (D. Conn. 2017) (a movant's financial interest in a securities fraud litigation is limited to trading losses attributable to a disclosure of fraud); Bensley v. FalconStor Software, Inc., 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (rejecting an in-and-out trader as a lead plaintiff where the court could not "confidently infer" that that movant's losses were preceded by a partial disclosure of the fraud); Sallustro v. CannaVest Corp., 93 F.Supp.3d 265, 275 (S.D.N.Y. 2015) (excluding from movant's financial loss calculation trading

14

losses predating the first partial corrective disclosure); Topping v. Deloitte Touche Tohmatsu CPA, Ltd. 95 F.Supp.3d 607, 618-19 (S.D.N.Y. 2015) (refusing to consider movant's assertion of an "ostensible partial disclosure" that "was not included in the original complaint" and that ran afoul of the 60-day deadline for moving for appointment as lead plaintiff).

Here, it is undisputed in connection with this motion that the August 24, 2020 U.S. Army statement about the Pebble Project, announced immediately prior to Kelemen's August 24, 2020 sale, was a *bona fide* partial corrective disclosure. See, e.g., Hackney Response at 2 ("The complaints and each movant recognize[ ] that [there] were only two disclosures which caused the inflation in the stock to collapse—one on August 24, 2020 and one on November 25, 2020."); see also Darish Compl. ¶ 30; Hymowitz Compl. ¶ 31. Further, none of the movants has disputed that Kelemen's trading losses during the Class Period are attributable to the disclosure of fraud. See Hackney Reply at 2 (acknowledging that Keleman has "recognizable losses" resulting from securities fraud). Like the in-and-out trader in Gentiva, Kelemen has adequately alleged, and the remaining movant concedes, that the U.S. Army's announcement on August 24, 2020 was a partial disclosure of the allegedly fraudulent nature of defendants' misrepresentation — to wit, that the U.S. government was likely to approve the Pebble Project — that was more fully revealed in the November 25, 2020 disclosure. See *In re* Gentiva, 281 F.R.D. at 115-16. In this case, as all of the disclosures alleged in the pleadings relate to the same fraud, and Kelemen plausibly alleges losses caused by the first partial disclosure, he does not face a "unique defense" relative to loss causation and is in a position to adequately represent investors who held shares that similarly lost value after the subsequent partial disclosure of fraud. See id. at 116.

Accordingly, Kelemen sustained the largest cognizable loss during the Class Period and no proof has been adduced to show him incapable of adequately representing the class. See 15

15

U.S.C. § 78u-4(a)(3)(B)(iii)(II). Therefore, at this stage, the PSLRA's statutory presumption has not been rebutted and Kelemen alone[6] is the most adequate lead plaintiff.

### IV. Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought under federal securities laws. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As is evident from the statutory language, "the lead plaintiff's right to select and retain counsel is not absolute – the court retains the power and the duty to supervise counsel selection and counsel retention." City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. March 9, 2009) (quoting In re Luxottica Grp., S.p.A. Sec. Litig., No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)). However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." Rauch, 378 F.Supp.3d at 211 (citation omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (citation and internal quotations omitted). The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of counsel solely "to protect the interests of the class[.]" See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); Rauch, 378 F.Supp.3d at 211.

---

[6] As Kelemen is the most adequate lead plaintiff, the Court need not and does not address Hackney's request to be appointed co-lead plaintiff, over Kelemen's objection.

16

Here, Kelemen has selected Pomerantz LLP as lead counsel and seeks this Court's approval of that selection. In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211. Pomerantz LLP has substantial experience litigating securities fraud class actions. Submitted to this Court is the firm's 54-page resume, providing a detailed description of the educational backgrounds and legal experience of over 40 of the attorneys at the firm. See Ex. F to Lieberman Decl. (Feb. 2, 2021), DE #17-6. The firm's resume also lists multiple securities class action suits filed in courts within the Second Circuit, as well as numerous others brought in courts across the nation, in which Pomerantz LLP has served as either lead or co-lead counsel. See id.; see also Kelemen Mem. at 11-12. No purported class members have offered any reason why Pomerantz LLP would be ill-equipped to serve as lead counsel in this case. This Court concludes, as have other courts in this Circuit, that based on the firm's experience, Pomerantz LLP is qualified to serve as lead counsel in securities law cases. See, e.g., Brady, 324 F.Supp.2d at 340, 352; In re Petrobras Sec. Litig., 104 F.Supp.3d 618, 624 (S.D.N.Y. 2015).

Accordingly, the Court approves Kelemen's selection of Pomerantz LLP to serve as lead counsel.

## CONCLUSION

For the reasons set forth above, the undersigned magistrate judge consolidates the two related cases, appoints Kelemen as lead plaintiff, and approves Pomerantz LLP as lead counsel. Hackney's motion for appointment of lead plaintiff and approval of lead counsel is rendered moot.

Any objection to this Memorandum and Order must be filed with the Honorable Eric N. Vitaliano by March 31, 2021, or will be deemed waived. The filing of an objection, without more, will not stay this Court's Order.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**March 17, 2021**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**