# EXHIBIT 2

EX-99.6 7 ex99-6.htm



**MANAGEMENT'S DISCUSSION AND ANALYSIS**

**YEAR ENDED DECEMBER 31, 2017**

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

*1.2.1.3 Legal Matters*

**Joint Settlement Agreement**

From 2014-2017, Northern Dynasty and the Pebble Partnership were focused on a multi-dimensional strategy that included legal and other initiatives designed to ward off a pre-emptive regulatory action by the EPA under the *Clean Water Act*. The strategy had a successful outcome.

On May 12, 2017, Northern Dynasty announced that the Pebble Partnership and the EPA had reached a joint settlement agreement over the federal agency's pre-emptive regulatory action. Key aspects of the agreement include:

• The EPA agreed the Pebble Project can proceed into normal course permitting under the CWA and NEPA, and that it cannot seek to utilize its authority under CWA 404(c) until such time as a final EIS has been completed by the USACE, so long as that occurs within a period of four years following the settlement agreement, and that the Pebble Partnership files permit applications within 30 months of the date of the settlement agreement.

• EPA further agreed to initiate a process to consider withdrawing the Proposed Determination it issued under CWA 404(c) in July 2014.  The beginning of this process was announced on July 11, 2017, and a public comment period concluded on October 17, 2017.  EPA suspended this process in January 2018 (see discussions below under *"Proposed Determination"*).

• The Pebble Partnership agreed to terminate permanently and with prejudice three lawsuits it brought against EPA: an action under the *Federal Advisory Committee Act*, an action challenging EPA's authority under the CWA; and an action under the *Freedom of Information Act*.

A copy of the joint settlement agreement is posted under the Company's SEDAR and EDGAR profiles at www.sedar.com and www.sec.gov, respectively.

The following is a chronology of the events and the actions and initiatives by Northern Dynasty and the Pebble Partnership that ultimately led to the joint settlement agreement.

*Environmental Protection Agency and Bristol Bay Watershed Assessment*

In February 2011, the EPA announced it would undertake a Bristol Bay Watershed Assessment study focusing on the potential effects of large-scale mine development in Bristol Bay and, specifically the Nushagak and Kvichak area drainages. This process was ostensibly initiated in response to calls from persons and groups opposing the Pebble Project for the EPA to pre-emptively use its asserted authority under Section 404(c) of the CWA to prohibit discharges of dredged or fill material in waters of the US within these drainages. However, evidence exists that the EPA may have been considering a Section 404(c) veto of the Pebble Project at least as far back as 2008 – two years before it received a petition from several Alaska Native tribes.

The EPA's first draft Bristol Bay Watershed Assessment ("BBWA") report was released on May 18, 2012. In the Company's opinion after review with its consultants, the draft report is a fundamentally flawed document. By the EPA's own admission, it evaluated the effects of a "hypothetical project" that has neither been defined nor proposed by the Pebble Partnership, and for which key environmental mitigation strategies have not yet been developed and, hence, would not yet be known. It is believed by the Company that the assessment was rushed – because it was based on studies conducted over only one year in an area of 20,000 square miles. In comparison, the Pebble Project has studied the ecological and social environment surrounding Pebble for over a decade. The EPA also failed to adequately consider the comprehensive and detailed data that the Pebble Partnership provided as part of its 27,000-page Environmental Baseline Document.

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

The EPA called for public comment on the quality and sufficiency of scientific information presented in the draft BBWA report. In response, the Pebble Partnership and Northern Dynasty made submissions on the draft report. Northern Dynasty made a presentation highlighting these shortcomings at public hearings held in Seattle, Washington, on May 31, 2012 and in Anchorage, Alaska, on August 7, 2012. In July 2012, the Company also submitted a 635-page critique of the draft report in response to the EPA's call for public comment, and called upon the EPA to cease such unwarranted actions until such time as a definitive proposal for the development of the Pebble deposit is submitted into the NEPA permitting process.

Concerns about the reasonableness of the basis of risk assessment in the draft EPA report were stated by many of the independent experts on the peer review panel assembled to review the BBWA, as summarized, in a report entitled *External Peer Review of EPA's Draft Document: An Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska* released in November 2012. In a wide-ranging critique of the draft report's methodology and findings, many peer review panellists called the EPA's effort to evaluate the effects of a "hypothetical mining scenario" on the water, fish, wildlife and cultural resources of Southwest Alaska "inadequate", "premature", "unreasonable", "suspect" and "misleading".

On April 26, 2013, the EPA released a revised draft of the BBWA report and announced another public comment and Peer Review period. The Pebble Partnership and Northern Dynasty made submissions on the revised draft. In late May 2013, Northern Dynasty filed a 205-page submission which describes the same major shortcomings as the original report published in May 2012.

In mid-January 2014, the EPA released the final version of its BBWA. The report still reflects many of the same fundamental shortcomings as previous drafts.

On February 28, 2014, the EPA announced the initiation of a pre-emptive regulatory action under Section 404(c) of the CWA to consider restriction or a prohibition on mining activities associated with the Pebble deposit in order to protect aquatic resources in southwest Alaska. In late April 2014, the Pebble Partnership submitted a comprehensive response to the EPA's February 28, 2014 notification letter.

*Statutory Authority action*

In late May 2014, the Pebble Partnership filed suit in the US District Court for Alaska and sought an injunction to halt the pre-emptive regulatory action initiated by the EPA under the CWA, asserting that, in the absence of a permit application, the action exceeds the federal agency's statutory authority and violates the Alaska Statehood Act among other federal laws. The State of Alaska and Alaska Peninsula Corporation, an Alaska Native village corporation with extensive land holdings in the Pebble Project area, later joined in the Pebble Partnership's lawsuit against the EPA as co-plaintiffs. On September 26, 2014, a US federal court in Alaska granted the EPA's motion to dismiss the case. This ruling did not judge the merits of the statutory authority case, it only deferred that hearing and judgment until after a final Section 404(c) determination has been made by the EPA. The Company also appealed the decision to grant the motion to dismiss to the 9th Circuit Court of Appeals. This appeal was denied in May 2015. The Pebble Partnership retained the option to pursue its statutory authority case in the instance that EPA finalized a pre-emptive regulatory action under the CWA, but this right was waived under the terms of the joint settlement agreement.

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

*Proposed Determination*

On July 18, 2014, EPA Region 10 announced a "Proposed Determination" to restrict the discharge of dredged or fill material associated with mining the Pebble deposit in a 268 square mile area should that disposal result in any of the following: loss of five or more miles of streams with documented salmon occurrence; loss of 19 or more miles of streams where salmon are not documented but that are tributaries of streams with documented salmon occurrence; the loss of 1,100 or more acres of wetlands, lakes, and ponds that connect with streams with documented salmon occurrence or tributaries of those streams; and stream flow alterations greater than 20 percent of daily flow in nine or more linear miles of streams with documented salmon occurrence. Northern Dynasty management did not accept that the EPA has the statutory authority to impose conditions on development at Pebble, or any development project anywhere in Alaska or the US, prior to the formal submission of a development plan and its thorough review by federal and state agencies including development of an Environmental Impact Statement and review under NEPA.

On September 19, 2014, the Pebble Partnership submitted a comprehensive legal and technical response to EPA Region 10's Proposed Determination. Northern Dynasty and the Pebble Partnership maintained that the Proposed Determination is flawed and unsupported by the administrative record as established by the Bristol Bay Watershed Assessment, and was therefore arbitrary and capricious.

As part of the settlement agreement announced on May 12, 2017, EPA agreed to initiate a process to withdraw the Proposed Determination that would have restricted the development of the Pebble Project. The beginning of this process was announced on July 11, 2017, and a public comment period concluded on October 17, 2017. On January 29, 2018, the Company announced that it acknowledged a statement issued by the EPA on January 26, 2018, indicating that the federal agency will continue to support Pebble's due process rights agreed to in the settlement agreement to allow for normal course permitting although it has suspended the process to consider the withdrawal of the pre-emptive regulatory action initiated under CWA 404(c) in July 2014.

*Federal Advisory Committee Act ("FACA") action*

On September 3, 2014, the Pebble Partnership initiated a second action against EPA in federal district court in Alaska charging that EPA violated the FACA due to the federal agency's close interactions with, and the undue influence of Environmental Non-Governmental Organizations and anti-mining activists in developing the BBWA, and with respect to its unprecedented pre-emptive regulatory action under the CWA. On September 24, 2014, the US federal court judge in Alaska released an order recognizing that the EPA agreed not to take the next step to advance its 404(c) regulatory action with respect to southwest Alaska's Pebble Project until at least January 2, 2015.

*Preliminary Injunction*

On November 24, 2014, a US federal court judge in Alaska granted the Pebble Partnership's request for a preliminary injunction in relation to the FACA case. While the preliminary injunction did not resolve the Pebble Partnership's claims that the EPA actions with respect to the BBWA and subsequent 404(c) regulatory action violated FACA, the decision permitted the further discovery process of the underlying facts to enable the court to issue a final decision on the merits of the FACA case. Granting of a preliminary injunction also reflected the court's view that PLP had a likelihood of prevailing on the merits of its case. On June 4, 2015, the federal court in Alaska issued an order denying the EPA's motion to dismiss this case.

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

The Pebble Partnership filed numerous requests for production of documents and received tens of thousands of documents produced by the EPA. The Pebble Partnership also served a number of notices of depositions for current and former EPA employees, EPA contractors and relevant third parties. More than a dozen depositions of EPA witnesses were completed. Additionally, the Pebble Partnership had asked the Court to compel the Agency and certain third parties to produce documents relevant to its FACA claims that are being improperly withheld. Had the Pebble Partnership prevailed in its FACA litigation against the EPA, the federal agency may have been unable to rely upon the BBWA as part of the administrative record for any regulatory action at the Pebble Project.

On October 27, 2016, the Pebble Partnership and the EPA filed a joint Notice in federal court stating their intent to enter into mediation in an effort to resolve ongoing litigation under FACA.

The Pebble Partnership and the EPA filed several joint Notices in federal court to stay the ongoing FACA litigation between December 30, 2016 and May 11, 2017, although the Court's November 2014 Preliminary Injunction remained in effect. During this period, the Pebble Partnership and the EPA engaged in direct discussions, which led to the joint settlement agreement announced on May 12, 2017.

*Freedom of Information Act ("FOIA") action*

On October 14, 2014, the Pebble Partnership filed suit in federal district court in Alaska charging that EPA has violated the FOIA by improperly withholding documents related to the Pebble Project, the Bristol Bay Watershed Assessment and consideration of a pre-emptive 404(c) veto under the CWA. The EPA moved for summary judgment claiming that its search for and disclosure of documents was adequate. The Pebble Partnership opposed the government's motion, pointing out several deficiencies in the EPA's search parameters and the agency's overly broad assertion of the deliberative process privilege to withhold documents. On August 24, 2015, the US federal court judge granted in part and deferred in part the EPA's motion for summary judgement on the FOIA litigation. The court accepted the EPA's position that it had made an adequate search for documents but left the matter open should the EPA not meet its obligations in the FACA litigation or if additional documents surface. Additionally, the judge ordered EPA to produce a sample of 183 partially or fully withheld documents so that it could conduct an in-camera review of the sample and test the merits of EPA's withholdings under the deliberative process privilege. Before producing this sample to the Court, EPA chose to voluntarily release 115 documents (or 63% of the sample ordered by the Court), relinquishing its claim of privilege as to these documents.

In briefings before the Court, the Pebble Partnership argued that the voluntary release of 63% of the agency's same documents conclusively demonstrated that the EPA had been over broad in its assertion of the deliberative process privilege, particularly because the content of the voluntarily released documents was not in fact deliberative. The Court agreed, finding that EPA "improperly withheld documents in full," and that "many of the documents that defendant released should have been released to begin with because the portions that defendant released were not deliberative." It then ordered the EPA to review an additional 65 documents. Of these 65 documents, the EPA voluntarily released 55 documents in whole or in part (or 85% of the documents). Given the EPA's high rate of release, the Pebble Partnership submitted a brief to the Court arguing that the EPA should be forced to review the remaining documents being withheld and arguing that judgment should not be granted to the agency at this time. The Court agreed, concluding that it had "no confidence that [EPA] has properly withheld documents, either in full or in part, pursuant to the deliberative process privilege." The Court reiterated its earlier finding that EPA had been withholding documents that "should never have been withheld to begin with." As a result, the Court ordered the Agency to re-evaluate all remaining documents EPA is withholding in response to the Pebble Partnership's January 2014 FOIA request and to submit these documents for in-camera review. After this review, the Court issued an order resolving Pebble's challenges to the remaining withholdings and forcing EPA, yet again, to produce additional documents that the agency had been improperly withholding for over two years.

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

*Office of the EPA Inspector General ("OIG") review*

Counsel for Northern Dynasty and the Pebble Partnership submitted numerous letters to the independent OIG since January 2014, raising concerns of apprehension of bias, process irregularities and undue influence by environmental organizations in the EPA's preparation of the Bristol Bay Watershed Assessment. In response to Congressional and other requests, on May 2, 2014, the OIG announced that it would investigate the EPA's conduct in preparing *An Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska*, "to determine whether the EPA adhered to laws, regulations, policies and procedures in developing its assessment of potential mining impacts in Bristol Bay, Alaska." On January 13, 2016, the OIG published its report (the "OIG Report"). While acknowledging significant "scope limitations" in its review and subsequent OIG Report, the OIG concluded that: "we found no evidence of bias in how the EPA conducted its assessment of the Bristol Bay watershed, or that the EPA pre-determined the assessment outcome," but that an EPA Region 10 employee may have been guilty of "a possible misuse of position."

Several other investigations of EPA conduct at Pebble contradict the OIG Report. The US Congress' House Committee on Oversight and Government Reform found "that EPA employees had inappropriate contact with outside groups and failed to conduct an impartial, fact-based review of the proposed Pebble mine." In addition, a report by former United States Senator and Defense Secretary William S. Cohen and his firm (further described below), said their investigation "raise(s) serious concerns as to whether EPA orchestrated the process to reach a pre-determined outcome; had inappropriately close relationships with anti-mine advocates; and was candid about its decision-making process."

The findings of the OIG Report did not materially affect the Pebble Partnership's strategy for addressing the EPA's CWA Section 404(c) regulatory action. The Company remained confident that the Pebble Project would ultimately enter federal and state permitting unencumbered by any extraordinary development restrictions, a belief borne out by the joint settlement agreement reached with EPA in May 2017.

*Cohen report*

In March 2015, William Cohen and his firm, The Cohen Group, assisted by the law firm DLA Piper, was retained by the Pebble Partnership to conduct an independent review of whether the EPA acted fairly in connection with its evaluation of potential mining in the Bristol Bay watershed. Secretary Cohen was requested to evaluate the fairness of EPA's actions and decisions in this matter based upon a thorough assessment of the facts and relying on his experience as a senior government official, as well as his 24 years as a member of the US Senate and House of Representatives.

A team of independent investigators employed by The Cohen Group and DLA Piper reviewed thousands of documents secured through FOIA requests and interviewed approximately 60 individuals involved with the EPA or its review of the Pebble Project. On October 6, 2015, Mr. Cohen released his report entitled *Report of an Independent Review of the United States Environmental Protection Agency's Actions in Connection with its Evaluation of Potential Mining in Alaska's Bristol Bay Watershed*. The report stated the conclusion of Mr. Cohen that he did not believe the EPA used the "fairest and most appropriate process" in its proposed pre-emptive regulatory action under the CWA.

Mr. Cohen urged policymakers to require that the permitting process under NEPA and the regulations developed by the Council on Environmental Quality (the "Permit/NEPA Process") be followed. Mr. Cohen commented that the Permit/NEPA Process is more comprehensive than the pre-emptive Section 404(c) action employed by the EPA and he could find no valid reason why that process was not used.

**Northern Dynasty Minerals Ltd.**
**Management's Discussion And Analysis**
**Year ended December 31, 2017**

The Cohen report also raised a number of concerns about the EPA's Bristol Bay Watershed Assessment study and the CWA Section 404(c) regulatory action, including possible prejudice and pre-determination of outcomes by the EPA, inappropriately close relationships between certain EPA officials and anti-mine advocates, EPA's candor with respect to certain actions it took, lack of consistency between the BBWA and the proposed determination, and lack of cooperation by EPA personnel with respect to Congressional queries and FOIA requests.

Northern Dynasty does not consider the Cohen report to constitute an "expert's" report but rather considers it to constitute an informed view of the Company's treatment by the EPA expressed by a person familiar with governmental due process goals. Mr. Cohen also appeared before a Congressional committee (House Committee on Science, Space and Technology) with respect to the findings in his report.

*US House Committee on Science, Space and Technology*

On February 22, 2017, the US House Committee on Science, Space and Technology Chairman, Lamar Smith, sent a letter to the EPA Administrator Scott Pruit recommending that "the incoming Administration rescind the EPA's proposed determination to use Section 404(c) in a pre-emptive fashion for the Pebble Mine in Bristol Bay, Alaska. This simple action would allow a return to the long-established CWA permitting process and stop attempts by the EPA to improperly expand its authority. Moreover, it would create regulatory certainty for future development projects that will create jobs and contribute to the American economy."

On March 7, 2018, Chairman of the US House Committee on Science, Space and Technology, Lamar Smith, Chairman of the US House Natural Resources Committee, Rob Bishop, and Chairman of the US Congressional Western Caucus, Paul Grossman, sent a joint letter to the EPA Administrator Scott Pruitt expressing "serious concerns" about the federal agency's January 26, 2018 announcement that it had suspended the process to withdraw the CWA 404(c) proposed determination initiated at the Pebble Project in July 2014. The joint letter recommended that "EPA clearly states that in the event that the scoping process undertaken by the Corps addresses all of the major issues identified in the 2014 proposed determination, that the EPA will withdraw the determination." The letter further states that "Using the Corps EIS process to inform the decision on the proposed determination will allow a return to the long-established Clean Water Act permitting process, enforcing the principles of due process and rule of law."

**Other Matters**

On February 14, 2017, short seller investment firm Kerrisdale Capital Management LLC published a negative piece (the "Kerrisdale Report") regarding the Pebble Project. Three putative shareholder class actions were filed against the Company and certain of its current officers and directors in US federal courts, specifically the Central District of California (Los Angeles) and the Southern District of New York (New York City). The cases are captioned: *Diaz v. Northern Dynasty Minerals Ltd. et al, Case No. 17-cv-01241 (C.D. Cal.); Kirwin v. Northern Dynasty Minerals Ltd. et al, Case No. 17-cv-01238 (S.D.N.Y.); and Schubert v. Northern Dynasty Minerals, Ltd., et al., Case No. 1:17-CV-02437 (S.D.N.Y.)*. The complaints appear to rely on the claims made in the Kerrisdale Report and allege damages to a class of investors who purchased shares of the Company prior to the publication of the Kerrisdale Report and allege liability for losses pursuant to Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5 thereunder, as well as control person liability against the individual defendants pursuant to Section 20(a) of the Exchange Act.

The plaintiffs in both the *Kirwin* and *Schubert* actions voluntarily dismissed their claims without prejudice. The plaintiffs in the *Diaz* action continue to litigate and filed an amended complaint. The Company filed a motion to dismiss the complaint and the plaintiffs have filed a motion opposing the dismissal to which the Company replied in March 2018. The Company believes that the allegations in the remaining complaint are without merit, and it intends to defend itself vigorously in the *Diaz* action.