**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE NORTHERN DYNASTY
MINERALS LTD. SECURITIES
LITIGATION

Case No. 1:20-cv-05917-ENV-TAM

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF
ORDER PRELIMINARILY APPROVING SETTLEMENT AND
ESTABLISHING NOTICE PROCEDURES**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT .................................. 2

III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
     SETTLEMENT PURPOSES ................................................................................... 4

     A.  Numerosity .................................................................................................. 5

     B.  Commonality ............................................................................................... 6

     C.  Typicality .................................................................................................... 7

     D.  Adequacy .................................................................................................... 8

          (i)   Adequacy of the Proposed Class Representatives ...................... 8

          (ii)  Rule 23(g) Adequacy of the Proposed Class Counsel ............... 9

     E.  Common Questions Predominate and a Class Action Is Superior to Other
         Methods of Adjudication ......................................................................... 10

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
     APPROPRIATE.................................................................................................. 12

     A.  Standards for Preliminary Approval ....................................................... 12

     B.  Plaintiffs and Their Counsel Have Adequately Represented the Class ............... 14

     C.  The Proposed Settlement Is the Result of Arm's-Length Negotiations by
         Informed, Experienced Counsel............................................................... 14

     D.  The Relief Provided to the Class Is Adequate ....................................... 15

          (i)   The Substantial Benefits for the Class, Weighed Against the Costs,
                Risks and Delay of Trial and Appeal Support Preliminary Approval ...... 15

          (ii)  The Proposed Method for Distributing Relief Is Effective...................... 19

          (iii) Attorneys' Fees, Reimbursement of Expenses, and Awards to
                Plaintiffs ................................................................................ 20

          (iv)  The Parties Have An Agreement Regarding Opt-Outs............................ 21

     E.  There Is No Preferential Treatment; The Plan Of Allocation Treats
         Settlement Class Members Equitably ...................................................... 21

V.  THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
    CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE
    PROCESS ....................................................................................................... 22

VI.  PROPOSED SCHEDULE OF EVENTS .............................................................. 25

VII.  CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..........................................................................10

*Allen, et al., v. PixarBio Corp., et al.*,
    Case No. 2:17-cv-00496 (D.N.J) ..........................................................................................24

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................4, 11, 12

*Baker v. SeaWorld Entm't, Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ..........................................................................24

*Cagan v. Anchor Sav. Bank FSB*,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................................19

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................................................13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007).....................................................................................................6

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................................15, 19

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)....................................................................................22

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).......................................................................................................6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................................................14

*Enriquez v. Nabriva Therapeutics
    plc*, 1:19-cv-04183 (S.D.N.Y. May 14, 2021) .......................................................................20

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ...........................................................................................10

*Fogarazzao v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990).............................................................................7

*Graham v. Capital One Bank (USA), N.A.*,
  2014 WL 12579809 (C.D. Cal. July 29, 2014).............................................24

*Haddad v. Northern Dynasty Minerals Ltd. et al.*,
  Case No. VLC-S-S-2012849 ...........................................................................5

*Hayes v. Harmony Gold Min. Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ................................................20

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...............................................21

*Hymowitz v. Northern Dynasty Minerals Ltd., et al.*,
  Case No. 20-cv-6126-ENV (E.D.N.Y. Dec. 17, 2020)............................2, 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................9, 24

*In re Akers Biosciences, Inc., Sec. Litig.*,
  Case No. 18-cv-10521 (D.N.J.) .....................................................................24

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................16, 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)............................................................................11

*In re BioScrip, Inc. Sec. Litig.*,
  273 F. Supp. 3d 474 (S.D.N.Y. 2017)............................................................20

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................21, 22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................6, 7, 8, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ......................................................................7

*In re ForceField Energy Inc. Sec. Litig.*,
  Case No. 1:15-cv-3020-NRB (S.D.N.Y.) ......................................................24

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................6, 18

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................15

*In re Indep. Energy Holdings PLC*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......................................................14

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................8, 12, 18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .....................................................................................15

*In re Northern Dynasty Minerals Ltd. Securities Litigation*,
    Case No. 1:20-cv-05917-ENV-TAM (E.D.N.Y.) ......................................................2

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .............................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................20

*In re: Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) .................................................................................9

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................................................16, 21

*In re Silver Wheaton Corp. Sec. Litig.*,
    Case No. 2:15-cv-05146 (C.D. Cal.) .........................................................................24

*In re Tangoe, Inc., Sec. Litig.*,
    Case No. 3:17-cv-00146 (D. Ct.) ..............................................................................24

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
    2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) .........................................................21

*In re USA Technologies, Inc. Sec. Litig.*,
    Case No. 1:19-cv-04565 (E.D. Pa.) ..........................................................................24

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................6, 7

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986)......................................................................16

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)....................................................................7

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ...............................................................4

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......................................20

*Leung v. Home Boy Rest. Inc.*,
    2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) .........................................14

*Marisol A. by Forbes v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996) .........................................................7

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ......................................20

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012).....................................................19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)...............................................................................24

*Palacio v. E\*TRADE Fin. Corp.*,
    2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) ..............................12

*Pearlman v. Cablevision Sys. Corp.*,
    2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019).......................................20

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...............................................................................11

*Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009)....................................................17

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)....................................................................5

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................22

*Spann v. AOL Time Warner Inc.*,
    2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................................12

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ...................................................15

*Thomas v. MagnaChip Semiconductor Corp.*,
2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)...................................................21

*Vargas v. Capital One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) .......................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..............................................................................14

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)................................................................................4

*Woo v. Northern Dynasty Minerals Ltd. et al.*,
Case No. VLC-S-S-211530 ...............................................................................5

*Zubrinski, et al., v. BioAmber Inc., et. al.*,
Case No. 2:17-cv-01531 (E.D.N.Y.)................................................................24

**Statutes**

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

Securities Exchange Act of 1934 Section 10(b) ............................................................2

**Rules**

Fed. R. Civ. P. 23......................................................................................... *passim*

**Other Authorities**

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) ....................................................12

4 *Newberg on Class Actions* § 13:18 (5th ed. 2012).....................................................4

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788
(1986)..............................................................................................................10

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Lawrence Kelemen ("Lead Plaintiff") and Named Plaintiff Charles Hymowitz ("Named Plaintiff" and, together with Lead Plaintiff, the "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the class action settlement.

## I.      INTRODUCTION

Plaintiffs and Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company"), and the Individual Defendants ("Defendants"), have agreed to settle this Action for $6,375,000 in cash by the terms stated in the Stipulation ("Settlement").[1] Plaintiffs now seek an order: (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; (4) scheduling a hearing for final approval of the Settlement ("Settlement Hearing"), at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds ("Plan of Allocation"), the request for attorneys' fees, expenses, and case contribution awards, and entry of the Final Judgment; and (5) scheduling various deadlines in connection with the Settlement.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of a highly regarded mediator, Robert Meyer of JAMS. The Settlement provides a substantial, immediate and guaranteed recovery for Settlement Class Members, in light of Northern Dynasty's current financial condition, decline in its market capitalization since the commencement of the class period, and its quickly depleting insurance coverage. The Settlement is a favorable result in light of several obstacles Plaintiffs faced with ongoing litigation including proving liability and

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement ("Stipulation"), dated June 7, 2023, and filed contemporaneously herewith. Emphasis is added and internal citations and quotations are omitted unless otherwise specified.

prevailing on loss causation. Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the Settlement Class Members' best interests. The proposed content and manner of providing notice satisfy requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, the Court should preliminarily approve the Settlement.

## II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT

On December 4, 2020, Neil Darish filed an original complaint in this Court commencing the Action. Dkt. No 1.[2]  On December 17, 2020, Named Plaintiff Charles Hymowitz filed his own complaint in this Court, under the title *Hymowitz v. Northern Dynasty Minerals Ltd., et al.*, Case No. 20-cv-6126-ENV (E.D.N.Y. Dec. 17, 2020) ("*Hymowitz* Action") at Dkt. No. 1.   The complaints named Northern Dynasty, Ronald W. Thiessen ("Thiessen"), Thomas C. Collier, Jr. ("Collier"), Mark C. Peters, and Marchand Snyman as defendants.

On February 2, 2021, Lead Plaintiff filed a motion for consolidation, appointment as lead plaintiff, and approval of lead counsel. Dkt. No. 14.  By Order dated March 17, 2021, the Court consolidated this Action and the *Hymowitz* Action, appointed Lawrence Kelemen as Lead Plaintiff, and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class.  Dkt. No. 32.

On June 15, 2021, Plaintiffs filed a Consolidated Amended Complaint against Defendants Northern Dynasty, Thiessen and Collier, dropping Mr. Peters and Mr. Snyman.  Dkt. No. 37.  The Consolidated Amended Complaint asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.  The

---

[2] Unless otherwise specified, references to "Dkt. No. __" refer to the docket in the above-captioned action, defined as the "Action" in the Stipulation: *In re Northern Dynasty Minerals Ltd. Securities Litigation*, Case No. 1:20-cv-05917-ENV-TAM (E.D.N.Y.).

Consolidated Amended Complaint alleged, among other things, that during the Settlement Class Period, Defendants made false and misleading statements concerning the size, scope, and duration of the Pebble Project, Northern Dynasty's plan to develop what Defendants deemed "one of the world's most important mineral resources." The Consolidated Amended Complaint alleged that Northern Dynasty's stock price was artificially inflated as a result of these alleged false and misleading statements, and that Northern Dynasty's stock price declined when the truth regarding the alleged misrepresentations was revealed.

On September 15, 2021, Defendants served a motion to dismiss the Consolidated Amended Complaint. Dkt. No. 39. Among other things, Defendants argued that there were no materially misleading or false statement or omissions made during the alleged class period. Defendants also argued that the Consolidated Amended Complaint failed to adequately plead any actionable misstatement or omission, failed to adequately allege scienter, and failed to adequately plead loss causation. On November 15, 2021, Plaintiffs served a brief opposing Defendants' motion to dismiss. Dkt. No. 40. On December 15, 2021, Defendants filed their reply brief in further support of their motion to dismiss. Dkt. No. 41.

On January 25, 2023, the Court denied Defendants' motion to dismiss in its entirety. Dkt. No. 47.

On March 27, 2023, the Settling Parties participated in an all-day private mediation session with experienced mediator Robert Meyer of JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages. The Parties were unsuccessful in reaching a resolution during the mediation. Subsequently, and in consultation with Mr. Meyer, on April 11, 2023, the Parties reached an agreement in principle to settle the Action for a payment

of $6,375,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.

### III.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must first consider whether to conditionally certify the Settlement Class for settlement purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 *Newberg on Class Actions* § 13:18 (5th ed. 2012). The Court need not conduct a rigorous analysis at this stage to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). In certifying the Settlement Class the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions

of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation ¶10.1. For settlement purposes, Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising all Persons who purchased or otherwise acquired Northern Dynasty securities during the Settlement Class Period, defined as December 21, 2017 through November 24, 2020, both dates inclusive, (i) on any stock exchanges located in the United States, (ii) on any alternative trading systems located in the United States, or (iii) pursuant to other domestic transactions, and who were allegedly damaged thereby. *Id.* ¶¶1.43, 1.45.[3] Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

## A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show

---

[3] Excluded from the Settlement Class are (i) Individual Defendants; (ii) the officers and directors of Northern Dynasty; (iii) members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class is any individual or entity, who or which has: (i) asserted claims against any or all of the Defendants in any cross-border litigation initiated outside of the United States, including in, but not limited to, the cases captioned *Haddad v. Northern Dynasty Minerals Ltd. et al.*, Case No. VLC-S-S-2012849 and *Woo v. Northern Dynasty Minerals Ltd. et al.*, Case No. VLC-S-S-211530 in Canada; (ii) been deemed by a court to be a member of a class in such litigation, for settlement purposes or otherwise; and (iii) is entitled to a settlement or other distribution payment – regardless of whether such payment is cashed – in connection with the resolution of the cross-border litigation. Additionally excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion from the Settlement Class that is accepted by the Court. *Id.* ¶1.43.

"that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities).

Here, there are likely hundreds, if not thousands of potential Settlement Class Members as Northern Dynasty's common stock was actively traded on the New York Stock Exchange with millions of shares traded during the relevant period. Thus, the numerosity requirement is met.

## B. Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. at 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution—

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Northern Dynasty's filings with the Securities and Exchange Commission ("SEC") and in public statements, whether they were made with scienter, and whether damages were sustained by members of the Class and, if so, the appropriate measure of damages.

## C. Typicality

Putative class representatives' claims must also be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). Typical does not mean identical. *EVCI*, 2007 WL 2230177, at *13; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not necessarily render their claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs' claims are typical of those of the Settlement Class. Plaintiffs purchased Northern Dynasty securities during the Settlement Class Period and allege they were damaged upon revelation of Defendants' alleged misrepresentations and omissions, just like all of the Settlement Class Members. Plaintiffs satisfy the typicality requirement.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).  Pursuant to Rule 23(g), the adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

### (i)    Adequacy of the Proposed Class Representatives

Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class. Plaintiffs have submitted certifications consistent with the PSLRA, indicating that they reviewed the complaint, that they are willing to represent the Class, and that they will accept no payment for serving as representative plaintiffs beyond their pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court. Dkt. No. 17-4; *Hymowitz* Action at Dkt. No. 1. Plaintiffs are seeking, on their own behalf and on behalf of all Settlement Class Members, to recover from Defendants

damages caused by Defendants' alleged unlawful conduct. No evidence exists of any conflict of interests with the Settlement Class. Thus, Plaintiffs are adequate class representatives.

### (ii)      Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of the proposed class counsel. To that end, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firm serving as Lead Counsel, Pomerantz LLP, is experienced in prosecuting class actions, having successfully prosecuted securities class actions in this Court and throughout the country. Courts have consistently found Pomerantz LLP to be well suited as class counsel in securities class actions. *See, e.g., In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (finding Pomerantz is "qualified, experienced and able to conduct the litigation," in a case achieving a $3 billion settlement); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation."). Lead Counsel's firm resume was previously submitted to the Court. Dkt. No. 17-6. Pomerantz LLP leveraged its skills and resources to secure the Settlement.

The Settlement was reached only after Lead Counsel investigated and drafted the Consolidated Amended Complaint and successfully opposed Defendants' motion to dismiss. Counsel spent considerable time on this action for the benefit of Northern Dynasty investors including: conducting a thorough investigation including retaining a private investigator; opposing

Defendants' motion to dismiss; and preparing for and participating in the mediation and settlement discussions, including drafting a comprehensive mediation statement. Lead Counsel's significant securities class action experience makes them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Thus, Lead Counsel should be appointed as class counsel for the Settlement Class.

### E. Common Questions Predominate and a Class Action Is Superior to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, no question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, whether they were made with scienter, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or

omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.[4]

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiffs' and the Settlement Class members' claims. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. All related domestic cases have been consolidated into this Action, in an appropriate forum convenient for all parties. Additionally, Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without securities class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims[,]" because of "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually

---

[4] Additionally, the Second Circuit has found that "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012) (citing *Amchem*, 521 U.S. at 620).

controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). Moreover, a class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources. Accordingly, a class action is the superior method of adjudication.

Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3). The Court should preliminarily certify the Settlement Class for settlement purposes.

## IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.    Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E*TRADE Fin. Corp.*, 2012 U.S. WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); 4 *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177,

at *12. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the Parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)  ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)  the class representatives and class counsel have adequately represented the class;
> >
> > (B)  the proposal was negotiated at arm's length;
> >
> > (C)  the relief provided for the class is adequate, taking into account:
> >
> > > (i)  the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)  any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)  the proposal treats class members equitably relative to each other.

Plaintiffs request at this stage only that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. A preview of the factors considered by courts in granting final approval of class action settlements demonstrates

that this Settlement is well within the range of possible approval. The Court will be able to approve the Settlement as fair, reasonable and adequate under Rule 23(e)(2).

**B.      Plaintiffs and Their Counsel Have Adequately Represented the Class**

Plaintiffs have diligently prosecuted this Action on behalf of the Settlement Class, including by thoroughly investigating the facts to draft the Consolidated Amended Complaint, defeating Defendants' motion to dismiss, and negotiating a favorable settlement. The Settlement provides a substantial and immediate recovery to Settlement Class Members, particularly in light of the Company's current financial condition and depleted insurance coverage. *See supra* at §III. D.

**C.      The Proposed Settlement Is the Result of Arm's-Length Negotiations by Informed, Experienced Counsel**

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Plaintiffs were armed with sufficient information to evaluate the Settlement's benefits

and drawbacks. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."). Informal information sharing is especially appropriate where discovery has been stayed pursuant to the PSLRA. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

On March 27, 2023, the Settling Parties attended a full-day mediation session with Robert Meyer of JAMS. In advance of that session, the Settling Parties exchanged mediation statements addressing key aspects of liability and damages. During the mediation session, the Settling Parties argued the merits of Plaintiffs' claims and the defenses thereto. A settlement in principle was later reached on April 11, 2023. The negotiations were at all times hard-fought and conducted at arm's length and have produced a result that the Settling Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Mr. Meyer's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) (that a settlement was reached as a result of mediation before Mr. Meyer weighs in favor of approval).

### D. The Relief Provided to the Class Is Adequate

#### (i) The Substantial Benefits for the Class, Weighed Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").[5]

### a) The Complexity, Expense, and Likely Duration of the Litigation

"Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases . . . are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to Northern Dynasty investors. If the Settlement were not reached, the Parties would have to incur substantial costs and engage in prolonged litigation through class certification, summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as expert fees, including for class certification, expert reports, and expert testimony, would be significant and could total several hundred thousand dollars for Plaintiffs. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

---

[5] It is not possible to evaluate the second factor, the reaction of the class to the settlement, at this time, as notice of the Settlement has not yet been disseminated.

There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### b) The Stage of the Proceedings and the Amount of Discovery Completed

As discussed above, Plaintiffs conducted a thorough investigation supporting a detailed Consolidated Amended Complaint. Although the Parties had not begun formal discovery, by thoroughly investigating the case and exchanging mediation statements with Defendants, Plaintiffs had the information they needed to evaluate the Settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.").

### c) The Risk of Establishing Liability and Damages

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although Plaintiffs were successful in defeating the motion to dismiss, this was no guarantee as to continued success in the case. Proving, not merely alleging, that Defendants' statements and omissions were false or misleading, and were made with scienter, would be a difficult task. Even more, Plaintiffs would encounter significant loss causation defenses as Defendants attempted to disaggregate the portion of the price declines that arose from the alleged corrective disclosures as opposed to the portion caused by other information and confounding factors disclosed on those dates. *See, e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock

drop following press release for failure to "explain why the disclosure on page 8 – as opposed to all other information in the extended 12 page release – caused the price decline"). Even if they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks.

### d) The Risks of Maintaining the Class Action Through Trial

For class certification, Plaintiffs would need to complete class certification discovery and show – subject to a more rigorous analysis than the Court applies here – that they satisfy each of the prongs of Rule 23(a) and 23(b)(3). Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. That the Settlement avoids the uncertainty of obtaining and maintaining class certification supports approval of the Settlement.

### e) The Ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund

Considering Northern Dynasty's strained financial position and a depleting insurance coverage, with a significant decline in its market capitalization since the commencement of the class period, the Stipulation provides a significant Settlement of $6,375,000 to be paid into the

Settlement Fund. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the total potential maximum damages would be approximately $281 million. Thus, the Settlement Amount represents a recovery of approximately 2.3%. The Settlement Amount is more than the median recovery of 1.8% of estimated damages for securities class actions settled in 2022, according to a study conducted by as NERA Economic Consulting.[6]

Moreover, the expert's estimates do not account for Defendants' anticipated loss causation arguments, which could have reduced potential damages to a great degree. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

As such, the Settlement falls well within the range of possible approval.

### (ii) The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the proposed methods of notice and claims administration are effective. The claims administration process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation governs how Class Members' claims will be calculated and, ultimately, how

---

[6] Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at 18 (Fig. 19), available at https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant.

### (iii) Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel will seek an award of attorneys' fees of no more than one third of the Settlement Amount, and reimbursement of litigation expenses in an amount not to exceed $500,000.[7] This fee request is in line with other settlements approved in recent cases. "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014).[8] Further, as explained in the proposed notice, Plaintiffs intend to request an amount not to exceed $20,000 for Lead Plaintiff Lawrence Kelemen and $5,000 for Named Plaintiff Charles Hymowitz, or $25,000 in total, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

---

[7] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiffs' Counsel in the Action. *See* Stipulation, Ex. A-1 (Notice) ¶13, n.3.

[8] *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (approving fee award that was one-third of a $9 million settlement); *Enriquez v. Nabriva Therapeutics plc*, 1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) (approving fee award that was one-third of a $3 million settlement); *Pearlman v. Cablevision Sys. Corp.*, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million[.]"); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (approving 33 1/3% and stating "courts routinely award a percentage amounting to approximately 1/3"); *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (Counsel's "request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").

### (iv) The Parties Have An Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have executed a supplemental agreement providing that if Settlement Class Members opt out of the Settlement such that the number of Northern Dynasty securities represented by such opt-outs exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation ¶11.5. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7, 11 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts"; "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

### E. There Is No Preferential Treatment; The Plan Of Allocation Treats Settlement Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan of Allocation is fair, reasonable and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at *6

(S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017). The Plan

of Allocation, set out in the Long Notice, attached as Exhibit A-1 to the Stipulation, explains how

the Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation

provides that each Settlement Class Member will receive their *pro rata* share of the Net Settlement

Fund based on their Recognized Loss as compared to the total Recognized Losses of all Authorized

Claimants. Stipulation, Ex. A-1 (Notice) ¶7. Plaintiffs and all other Class Members will receive their

payment pursuant to the same formula. The Plan of Allocation thus has a "reasonable, rational

basis" and should be preliminarily approved. *Citigroup*, 296 F.R.D. at 158.

## V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the

PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the

best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559

F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise

the prospective members of the class of the terms of the proposed settlement and of the options

that are open to them in connection with the proceedings," including the opportunity to opt out of

or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at

*17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all

of the circumstances, to apprise interested parties of the pendency of the settlement proposed and

to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process

Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7);

*Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process

requires that the notice to class members fairly apprise the … members of the class of the terms of

the proposed settlement and of the options that are open to them in connection with [the]

proceedings.").

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Plaintiffs' Counsel; and (g) the necessary information to examine Court records. Stipulation, Ex. A-1. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares. *Id.*

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[9] *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Stipulation, Ex. A, mandates that Lead Counsel provide Class Members notice of the Settlement by either: (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses,[10]

---

[9] Plaintiffs request that Epiq Class Action & Claims Solutions, Inc. ("Epiq") be appointed the Claims Administrator. Lead Counsel requested proposals from several claims administration companies for the administration of the Settlement. After reviewing responses, counsel decided to retain Epiq due to its substantial experience and its proposal's costs and caps on those costs.

[10] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an electronic method of notice.

or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail to Settlement Class Members who can be identified with reasonable effort. After entry of the proposed Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's website. *Id.* Additionally, Summary Notice will be published electronically once on *PR Newswire* and in print once in *Investor's Business Daily*. *Id.*

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *see also Graham v. Capital One Bank (USA), N.A.*, 2014 WL 12579809, at *2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, Case No. 1:15-cv-3020-NRB (S.D.N.Y.) (Dkt. No. 243); *Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (Dkt. No. 135); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, Case No. 3:17-cv-00146 (D. Ct.) (Dkt. No. 64).

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstances and satisfy the requirements of due process, Rule 23, and the

---

Providing electronic notice to class members by email, if obtained, will reduce administration costs and ultimately benefit the class. Similar electronic notice is permitted in securities class action settlements. *See Zubrinski, et al., v. BioAmber Inc., et. al.,* Case No. 2:17-cv-01531 (E.D.N.Y.) (Dkt. No. 59); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); *In re Akers Biosciences, Inc., Sec. Litig.,* Case No. 18-cv-10521 (D.N.J.) (Dkt. No. 40); *Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496) (D.N.J.) (Dkt. No. 135); *In re USA Technologies, Inc. Sec. Litig.*, Case No. 1:19-cv-04565 (E.D. Pa.) (Dkt. No. 88).

PSLRA. Accordingly, Plaintiffs request that the Court approve the form and method Plaintiffs have proposed to provide notice of the Settlement to the Settlement Class.

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart below. This schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement.

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice and/or mailing Postcard Notice; Creating website with Stipulation, Long Notice, and Claim Form. | No later than 21 calendar days after the entry of the Preliminary Approval Order. (¶11, 16) |
| Publication of the Summary Notice. | No later than 21 calendar days after entry of Preliminary Approval Order. (¶17) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than 28 calendar days before the Settlement Hearing. (¶27) |
| Submission deadline for requests for exclusion. | No later than 21 calendar days before the Settlement Hearing. (¶21) |
| Submission deadline for objections. | No later than 21 calendar days before the Settlement Hearing. (¶25) |
| Submission deadline for Claim Forms. | No later than 7 calendar days after the Settlement Hearing. (¶19) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than 7 calendar days before the Settlement Hearing. (¶28) |
| Date for Settlement Hearing | At the Court's earliest convenience at least 100 calendar days after the entry of the Preliminary Approval Order. |

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class for the purposes of settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice and direct that such notice be

disseminated to the Settlement Class; (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters; and (5) establish a schedule for various deadlines in connection with the Settlement.

Date:   June 7, 2023

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Dolgora Dorzhieva
Villi Shteyn
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
ddorzhieva@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Plaintiffs and for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Named Plaintiff and for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Emma Gilmore*
Emma Gilmore