**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NORTHERN DYNASTY MINERALS LTD. SECURITIES LITIGATION | Case No. 1:20-cv-05917-ENV-TAM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................... 2

    A.    Procedural History ................................................................................... 2

    B.    The Settlement ......................................................................................... 4

        1.    Cash Consideration and Release ................................................ 5

        2.    Notice to the Settlement Class ................................................... 5

        3.    Exclusion and Objection Deadline ............................................ 6

        4.    The Plan of Allocation .............................................................. 7

III.  ARGUMENT ..................................................................................................... 7

    A.    The Court Should Approve the Settlement ............................................... 7

        1.    Certification of the Settlement Class Is Appropriate ................. 7

        2.    The Settlement is Fair, Reasonable, and Adequate .................... 8

            a.    Complexity, Expense and Likely Duration of the Litigation .......... 9

            b.    Adequate Notice and Reaction of the Class ................................. 11

            c.    Stage of Proceedings and Discovery Completed .......................... 12

            d.    Risks of Establishing Liability and Damages .............................. 13

            e.    The Risks of Maintaining the Class Action Through Trial ........... 15

            f.    Range of Reasonableness of the Settlement ................................. 16

            g.    The Settlement Resulted From Arm's-Length Negotiations ........ 17

            h.    Defendants' Ability to Withstand a Greater Judgment ................. 19

    B.    The Court Should Grant Final Approval of the Plan of Allocation ...................... 19

    C.    Notice to the Settlement Class Complied with Rule 23 and Due Process ............ 20

    D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors ........................... 22

1.  The Proposed Method for Distributing Relief Is Effective ...................... 22

2.  Attorneys' Fees .................................................................. 22

3.  The Parties Have No Other Agreements Aside From The Opt-Out
    Provision ......................................................................... 23

4.  There Is No Preferential Treatment; the Plan of Allocation Treats
    Settlement Class Members Equitably ......................................... 24

IV.    CONCLUSION ........................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. SeaWorld Ent., Inc.*, No. 14 Civ. 2129 (MMA) (AGS),
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ............................................................22

*Burns v. FalconStor Software, Inc.*, No. 10 Civ. 4572 (ERK),
    2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) .........................................................8, 19, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974),
    *abrogated on other grounds*,
    *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .............................9, 11, 12, 16

*City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM),
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom.*,
    *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ............................................10, 22

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .....................................................................................18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..............................................................................................7, 20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..............................................................................................20

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ................................................................................16

*Hefler v. Wells Fargo & Co.*, No. 16 Civ. 5479 (JST),
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................................................24

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................22

*In re Agent Orange Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985),
    *aff'd in part, rev'd in part on other grounds*,
    818 F.2d 179 (2d Cir. 1987) ...................................................................................17

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK),
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................10, 13, 16

iii

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006)............................................................................................16

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).............................................................................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)............................................................................................17

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT),
   2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016)....................................................................18

*In re Genworth Fin. Sec. Litig.*, No. 3:14-CV-682-JAG,
   2016 WL 7187290 (E.D. Va. Sept. 26, 2016)..................................................................23

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................13, 14, 15

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ *passim*

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................14, 16, 17, 18

*In re Northern Dynasty Minerals Ltd. Securities Litigation*, Case No. 20 Civ. 5917 (ENV)
   (TAM) (E.D.N.Y.) ...........................................................................................................2

*In re PPDAI Grp. Inc. Sec. Litig.*, No. 18 Civ. 6716 (TAM),
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...................................................................19

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354, 362 (S.D.N.Y. 2016),
   *aff'd in part, vacated in part on other grounds sub nom.*,
   *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ......................................................18

*In re Pfizer Inc. Sec. Litig.*, No. 4 Civ. 9866 (LTS) (HBP),
   2014 WL 3291230 (S.D.N.Y. July 8, 2014),
   *vacated on other grounds*,
   819 F.3d 642 (2d Cir. 2016)............................................................................................10

*In re Salomon Inc. Sec. Litig.*, No. 91 Civ. 5442 (RPP),
   1994 WL 265917 (S.D.N.Y. June 16, 1994) ..................................................................18

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP),
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..................................................................13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................................19

iv

*In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH),
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012)...............................................................11

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP),
   2009 WL 2025160 (S.D.N.Y. July 10, 2009) ...........................................................19

*In re Warner Commc'ns Sec. Litig.*,
   798 F.2d 35 (2d Cir. 1986)........................................................................................9

*Olden v. LaFarge Corp.*,
   472 F. Supp. 2d 922 (E.D. Mich. 2007)...................................................................11

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ............................................................................23

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009).....................................................................15

*Scalfani v. Misonix, Inc.*, No. 16 Civ. 5218 (ADS) (AST),
   (E.D.N.Y. Dec. 15, 2017) ........................................................................................13

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ...........................................................................9

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993)............................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................8, 17

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982).........................................................................................8

## Statutes

15 U.S.C. §78j(b) ..............................................................................................................3

15 U.S.C. §78t(a) ..............................................................................................................3

15 U.S.C. § 78u-4(a)(4) ...................................................................................................23

PSLRA..............................................................................................................................21

Securities Exchange Act of 1934 ......................................................................................2

## Rules

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................................3

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623,
    1625-26 (2009).........................................................................................................23

Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in
    Securities Class Action Litigation: 2022 Full-Year Review*, NERA Econ.
    Consulting .................................................................................................................17

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Lawrence Kelemen ("Lead Plaintiff") and Named Plaintiff Charles Hymowitz ("Named Plaintiff" and, together with Lead Plaintiff, the "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for final approval of the proposed class action settlement ("Settlement"), as set forth in the Stipulation and Agreement of Settlement dated May 24, 2023 ("Stipulation") (Dkt. No. 64-1).[1]

## I.    INTRODUCTION

Plaintiffs and Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company"), and the Individual Defendants (together with Northern Dynasty, "Defendants"), have agreed to settle this Action for $6,375,000 in cash by the terms stated in the Stipulation. This recovery for investors represents a fair, reasonable, and adequate settlement of the claims presented in this Action, particularly in light of Northern Dynasty's dire financial condition (reflecting cash and cash equivalents of $3.4 million as of June 30, 2023), steep decline in its market capitalization since the commencement of the class period from a height of approximately $1 billion during the class period to approximately $170 million today, and its quickly depleting insurance coverage.

The Settling Parties reached the Settlement only after arm's-length negotiations with the aid of a highly-regarded and experienced mediator, Robert Meyer of JAMS. The Settlement provides a substantial and immediate recovery for Settlement Class Members. The Settlement is a favorable result in light of several obstacles Plaintiffs faced if they were to continue litigating, including proving liability and prevailing on key damages arguments. At the time of settlement, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation. Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

1

claims and defenses in this Action. They believe that the proposed Settlement is fair, reasonable, and adequate in light of the risks presented by continued litigation. The $6,375,000 cash Settlement falls well within the range of settlements in comparable Securities Exchange Act of 1934 cases.

Plaintiffs followed the Court-approved notice plan to solicit claims, requests for exclusions, and objections. As of November 9, 2023, Plaintiffs have received only one valid request for exclusion from the Settlement, and no objections. For these reasons and those set forth below, the Settlement is fair, reasonable, and adequate, and the Court should approve it.

Lead Counsel also worked with a damages expert to formulate a fair, reasonable, and adequate Plan of Allocation for the Settlement Fund. The Plan of Allocation treats all claimants fairly based on the applicable law. The Court should also approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

On December 4, 2020, Neil Darish filed an original complaint in this Court commencing the Action. Dkt. No 1.[2] On December 17, 2020, Named Plaintiff Charles Hymowitz filed his own complaint in this Court, under the title *Hymowitz v. Northern Dynasty Minerals Ltd.*, Case No. 20 Civ. 6126 (ENV) (E.D.N.Y. Dec. 17, 2020) ("*Hymowitz* Action"), Dkt. No. 1. The complaints named Northern Dynasty, Ronald W. Thiessen ("Thiessen"), Thomas C. Collier, Jr. ("Collier"), Mark C. Peters, and Marchand Snyman as Defendants.

On February 2, 2021, Lead Plaintiff filed a motion for consolidation, appointment as lead plaintiff, and approval of lead counsel. Dkt. No. 14. By Order dated March 17, 2021, the Court consolidated this Action and the *Hymowitz* Action, appointed Lawrence Kelemen as Lead Plaintiff,

---

[2] Unless otherwise specified, references to "Dkt. No. __" refer to the docket in the above-captioned action, defined as the "Action" in the Stipulation: *In re Northern Dynasty Minerals Ltd. Securities Litigation*, Case No. 20 Civ. 5917 (ENV) (TAM) (E.D.N.Y.).

and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. Dkt. No. 32.

On June 15, 2021, Plaintiffs filed a Consolidated Amended Complaint against Defendants Northern Dynasty, Thiessen and Collier, dropping Mr. Peters and Mr. Snyman. Dkt. No. 37. The Consolidated Amended Complaint asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Consolidated Amended Complaint alleged, among other things, that during the Settlement Class Period, Defendants made materially false and misleading statements concerning the size, scope, and duration of the Pebble Project, Northern Dynasty's plan to develop what Defendants deemed "one of the world's most important mineral resources." The Consolidated Amended Complaint alleged that Northern Dynasty's stock price was artificially inflated as a result of these alleged false and misleading statements, and that Northern Dynasty's stock price declined when the truth regarding the alleged misrepresentations was revealed.

On September 15, 2021, Defendants moved to dismiss the Consolidated Amended Complaint. Dkt. No. 39. Among other things, Defendants argued that there were no materially false or misleading statements or omissions made during the alleged class period. Defendants also argued that the Consolidated Amended Complaint failed to adequately allege scienter and loss causation. On November 15, 2021, Plaintiffs filed their opposition to Defendants' motion to dismiss. Dkt. No. 40. On December 15, 2021, Defendants filed their reply in further support of their motion to dismiss. Dkt. No. 41.

On January 25, 2023, the Court denied Defendants' motion to dismiss in its entirety. Dkt. No. 47.

## B.    The Settlement

On March 27, 2023, the Settling Parties participated in an all-day private mediation session with experienced mediator Robert Meyer of JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages. The Parties were unsuccessful in reaching a resolution during the mediation. Settlement negotiations continued and, subsequently, in consultation with Mr. Meyer, on April 11, 2023, the Parties reached an agreement in principle to settle the Action for a cash payment of $6,375,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.

The Settlement Class is defined as all Persons who purchased or otherwise acquired Northern Dynasty securities during the Settlement Class Period, defined as December 21, 2017 through November 24, 2020, both dates inclusive, (i) on any stock exchanges located in the United States, (ii) on any alternative trading systems located in the United States, or (iii) pursuant to other domestic transactions, and who were damaged thereby. Excluded from the Settlement Class are (i) Individual Defendants; (ii) the officers and directors of Northern Dynasty; (iii) members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns; and (iv) any entity in which the Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class is any individual or entity, who or which has: (i) asserted claims against any or all of the Defendants in any cross-border litigation initiated outside of the United States, including in, but not limited to, the cases captioned *Haddad v. Northern Dynasty Minerals Ltd. et al.*, Case No. VLC-S-S-2012849 and *Woo v. Northern Dynasty Minerals Ltd. et al.*, Case No. VLC-S-S-211530 in Canada; (ii) been deemed by a court to be a member of a class in such litigation, for settlement purposes or otherwise; and (iii) is entitled to a settlement or other distribution payment – regardless of whether such payment is cashed – in connection with the

4

resolution of the cross-border litigation. Additionally excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion from the Settlement Class that is accepted by the Court.

Plaintiffs filed their motion for preliminary approval on June 7, 2023 (Dkt. Nos. 56-58), which was amended on July 26, 2023 (Dkt. No. 64). The Court entered its Preliminary Approval Order granting Plaintiffs' motion on August 24, 2023 (Dkt. No. 67).

### 1.       Cash Consideration and Release

The Settlement provides for a cash payment of $6,375,000 to resolve the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against Defendants that were alleged or could have been alleged in this Action, except claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

### 2.   Notice to the Settlement Class

Pursuant to the Preliminary Approval Order, the Postcard Notice was mailed to potential class members, brokers, and nominee holders. Declaration of Emma Gilmore ("Gilmore Decl."), Exhibit ("Ex.") 1 (Declaration of Morgan Kimball ("Kimball Decl.")) ¶¶3-7. The Postcard Notice advised potential Settlement Class Members how to access or obtain copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), which provided a detailed description of the terms of the Settlement and Plan of Allocation. *Id.*, Kimball Decl., Exs. B (Postcard Notice) and C (Notice). The Postcard Notice also informed potential Settlement Class Members that Lead Counsel would seek a fee award not to exceed one third of the Settlement Amount, recovery of actual litigation expenses not to exceed $80,000, an award to Plaintiffs of no more than $25,000 in total; and that exclusions from the Settlement or objections to any aspect of

5

the Settlement or to the fee and expense request are due no later than November 16, 2023. Kimball Decl., Ex. B.

As of the date of this writing, the Claims Administrator, Epiq Global ("Epiq"), has mailed 78,049 copies of the Postcard Notice to potential class members and their nominees. Kimball Decl. ¶7. In addition, Epiq has re-mailed 206 Postcard Notices to persons whose original mailing was returned to Epiq as undeliverable by the USPS and for whom updated addresses were provided to Epiq by the USPS. *Id.* The Claims Administrator also posted the Notice and Proof of Claim and Release Form ("Claim Form") on its website at www.NorthernDynastySecuritiesSettlement.com. *Id.* ¶12. The website also provides a link for online claim filing and lists important deadlines. *Id.*

The Claims Administrator also caused the Notice Packet to be mailed to the 1,022 mailing records contained in its internal broker list by USPS First-Class Mail. *Id.* ¶4, Ex. C. The Claims Administrator also mailed 75 Notice Packets via First Class U.S. Mail to persons who submitted a request for one. *Id.* ¶10, Ex. C.

Epiq also emailed 87 Summary Notices to potential Settlement Class Members for whom Epiq was able to obtain email addresses. *Id.* ¶¶3,6, Ex. A.

Additionally, Epiq disseminated the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") electronically on the *PR Newswire* and in print in the *Investor's Business Daily*. *Id.* ¶8.

### 3. Exclusion and Objection Deadline

Requests for exclusion must be postmarked by November 16, 2023. As of November 9, 2023, there have been only two requests for exclusion. One request (from a shareholder holding just 5,000 shares, a minuscule fraction of the hundreds of millions of damaged shares) is valid as it was both timely (*i.e.,* received via mail by November 16, 2023) and complete (*i.e.*, contains the necessary information described in the Notice). Kimball Decl. ¶¶14-15, Ex. E. The other request,

6

although timely, is invalid because it was incomplete. *Id*. Epiq has contacted the individual who submitted the invalid request for the necessary information. *Id*.

Objections to the Settlement must be received by the Court and counsel by November 16, 2023. As of this writing there have been no objections to any aspect of the Settlement. Kimball Decl. ¶14 n.2

### 4.    The Plan of Allocation

The Notice describes the Plan of Allocation. Kimball Decl., Ex. C (Notice) ¶7. Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation (including negative loss causation). Gilmore Decl. ¶17. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made before the revelation of the truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation establishes a formula that determines the authorized claimants' recognized losses based on the foregoing application of the securities laws and Plaintiffs' theories, which calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and awards to Lead Plaintiffs). Kimball Decl., Ex. C (Notice) ¶7.

### III.    ARGUMENT

#### A.    The Court Should Approve the Settlement

##### 1.    Certification of the Settlement Class Is Appropriate

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of

7

representation. In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

In its Preliminary Approval Order, the Court found that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied. Dkt. No. 67 at 26-33. The Court also stated that "Plaintiffs have also demonstrated a likelihood of final settlement approval." *Id*. at 33. Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, the Court should grant final certification to this Settlement Class.

### 2. The Settlement is Fair, Reasonable, and Adequate

As a matter of public policy, courts favor settlements, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), especially in complex class actions like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Federal Rule of Civil Procedure 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Id*. A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations conducted by capable counsel who are experienced in class action litigation arising under the federal securities laws. *Burns v. FalconStor Software, Inc.*, No. 10 Civ. 4572 (ERK), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the [judgment] of counsel." *Trief v. Dun & Bradstreet Corp*., 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

8

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In weighing these factors, courts recognize that settlements require give and take between the negotiating parties. Thus, courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

The proposed settlement is fair, reasonable, and adequate under the *Grinnell* factors and the Court should approve it.

### a.       Complexity, Expense and Likely Duration of the Litigation

The Settlement avoids further, expensive litigation that would not necessarily lead to a greater recovery for the Settlement Class Members. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and

9

notoriously uncertain to litigate." *City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

While this action was pending, Plaintiffs conducted an investigation and drafted the Complaint, successfully defeated Defendants' motion to dismiss, and participated in an all-day private mediation session. Gilmore Decl. ¶18. Were litigation to continue, discovery and expert consultants would impose substantial additional costs. Summary judgment and *Daubert* motions and trial would add even greater expense and risk. *Id.* ¶19; *In re Pfizer Inc. Sec. Litig.*, No. 4 Civ. 9866 (LTS) (HBP), 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014) (granting summary judgment for defendants because "[p]laintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims"), *vacated on other grounds*, 819 F.3d 642 (2d Cir. 2016). In this case, establishing damages would be difficult to achieve and would necessitate a lengthy and expensive battle of the experts to argue the parties' widely disparate positions on loss causation. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Not only would the class risk recovering nothing at all or less than the Settlement by continuing to litigate, but because the loser at trial would almost certainly appeal, the Class would not collect any judgment for years—and may still end up recovering nothing after those efforts. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) ("A trial would probably not have resulted in the conclusion of the action. Time-consuming post-trial motions and appeals were almost inevitable. The action could have gone on for many more years. Either no

10

recovery for the class or substantial loss to defendants could have ultimately resulted."). *See also In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after the jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

### b.     Adequate Notice and Reaction of the Class

A "[l]ack of objection is strong evidence of the settlement's fairness." *Luxottica*, 233 F.R.D. at 311; *Grinnell*, 495 F.2d at 462 (approving settlement where 20 objectors appeared from the group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people).

The Notice was disseminated under Lead Counsel's supervision by the Court-appointed third-party claims administrator, Epiq. Kimball Decl. ¶1. In accordance with the Court's orders, Epiq mailed a total of 79,352 Postcard Notices and Notice Packets to Settlement Class Members, brokers, and nominee holders. *Id*. ¶17. The Summary Notice was posted via the *PR Newswire* and published in the *Investor's Business Daily* on September 11, 2023. *Id.* ¶8. The Notice and Claim Form were also available on Epiq's website, www.NorthernDynastySecuritiesSettlement.com, along with a link for online claim filing. *Id*. ¶12. Epiq also has emailed 87 Summary Notices to potential Settlement Class Members for whom Epiq was able to obtain email addresses. *Id*. ¶¶3,6, Ex. A.

The deadline for potential Settlement Class Members to object to or request exclusion from the Settlement is November 16, 2023. To date, only one Settlement Class Member has validly requested exclusion from the Settlement. Kimball Decl. ¶¶14-15, Ex. E. To date, no one has objected to the Settlement. *Id*. ¶14 n.2; Gilmore Decl. ¶16. Plaintiffs will address any further requests for exclusion or objections in their Reply.

11

Plaintiffs' conclusion that the Settlement is fair, reasonable, and adequate further supports its approval. Plaintiffs each took an active role in supervising this litigation and recommend that the Settlement be approved. Gilmore Decl., Exhibits 3-4 (declarations of Plaintiffs).

### c.      Stage of Proceedings and Discovery Completed

The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).

The Parties agreed to the Settlement only after Plaintiffs: (1) investigated the claims in this action to plead a detailed complaint, which required both scouring public records and hiring private investigators to conduct interviews with former employees, as well as consulting with loss causation and damages experts; (2) successfully defeated in its entirety Defendants' motion to dismiss the amended complaint; (3) prepared a detailed mediation statement and analyzed Defendants' mediation statement; and (4) attended a full-day private mediation followed by additional settlement negotiations. Gilmore Decl. ¶18. Moreover, in connection with the mediation, Lead Counsel fully vetted Defendants' loss causation and damages arguments with their experts. *Id.* Thus, before entering into the Settlement, Lead Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of their case. *See Luxottica*, 233 F.R.D. at 312 (settlement approved where counsel had "a clear view of the strengths and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).

Plaintiffs and Lead Counsel had the information they needed to evaluate the Settlement despite the fact that formal discovery had not commenced. To satisfy this factor, the Parties "need

12

not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement." *AOL Time Warner*, 2006 WL 903236, at \*10; *see also* Order and Final Judgment, *Scalfani v. Misonix, Inc.*, No. 16 Civ. 5218 (ADS) (AST) (E.D.N.Y. Dec. 15, 2017), Dkt. No. 36 (granting final approval in class action that settled before filing of amended complaint or a motion to dismiss).[3] The stage of proceedings weighs in favor of approving the Settlement.

### d.    Risks of Establishing Liability and Damages

Courts should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). Analyzing the risks presented in a class action "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* In assessing class settlements, courts recognize that the immediacy and certainty of a recovery provide benefits to the settlement class. *See Luxottica*, 233 F.R.D. at 316 ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate."). Pursuing a better result through continued litigation always carries the risk that a plaintiff ends up with less money than the proposed settlement.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at \*11. While Plaintiffs adequately alleged falsity and materiality, as the Court found in its Order denying Defendants' motion to dismiss, they nonetheless recognize

---

[3] *See also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at \*7 (S.D.N.Y. May 1, 2008) ("Although the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms.").

13

the difficulties of surviving summary judgment and proving these elements at trial. Plaintiffs' theory of the case relied heavily on the Pebble Tapes, Congressional testimony, and an investigation by the U.S. House Transportation & Infrastructure Committee. Discovery of Defendants' internal documents could have borne out Defendants' position that Plaintiffs failed to allege any materially false or misleading statements. Gilmore Decl. ¶20. Likewise, the jury might find against Plaintiffs at trial, recovering nothing for Plaintiffs and the Settlement Class after expending significantly more time, expense, judicial resources, and the jury's time. *Id.* ¶21. Any favorable jury verdict might also be reversed on appeal. *Id.* ¶22.

Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Glob. Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion." *Id.* Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 338–39 (E.D.N.Y. 2010) ("In such a 'battle of the experts,' the jury could well have been swayed by defendants' experts, finding that the plaintiffs were entitled to little or no recovery even if liability were established.").

Overcoming Defendants' anticipated negative loss causation defense and establishing damages in this case would be particularly difficult. Gilmore Decl. ¶24. Defendants would hire an expert to disaggregate the portion of the alleged price declines that arose from the disclosures that corrected the omissions alleged by Plaintiffs from those that pertained to other information

14

disclosed on those dates. *Id.*; *see also, e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228–29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page eight – as opposed to all other information in the extended 12-page release – caused the price decline"). Here, Defendants' experts would likely contend that none, or only a portion, of the declines following the corrective disclosures were attributable to a relevant corrective disclosure as opposed to other material information disclosed on the same date. Plaintiffs' expert would need to demonstrate that other parts of the stock price declines after the corrective disclosures were attributable to the alleged omissions. Disaggregating the impact of the corrective information from all other news released at the same time would prove challenging and would likely significantly lower damages. *Id.*

If at any of these stages the Court or jury found Plaintiffs' damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to potentially end up with less than the $6,375,000 Settlement presented for approval here. This is a case where "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Glob. Crossing*, 225 F.R.D. at 459.

e.    **The Risks of Maintaining the Class Action Through Trial**

Had the Settling Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. Gilmore Decl. ¶26. This motion would likely be contested by Defendants and would be expensive and time-consuming. Plaintiffs would need to produce documents, sit for depositions, and produce an expert opinion on the method of calculating damages. While courts typically certify proposed classes of investors in equity securities, certification is by no means assured, especially before class certification discovery. *Id.* Even if a class were certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(1)(C); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs

15

could obtain class certification, there could be a risk of decertification at a later stage."). This factor supports approval of the settlement because "the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at \*12.

### f.    Range of Reasonableness of the Settlement

Defendants have no economic incentive to enter into settlements unless they receive a discount on the value of the claims. Further, in a factually and legally complex securities class action lawsuit, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *accord*, *In re AT & T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *MetLife*, 689 F. Supp. 2d at 340 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)).

The Settlement recovers $6,375,000 for the Settlement Class. The $6,375,000 settlement represents a recovery of approximately 2.3% of the $281 million in estimated damages, above the median recovery of 1.8% of estimated damages for securities class actions settled in 2022,

16

according to a study conducted by NERA Economic Consulting (Gilmore Decl. ¶15).[4] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses).

Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *aff'd in part, rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Money in Settlement Class Members' pockets now is more valuable than a larger, speculative recovery that Class Members might obtain after years of litigation. The Settlement is particularly favorable in light of Northern Dynasty's dire financial condition (reflecting cash and cash equivalents of $3.4 million as of June 30, 2023), steep decline in its market capitalization since the commencement of the class period from a height of approximately $1 billion during the class period to approximately $170 million today, and its quickly depleting insurance coverage.

> **g.      The Settlement Resulted From Arm's-Length Negotiations**

The experience and reputation of the Parties' counsel who negotiated the Settlement at arm's-length are entitled to great weight. *See, e.g.*, *Wal-Mart*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel.") (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *MetLife*, 689 F. Supp. 2d at 330 ("A strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel.") (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)). Courts recognize that "the

---

[4] Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Econ. Consulting (Jan. 24, 2023) at 18, Fig. 19, *available                                                                                                    at* https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

17

opinion of experienced and informed counsel" supporting settlement "is entitled to considerable weight." *See MetLife*, 689 F. Supp. 2d at 341 (quoting *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010)); *In re Salomon Inc. Sec. Litig.*, No. 91 Civ. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"). Here, the settlement was the product of arm's-length negotiations between experienced and informed counsel, with the assistance of a well-respected and experienced mediator.

Lead Counsel are experienced in prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country, including in the Eastern District of New York. Gilmore Decl. ¶28, Exhibit 2 (Pomerantz firm resume, attached as Exhibit A thereto). Courts have consistently found Pomerantz qualified to be lead counsel in securities class actions. *E.g.*, *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT) (BCM), 2016 WL 5867497, at *5–6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."), *aff'd in part, vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). Defendants, for their part, were represented by Steptoe & Johnson LLP, one of the world's premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Gilmore Decl. ¶29.

Similarly, there is a presumption of fairness when a settlement is reached with the assistance of a mediator. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] court-appointed mediator's involvement in ... settlement negotiations helps to ensure that the

18

proceedings were free of collusion and undue pressure."). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *Telik*, 576 F. Supp. 2d at 576.

The Parties participated in a mediation under the guidance of Mr. Meyer, a highly skilled and respected mediator with ample experience mediating securities class actions such as this one. Mr. Meyer's involvement supports the Settlement's fairness. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18 Civ. 6716 (TAM), 2022 WL 198491, at \*8–9 (E.D.N.Y. Jan. 21, 2022) (that a settlement was reached as a result of mediation before Mr. Meyer weighs in favor of approval).

### h.      Defendants' Ability to Withstand a Greater Judgment

The best securities class action ever brought could reasonably be settled for a few pennies on the dollar if there is no more money to satisfy a judgment. Further, Defendants must pay their lawyers, experts, and discovery vendors. If the case proceeded, Defendants would have spent their limited resources defending rather than resolving this case and less would have been available for settlement at a later date. Indeed, by the time the Settlement was reached, Defendants' insurance coverage was rapidly depleting.

### B.      The Court Should Grant Final Approval of the Plan of Allocation

"The plan [of allocation] need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns*, 2014 WL 12917621, at \*6; *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2009 WL 2025160, at \*2 (S.D.N.Y. July 10, 2009) (similar). Here, Lead Counsel formulated the Plan of Allocation in consultation with Plaintiffs' damages expert to be consistent with the securities laws. Gilmore Decl. ¶17.

Lead Counsel formulated the Plan of Allocation with the principles of loss causation in mind. *Id*. Therefore, those shareholders who bought and then sold shares, "before the relevant truth

19

begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342. In *Burns*, the court approved the proposed plan of allocation where, as here, it "reflects plaintiffs' theory of the case – that the stock price declined due to partial disclosures of the alleged misconduct – and does not compensate losses from sales made prior to the disclosure of the alleged misconduct"; "comports with federal securities law"; and where "plaintiffs' counsel formulated the plan of allocation with a financial consultant to ensure it was fair." *Burns*, 2014 WL 12917621, at \*6.

The Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different prices and times during the Settlement Class Period, reflecting different damages due to the purchase and sale prices and the amount of artificial inflation in Northern Dynasty securities at the time of their transactions. Kimball Decl., Ex. C (Notice) ¶7. The Settlement Fund will be distributed on a pro rata basis depending on a Settlement Class Member's recognized losses. *Id.*; *see also Luxottica*, 233 F.R.D. at 317 (approving plan of allocation as fair and reasonable where it treated class members equally and on a pro rata basis and comported with the plaintiffs' theory of damages). The Plan of Allocation recognizes that certain Settlement Class Members are differently situated based on the timing of their trades but does not discriminate between Settlement Class Members in the same position. In short, the Plan of Allocation has a rational basis, it fairly compensates Settlement Class Members, and this Court should approve it.

### C.    Notice to the Settlement Class Complied with Rule 23 and Due Process

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

20

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, including the following, without limitation: (i) an explanation of the action and the claims asserted; (ii) the definition of the Settlement Class Members; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Lead Counsel, administrative costs, and awards to Plaintiffs; (vii) the Settlement Class Members' rights, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (x) the binding effect of a judgment on Settlement Class Members.

The Court-appointed third-party claims administrator, Epiq, disseminated the Notice under Lead Counsel's supervision. Kimball Decl. ¶1. In accordance with the Court's orders, Epiq mailed 79,352 Postcard Notices and Notice Packets to Settlement Class Members, brokers, and nominee holders. *Id*. ¶17. Epiq also emailed 87 Summary Notices to potential Settlement Class Members for whom it was able to obtain email addresses. *Id*. ¶¶3,6. The Summary Notice was disseminated over the *PR Newswire* and published in the *Investor's Business Daily* on September 11, 2023. *Id.* ¶8. The Notice and Claim Forms were also available on Epiq's website, www.NorthernDynastySecuritiesSettlement.com, along with a link for an online claim filing. *Id*. ¶12. The website also contains pertinent information such as important deadlines and documents, including the Stipulation and Preliminary Approval Order. *Id*.

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a

21

newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Ent., Inc.*, No. 14 Civ. 2129 (MMA) (AGS), 2020 WL 818893, at *2–3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *City of Providence*, 2014 WL 1883494, at *2. Thus, the implemented Notice procedures were more than sufficient.

### D. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1. The Proposed Method for Distributing Relief Is Effective

As demonstrated in §III.C, *supra*, the method of the proposed notice and claims administration process is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). The notice plan included direct mail Postcard Notice to all those who could be identified with reasonable effort, supplemented by the publication of the Summary Notice in the *PR Newswire* and in the *Investor's Business Daily*. Kimball Decl. ¶¶7, 8. In addition, the Claims Administrator created a settlement-specific website and posted key documents there, including the Stipulation, Notice, Claim Form and Preliminary Approval Order. *See id*. ¶12. Settlement Class Members are also able to submit claims through the website. *Id*.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how the Claims Administrator will calculate Settlement Class Members' claims and, ultimately, how it will distribute the Settlement Fund. Lead Counsel also worked with a damages expert to formulate the Plan of Allocation.

#### 2. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Plaintiffs' memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and an award to Plaintiffs, filed concurrently herewith ("Fee Brief"), Lead Counsel seek an award of attorneys' fees not to exceed one third of the Settlement Amount, or $2,125,000, plus interest, and reimbursement of $45,102.04 in expenses. This fee request is in line with other settlements approved in the Second Circuit. *See* Fee Brief § III.A.2.e.

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, No. 3:14-CV-682-JAG, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).[5]

Plaintiffs also request no more than $25,000 in total pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding this Action. Plaintiffs address the reasonableness of this request in full in the Fee Brief § III.C.

### 3. The Parties Have No Other Agreements Aside From The Opt-Out Provision

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. Fed. R. Civ. P. 23(e)(2)(C)(iv). As disclosed in the Stipulation (¶11.5), and in the memorandum of law in support of Plaintiffs' motion to preliminarily approve the Settlement (Dkt. No. 57 at 21), the Parties have entered into a standard supplemental agreement which generally provides that, if Settlement Class Members opt out of the Settlement such that the number of shares of Northern Dynasty securities

---

[5] *See also* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625–26 (2009) (quick pay provisions mitigate against objectors filing meritless appeals hoping to force class counsel to pay them simply to avoid the delay of waiting for the appeal to be decided).

otherwise eligible to recover damages represented by such opt-outs exceeds a certain amount, Defendants shall have the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16 Civ. 5479 (JST), 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). This supplemental agreement was filed under seal for the Court's review on July 26, 2023.

Additionally, pursuant to Local Civil Rule 23.1, the Notice informed the Settlement Class Members that Lead Counsel would apply to the Court for an award of attorneys' fees.

### 4. There Is No Preferential Treatment; the Plan of Allocation Treats Settlement Class Members Equitably

The Plan of Allocation is fair, reasonable and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *Luxottica*, 233 F.R.D. at 317. The Plan of Allocation explains how the Settlement will be distributed among Settlement Class Members. Kimball Decl., Ex. C (Notice) ¶7. It provides formulas for calculating the recognized claim of each Settlement Class Member, based on their purchases or acquisitions of Northern Dynasty securities during the Settlement Class Period and when they sold. *Id.* Each eligible Settlement Class Member, including Plaintiffs, will receive a distribution pursuant to the Plan of Allocation. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution.

24

## IV.    CONCLUSION

For the foregoing reasons, the Court should: (1) certify the Settlement Class for the purposes of settlement; (2) approve the Settlement as set forth in the Stipulation; and (3) approve the Plan of Allocation.

Dated: November 9, 2023

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Dolgora Dorzhieva
Villi Shteyn
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
ddorzhieva@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Plaintiffs and for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Named Plaintiff and for the Class*

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Emma Gilmore*
Emma Gilmore

26