**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE NORTHERN DYNASTY MINERALS LTD. SECURITIES LITIGATION | Case No. 1:20-cv-05917-ENV-TAM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................. 2

III.    ARGUMENT ................................................................................................. 2

        A.      The Requested Award of Attorneys' Fees Is Reasonable ...................................... 2

                1.      Legal Standards for an Award of Attorneys' Fees Support Approval ........ 2

                2.      The Requested Fee Is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors ............... 3

                        a.      Time and Labor Expended by Lead Counsel ................................. 4

                        b.      The Risks of the Litigation .............................................................. 5

                        c.      The Magnitude and Complexity of the Litigation ......................... 7

                        d.      The Quality of Lead Counsel's Representation ............................. 8

                        e.      The Requested Fee in Relation to the Settlement ......................... 10

                        f.      Public Policy Considerations ........................................................ 11

                3.      The Requested Fee Is Reasonable Under the Lodestar Cross-Check ....... 12

        B.      Reimbursement of Litigation Expenses ................................................................ 13

        C.      The Proposed Awards to Plaintiffs Are Reasonable ............................................ 14

IV.     CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC),
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)................................................................................5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)......................................................................................................................3

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) ........................................................................................11

*Benzion v. Vivint, Inc.*, No. 12 Civ. 61826 (WJZ),
2015 WL 11143078 (S.D. Fla. Feb. 23, 2015) .......................................................................15

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................................3, 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................................2, 3

*Bogosian v. Gulf Oil Corp.*,
621 F. Supp. 27 (E.D. Pa. 1985) ..............................................................................................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated on other grounds*,
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...................................6, 10, 12

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM),
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom.*,
*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)........................................................8, 12

*Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912 (ILG),
1986 WL 53400 (E.D.N.Y. May 28, 1986) ...............................................................10, 11, 12

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................... *passim*

*Hicks v. Stanley*, No. 01 Civ. 10071 (RJH),
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................................3

*In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK),
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................................6, 7

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006)..................................................................................................13

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   772 F.3d 125 (2d Cir. 2014)..................................................................................................15

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG),
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...........................................................6, 11, 12, 13

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT),
   2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ..........................................................................10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12- 2389 (RWS),
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd sub nom.,*
   *In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016)..............................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM),
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................6, 7, 9, 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................11, 15

*In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510 (CPS) (SMG),
   2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............................................................4, 14, 15

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................................6, 12

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..............................................................................................6

*In re Jumia Techs. S.A. Sec. Litig.*, Case No. 19 Civ. 4397 (PKC),
   (S.D.N.Y. Mar. 24, 2021) .....................................................................................................13

*In re KeySpan Corp. Sec. Litig.*, No. 01 Civ. 5852 (ARR),
   2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ......................................................................10

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................14, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................11

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016),
  *aff'd in part, vacated in part on other grounds sub nom.*,
  *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ...................................................................10

*In re Sterling Foster & Co. Sec. Litig.*,
  238 F. Supp. 2d 480 (E.D.N.Y. 2002) ....................................................................................14

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM),
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......................................................................3, 15

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................2

*Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22 Civ. 2854 (JSR),
  (S.D.N.Y. Feb. 26, 2023) .......................................................................................................13

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC),
  2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................................................11

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03 Civ. 4372 (DMC),
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................................................7

*Missouri v. Jenkins ex rel. Agyei*,
  491 U.S. 274 (1989)................................................................................................................10

*Pirnik v. Fiat Chrysler Automos. N.V.*, No. 15 Civ. 7199 (JMF),
  (S.D.N.Y. Sept. 5, 2019).........................................................................................................13

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)......................................................................................................4

*Too v. Rockwell Med., Inc.*, No. 18 Civ. 4253 (ARR) (RER),
  2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020).........................................................................13

*Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9194 (CM),
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010).........................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).....................................................................................................3, 4

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970),
  *aff'd*, 440 F.2d 1079 (2d Cir. 1971).......................................................................................6, 7

## Statutes

15 U.S.C. § 78u-4(a) ....................................................................................................2, 4, 15

iv

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

## **<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................................1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Lawrence Kelemen ("Lead Plaintiff") and Named Plaintiff Charles Hymowitz ("Named Plaintiff" and, together with Lead Plaintiff, the "Plaintiffs") submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.[1]

## I.   INTRODUCTION

After almost three years of investigation, litigation, and negotiation, Plaintiffs are pleased to present for the Court's approval a Settlement that recovers $6,375,000 for the Settlement Class. Lead Counsel have not received any compensation for this case while litigating it even as they risked attorney time and money. They now ask that the Court award attorneys' fees not to exceed one third of the Settlement Amount, or $2,125,000, plus interest for reaching this favorable result.

This action was risky. Although Plaintiffs survived Defendants' motion to dismiss, they still faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, and defending the verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The action would have involved significant expert discovery to establish damages and defeat a negative loss causation defense, and Plaintiffs faced a real prospect of greatly reduced damages. The risks that Lead Counsel would never get paid after spending countless hours of attorney time and significant sums of its own money justify the $2,125,000 award.

Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $45,102.04. *See* Declaration of Emma Gilmore ("Gilmore Decl."), Exhibit 2 (Declaration of Emma Gilmore on behalf of Pomerantz LLP

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated May 24, 2023 ("Stipulation") (Dkt. No. 64-1). Emphasis is added and internal citations and quotations are omitted unless otherwise noted.

1

Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl.")) ¶7. These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Finally, Plaintiffs have spent time leading this action on behalf of the Class. They request an award of $20,000 for Lead Plaintiff Lawrence Kelemen and $5,000 for Named Plaintiff Charles Hymowitz, or $25,000 in total, as authorized under the Private Securities Litigation Reform Act of 1995 ("PSLRA") to compensate them for their time. 15 U.S.C. § 78u-4(a)(4); Gilmore Decl.¶5.

Lead Counsel and Plaintiffs' work in steering this action to a successful conclusion amply justifies the requests they make. The Court should approve attorneys' fees of $2,125,000 plus interest, approve reimbursement of $45,102.04 in expenses, and award Plaintiffs no more than $25,000 in total.

## II.    STATEMENT OF FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in Section II of the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement, filed concurrently herewith and incorporated by reference herein.

## III.    ARGUMENT

### A.    The Requested Award of Attorneys' Fees Is Reasonable

#### 1.    Legal Standards for an Award of Attorneys' Fees Support Approval

The Supreme Court, the Second Circuit, and the district courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005).

Attorneys' fee awards from common funds both encourage representatives to seek redress for damages caused to an entire class of persons and prevent that class from being unjustly enriched by the representative's success. *See Boeing*, 444 U.S. at 478; *Goldberger*, 209 F.3d at 47. The incentives the common fund doctrine provides are what permits private actions to serve as "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *see also Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

**2.      The Requested Fee Is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors**

The Supreme Court has consistently held that courts may employ the percentage-of-recovery approach to determine attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In *Goldberger*, 209 F.3d at 50, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved the percentage-of-recovery method in awarding fees from a common fund. Indeed, "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

3

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510 (CPS) (SMG), 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007). One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the merits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460–61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement"). In *Goldberger*, the Second Circuit set forth the six factors that courts should consider in determining whether a fee request is reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

209 F.3d at 50. Each of these factors supports the fee requested here.

### a. Time and Labor Expended by Lead Counsel

Lead Counsel have worked diligently for almost three years to achieve the Settlement, expending 1272.23 hours for an aggregate lodestar of $905,460.25. Gilmore Decl. ¶30. To litigate this action, Lead Counsel: (1) investigated the claims in this action to plead a detailed amended complaint which required both scouring public records and hiring private investigators to conduct interviews with former employees, as well as consulting with loss causation and damages experts; (2) successfully defeated in its entirety Defendants' motion to dismiss the amended complaint; (3) prepared a detailed mediation statement; (4) consulted with a damages and loss causation expert

4

and analyzed Defendants' damages and loss causation arguments; (5) attended a full-day private mediation; and (6) documented the Settlement and filed a motion for preliminary approval. Gilmore Decl. ¶18.

Moreover, Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Final Approval Hearing scheduled for December 7, 2023, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. Gilmore Decl. ¶35; *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12- 2389 (RWS), 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016). The time and labor Lead Counsel invested in investigations, motion practice, and mediation support the requested fee.

b.    **The Risks of the Litigation**

The requested fee is also reasonable because Lead Counsel obtained a favorable result though it faced substantial risks. "[T]he risk of success [is] perhaps the foremost factor to be

5

considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (*quoting Goldberger*, 209 F.3d at 55).

Courts have recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). That court pointed to

6

two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id*. In many cases, including some of Lead Counsel's cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect. Gilmore Decl. ¶32

This case was no exception. From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. *Id*. ¶33. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. *Id*. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis, as defense counsel were. *Id*.; *see also Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Lead Counsel received no compensation from this case during the litigation and have incurred $45,102.04 in expenses in prosecuting this action for the benefit of the Settlement Class. Gilmore Decl. ¶31.

Despite the many uncertainties regarding the outcome of the case, as detailed more fully in Plaintiffs' memorandum in support of their motion for final approval of the Settlement, Lead Counsel undertook this case on a wholly contingent basis. They did so knowing that the litigation could last for years and would require the devotion of a substantial amount of time and litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.

### c.    The Magnitude and Complexity of the Litigation

Courts recognize that securities class actions are "notorious[ly] complex[]." *AOL Time Warner*, 2006 WL 903236, at *8; *see also La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03 Civ. 4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (describing securities

7

class actions as "inherently complex"). If the Action had not settled, continued litigation would have included additional motion practice, such as a class certification motion, summary judgment motions, and *Daubert* motions; extensive discovery, including the review of likely thousands of pages of internal documents and depositions of fact and expert witnesses; a trial; post-trial motion practice; and mostly likely appeals.

At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims. For example, to prove damages, plaintiffs must hire an expert to combat Defendants' expert in putting a price figure not only on the disclosure of information that was allegedly fraudulently withheld but also on all other confounding information released at the same time and at other times during the class period. Gilmore Decl. ¶24. These are not simple tasks.

Accordingly, the magnitude and complexity of the Action support the requested fee. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### d.      The Quality of Lead Counsel's Representation

Lead Counsel conducted a comprehensive investigation into the allegedly wrongful acts, including identifying former employees of Northern Dynasty with relevant knowledge of the misconduct alleged and interviewing such employees, and conducting other extensive due diligence related to the claims at issue, including analysis of extensive documentary records. Lead Counsel drafted a robust and comprehensive amended complaint and a particularly strong opposition to Defendants' motion to dismiss the complaint. Indeed, the District Court denied in its entirety Defendants' motion to dismiss. The $6,375,000 Settlement is an excellent result for the Class particularly where, as here, Northern Dynasty is strapped for cash, with only $3.4 million as

of June 30, 2023, and has lost most of its market capitalization. Over $800 million (or over 80%) of market capitalization was wiped out during the class period and, at the time the Settlement was reached, Northern Dynasty's insurance coverage was largely depleted.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). The Settlement Class overwhelmingly favors the Settlement. To alert potential Settlement Class Members of the Settlement, the Claims Administrator mailed 79,352 copies of the Postcard Notice and Notice Packets to potential class members and their nominees, posted the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release Form (the "Claim Form") on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") online on the *PR Newswire* and in print in the *Investor's Business Daily.* Gilmore Decl., Ex. 1 (Declaration of Morgan Kimball ("Kimball Decl.")) ¶¶8, 12, 17. Epiq also emailed 87 Summary Notices to potential Settlement Class Members for whom it was able to obtain email addresses. *Id*. ¶¶3, 6.

Each of these notices informed Class Members they could exclude themselves from the Settlement or object to any part thereof. As of November 9, 2023, only one week before the deadline to object or opt out, the Claims Administrator and Lead Counsel have received only one valid request for exclusion and not a single objection to the Settlement or Lead Counsel's requests herein. Kimball Decl. ¶¶14-15 n.2, Ex. E; Gilmore Decl. ¶16.

9

The standing and prior experience of Lead Counsel are also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912 (ILG), 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Plaintiffs and the Settlement Class are represented by Pomerantz LLP as Lead Counsel. As the firm's resume demonstrates, Lead Counsel have extensive experience in the specialized field of shareholder securities litigation. Gilmore Decl. ¶28; Pomerantz Fee Decl., Ex. A. *See also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT) (BCM), 2016 WL 5867497, at *5–6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."), *aff'd in part, vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement. Gilmore Decl. ¶28.

The quality and vigor of opposing counsel is also important in evaluating the services rendered and challenges overcome by Lead Counsel. *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, No. 01 Civ. 5852 (ARR), 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005). Here, Defendants were represented by Steptoe & Johnson LLP, one of the world's premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Gilmore Decl. ¶29. That Lead Counsel achieved the Settlement while opposed by formidable attorneys further justifies the fee they request.

### e.      The Requested Fee in Relation to the Settlement

A fee should approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See*

*Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. The fee request of one-third of the Settlement Amount, or $2,125,000, plus interest, falls well within percentages that courts in this District and within the Second Circuit have awarded in similar common fund settlements. *See, e.g.*, *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one third fee of $7.8 million settlement, is "well within the range accepted by courts in this circuit"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% of the first $10 million of the settlement and 30% of the next $40 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding one third of $13 million settlement).

Under the percentage-of-recovery approach, the attorneys' fees requested by Lead Counsel are fair and reasonable for litigation of this kind and are supported by previous awards made by courts in this Circuit.

### f.      Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4; *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"). Those lawsuits require

11

competent counsel to prosecute them. *Eltman*, 1986 WL 53400, at *4. Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id*. at *9; *see also City of Providence*, 2014 WL 1883494, at *18.

The integrity of the markets depends on companies complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

### 3.     The Requested Fee Is Reasonable Under the Lodestar Cross-Check

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *Grinnell*, 495 F.2d at 470–71. The lodestar is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate and totaling the amounts for all time-keepers. Additionally, a multiplier is typically applied to the lodestar, which "represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Glob. Crossing*, 225 F.R.D. at 468 (citing *Goldberger*, 209 F.3d at 47); *see also Comverse*, 2010 WL 2653354, at *5 ("Where ... counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

When performing a lodestar "cross-check," the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Here, Lead Counsel devoted a total of 1272.23 hours to the prosecution of the action, resulting in a lodestar of $905,460.25. Gilmore Decl. ¶30. Based on the requested fee of $2,125,000, the lodestar multiplier is 2.35. *Id*. This is a

reasonable multiplier that falls comfortably in line with multipliers approved by courts in this Circuit and around the country. *See, e.g.*, *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 9194 (CM), 2010 WL 4877852, at *18, *28 (S.D.N.Y. Nov. 30, 2010) (approving "a 2.4 multiplier, an enhancement routinely approved as part of the spectrum for multipliers in Second Circuit class fee cases"); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (multiplier of 2.99 was reasonable in a case that lasted four months even when "discovery was virtually nonexistent").

The hourly rates used by Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Pomerantz Fee Decl. ¶6. Courts in this District and Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g.*, *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22 Civ. 2854 (JSR) (S.D.N.Y. Feb. 26, 2023), Dkt. No. 110; *In re Jumia Techs. S.A. Sec. Litig.*, Case No. 19 Civ. 4397 (PKC) (S.D.N.Y. Mar. 24, 2021), Dkt. No. 128; *Too v. Rockwell Med., Inc.*, No. 18 Civ. 4253 (ARR) (RER), 2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020); *Pirnik v. Fiat Chrysler Automos. N.V.*, No. 15 Civ. 7199 (JMF) (S.D.N.Y. Sept. 5, 2019), Dkt. No. 369. Additionally, Lead Counsel submits that the rates billed for their attorneys are comparable to peer defense-side law firms litigating matters of similar magnitude. Gilmore Decl. ¶30. Thus, the time and effort Lead Counsel have devoted to this case to obtain the $6,375,000 recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### B.    Reimbursement of Litigation Expenses

In addition to Lead Counsel's request for a fee award not to exceed one-third of the Settlement Amount, Lead Counsel seeks reimbursement of $45,102.04 in litigation costs and expenses incurred in connection with the prosecution of this Action. "Courts routinely grant the

13

expense requests of class counsel." *Gilat*, 2007 WL 2743675, at \*18 (quoting *KeySpan*, 2005 WL 3093399, at \*18); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding reimbursement of $100,000 in litigation expenses).

Lead Counsel incurred $45,102.04 in unreimbursed expenses to prosecute this action, which is less than the $80,000 amount described in the Notice, Summary Notice, and Postcard Notice. Pomerantz Fee Decl. ¶7. Substantial expenses included the (1) costs of an expert retained to analyze damages, analyze Defendants' loss causation and damages arguments, and help formulate the Plan of Allocation ($16,976.40), (2) costs of investigation fees incurred in connection with the filing of the complaint ($10,335.93), and (3) costs of hiring an experienced mediator ($5,275.00), as well as several smaller costs like (4) online legal research fees (5) court filing fees, and (6) printing and postage fees. *Id*. The expenses incurred are reflected in Lead Counsel' books and records and were reasonable and necessary to achieve the Settlement. Pomerantz Fee Decl. ¶8; *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel).

There have been no objections to the expense reimbursement request, and the actual amount requested is well below the $80,000 limit disclosed in the Notice. The Court should grant Lead Counsel's request for reimbursement of reasonable and necessary litigation expenses.

### C.    The Proposed Awards to Plaintiffs Are Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of

14

a class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at \*19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses.… [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370. Plaintiffs have devoted a substantial amount of time to this case.

Each of the Plaintiffs spent time monitoring news on the company, reviewing the pleadings, and communicating and corresponding with Lead Counsel regarding the litigation and settlement. Gilmore Decl. ¶37, Exhibits 3-4 (declarations of Plaintiffs). Therefore, Lead Plaintiff Lawrence Kelemen requests an award of $20,000 and Named Plaintiff Charles Hymowitz requests an award of $5,000, or $25,000 total, to reimburse them for the time they spent on this case. Such an award is "reasonable and appropriate relative to the … overall settlement." *MetLife*, 689 F. Supp. 2d at 370 (collecting cases); *Benzion v. Vivint, Inc.*, No. 12 Civ. 61826 (WJZ), 2015 WL 11143078, at \*3 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs); *Veeco*, 2007 WL 4115808, at \*12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation and characterizing such awards as "routine" in this Circuit); *Giant Interactive Grp.*, 279 F.R.D. at 166 (awarding $10,000 for lost time).

15

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and awards to Plaintiffs for services rendered to the Settlement Class.

Dated: November 9, 2023

Respectfully submitted,

**POMERANTZ LLP**

/s/ Emma Gilmore
Jeremy A. Lieberman
Emma Gilmore
Dolgora Dorzhieva
Villi Shteyn
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
ddorzhieva@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Plaintiffs and for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Named Plaintiff and
for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Emma Gilmore*
Emma Gilmore

17