**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE NORTHERN DYNASTY MINERALS LTD. SECURITIES LITIGATION | Case No. 1:20-cv-05917-ENV-TAM |

**DECLARATION OF EMMA GILMORE**

I, Emma Gilmore, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief.[1]

1.      I am an attorney duly licensed to practice law in New York and before this Court. I am a partner at the law firm Pomerantz LLP ("Pomerantz"), Lead Counsel for Lead Plaintiff Lawrence Kelemen ("Lead Plaintiff") and Named Plaintiff Charles Hymowitz ("Named Plaintiff" and, together with Lead Plaintiff, the "Plaintiffs") and the Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would competently testify thereto.

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs. The purpose of this Declaration is to set forth the nature of the investigation, legal briefing, litigation, and negotiations that led to the settlement with Defendants Northern Dynasty Minerals Ltd. ("Northern Dynasty" or the "Company") and the Individual Defendants (collectively, "Defendants" and with Plaintiffs, "Settling Parties"). This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees and expenses and awards to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement provides that the Settlement Class Members – certain investors in the securities of Northern Dynasty – release the claims advanced in this Action for $6,375,000.

4.      After Plaintiffs moved for preliminary approval of the Settlement in June 2023 (Dkt. No. 56), the Court signed an order on August 24, 2023 preliminarily approving the

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated May 24, 2023 ("Stipulation") (Dkt. No. 64-1).

Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members. Dkt. No. 67.

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel not to exceed one third of the Settlement Fund, or $2,125,000, plus interest, and reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $45,102.04, as well as an award of $20,000 for Lead Plaintiff Lawrence Kelemen and $5,000 for Named Plaintiff Charles Hymowitz, or $25,000 in total.

6.      Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Morgan Kimball, the Project Manager employed at Epiq Class Action & Claims Solutions, Inc. ("Kimball Decl."), dated November 9, 2023.

7.      Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Emma Gilmore on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), dated November 9, 2023.

8.      Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Lead Plaintiff Lawrence Kelemen, dated November 7, 2023.

9.      Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Named Plaintiff Charles Hymowitz, dated November 7, 2023.

**Procedural History**

10.      On December 4, 2020, Neil Darish filed an original complaint in this Court commencing the Action. Dkt. No 1.[2]  On December 17, 2020, Named Plaintiff Charles Hymowitz

---

[2] Unless otherwise specified, references to "Dkt. No. __" refer to the docket in the above-captioned action, defined as the "Action" in the Stipulation: *In re Northern Dynasty Minerals Ltd. Securities Litigation*, No. 20 Civ. 5917 (ENV) (TAM) (E.D.N.Y.).

filed his own complaint in this Court, under the title *Hymowitz v. Northern Dynasty Minerals Ltd., et al.*, Case No. 20 Civ. 6126 (ENV) (E.D.N.Y. Dec. 17, 2020) ("*Hymowitz* Action") at Dkt. No. 1. The complaints named Northern Dynasty, Ronald W. Thiessen ("Thiessen"), Thomas C. Collier, Jr. ("Collier"), Mark C. Peters, and Marchand Snyman as Defendants.

11. On February 2, 2021, Lead Plaintiff filed a motion for consolidation, appointment as lead plaintiff, and approval of lead counsel. Dkt. No. 14. By Order dated March 17, 2021, the Court consolidated this Action and the *Hymowitz* Action, appointed Lawrence Kelemen as Lead Plaintiff, and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. Dkt. No. 32.

12. Upon Lawrence Kelemen's appointment as Lead Plaintiff, Plaintiffs, through counsel, further investigated the claims in this action by, among other things, interviewing former Northern Dynasty employees at length. Plaintiffs pled the facts learned in their investigation in their consolidated Amended Class Action Complaint against Defendants Northern Dynasty, Thiessen, and Collier ("Complaint"). Dkt. No. 37. Defendants moved to dismiss the Complaint and the Parties fully briefed the motion by December 2021. Dkt. Nos. 39, 40, and 41.

13. By order dated January 25, 2023, the Court denied in its entirety Defendants' motion to dismiss. Dkt. No. 47.

**Settlement Negotiations and Terms**

14. On March 27, 2023, the Settling Parties attended a mediation session with Robert Meyer of JAMS, who has substantial experience in mediating securities fraud class actions. The Parties were unsuccessful in reaching a resolution during the mediation. Subsequently, and in consultation with Mr. Meyer, on April 11, 2023, the Parties reached an agreement in principle to settle the Action for a cash payment of $6,375,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.

15.     The Settlement provides for a cash payment of $6,375,000 to resolve the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against the Settling Defendants that were alleged or could have been alleged in the Action. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the total potential maximum damages would be approximately $281 million. The Settlement Amount of $6,375,000 is approximately 2.3% of the $281 million in estimated damages, above the median recovery of 1.8% of estimated damages for securities class actions settled in 2022, according to a study conducted by NERA Economic Consulting.[3]

16.     Requests for exclusion and objections to the Settlement must be received by November 16, 2023. As of November 9, 2023, there has been only one valid request for exclusion. *See* Kimball Decl. ¶¶14-15, Ex. E. The only other request for exclusion properly received by mail is invalid because it was incomplete, and the Claims Administrator has reached out to the individual to request the necessary information. *Id*. As of this writing, neither the Claims Administrator nor Lead Counsel have received any objections to any aspect of the Settlement. *Id*. ¶14 n.2. Further, there have been no objections filed to the Court's docket to date.

17.     The Notice of Pendency and Proposed Settlement of Class Action ("Notice") describes the Plan of Allocation. Kimball Decl., Ex. C (Notice) ¶7. Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and

---

[3] Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Econ. Consulting (Jan. 24, 2023) at 18, Fig. 19, *available                                                                          at* https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

reasonably to Settlement Class Members, consistent with the federal securities laws and the principles of loss causation (including negative loss causation). To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made before revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses based on the foregoing application of the securities laws and Plaintiffs' theories, which calculates Settlement Class Members' pro rata share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and awards to Plaintiffs).

### **Complexity, Expense and Likely Duration of the Litigation**

18.    While the Action was pending, Plaintiffs: (1) investigated the claims in this action to plead a detailed amended complaint, which required both scouring public records and hiring private investigators to conduct interviews with former employees, as well as consultations with loss causation and damages experts; (2) successfully defeated Defendants' motion to dismiss the amended complaint; (3) prepared a detailed mediation statement and analyzed Defendants' mediation statement; (4) attended a full-day private mediation before Mr. Meyer; and (5) documented the Settlement and filed a motion for preliminary approval. Moreover, in connection with the mediation, Lead Counsel fully vetted Defendants' loss causation and damages arguments with their experts. Thus, before entering into the Settlement, Lead Counsel and Plaintiffs understood the strengths and weaknesses of their case.

19.    If this Action were to proceed, discovery would impose substantial costs, as would the experts Plaintiffs would have to hire, and summary judgment and *Daubert* motions, and trial would be expensive and risky. Not only would the class risk recovering nothing at all or less than

the Settlement, but because the loser at trial would almost certainly appeal, the Class could not collect any judgment for several years.

### Risk of Continued Litigation

20.    Plaintiffs and the Settlement Class face various risks that continued litigation would result in lesser or no recovery. One of these risks is that the Court might grant summary judgment. Discovery of Defendants' internal documents could have borne out Defendants' position that Plaintiffs failed to allege any materially false or misleading statements. If the Court were to grant Defendants' motion for summary judgment, then Plaintiffs would have spent years, thousands of attorney hours, hundreds of thousands of dollars (if not more) in costs, and many judicial resources, and still get nothing.

21.    Likewise, the jury might find against Plaintiffs at trial, recovering nothing for Plaintiffs and the Settlement Class after expending significantly more time, expense, judicial resources, and the jury's time.

22.    Even if Plaintiffs prevailed at trial and obtained a favorable jury verdict, there remained a real risk that it might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, the appeal would be time consuming, taxing the Second Circuit's resources, and Plaintiffs again would be left without any recovery.

23.    Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated concept. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

7

24.    Establishing damages in this case would be particularly difficult. Defendants would hire an expert to disaggregate the portion of the alleged price declines that arose from the disclosures that corrected the omissions Plaintiffs alleged from those that pertained to other information disclosed on those dates. Defendants' expert would likely also contend that only a portion of the decline from that day was attributable to a relevant corrective disclosure as opposed to other material information disclosed on the same date. Plaintiffs' expert would need to demonstrate that other parts of the stock price decline after corrective disclosures were attributable to the alleged omissions. Disaggregating the impact of the corrective information from all other news released at the same time would prove challenging and would likely significantly lower damages.

25.    If at any of these stages the Court or jury found Plaintiffs' damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to end up with less than the $6,375,000 recovery provided under the Settlement today.

26.    Had the Settling Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to opine on the method of calculating damages. While courts typically certify proposed classes of investors in equity securities, certification is typically vigorously opposed by Defendants in securities class actions and by no means assured, especially before class certification discovery.

27.    In a factually and legally complex securities class action lawsuit, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose.

8

**The Settlement Resulted From Arm's-Length Negotiations Between Experienced Counsel**

28.     Lead Counsel are experienced in prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country, including in the Eastern District of New York. *See* Pomerantz Fee Decl., Ex. A. Lead Counsel have extensive experience in the specialized field of shareholder securities litigation and are some of the most experienced securities practitioners in the country. Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement.

29.     Defendants were represented by very capable counsel at Steptoe & Johnson LLP, one of the world's premier law firms with an exemplary securities practice.

**Lead Counsel's Fee Request Is Justified**

30.     Lead Counsel have worked diligently to achieve the Settlement for almost three years, expending 1272.23 hours for an aggregate lodestar of $905,460.25. Pomerantz Fee Decl. ¶6. The lodestar multiplier for the requested fee is 2.35. The rates Lead Counsel billed for their attorneys are comparable to peer defense-side law firms litigating matters of similar magnitude.

31.     Lead Counsel spent a total of $45,102.04 in unreimbursed expenses in connection with the prosecution of this Action, considerably less than the $80,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Pomerantz Fee Decl. ¶7. Lead Counsel have received no compensation from this case during the litigation.

32.     In many cases, including some of Lead Counsel's, attorneys have pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

9

33. From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

34. The hourly rates Lead Counsel used to arrive at their lodestar calculation are the firm's current, customary rates. Pomerantz Fee Decl. ¶6.

35. Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of their Motions, preparing for and appearing at the Final Approval Hearing scheduled for December 7, 2023, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Awards to Plaintiffs Are Justified**

36. Plaintiffs have spent their time leading this Action on behalf of the Class. They request an award of $20,000 for Lead Plaintiff Lawrence Kelemen and $5,000 for Named Plaintiff Charles Hymowitz, or $25,000 in total, to compensate them for their time and as an incentive for representative plaintiffs to come forward in cases in the future.

37. Plaintiffs have devoted a substantial amount of time to this case. Mr. Kelemen and Mr. Hymowitz each spent time monitoring news on the company, reviewing the pleadings and other key litigation materials and communicating and corresponding with Lead Counsel

throughout the pendency of the Action regarding the litigation and settlement. *See* Exhibits 3-4

(Plaintiffs' Declarations).

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 9, 2023                                    */s/ Emma Gilmore*
                                                              Emma Gilmore

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Emma Gilmore*
Emma Gilmore