**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE NORTHERN DYNASTY MINERALS LTD. SECURITIES LITIGATION | Case No. 1:20-cv-05917-ENV-TAM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR DISTRIBUTION OF**
**CLASS ACTION SETTLEMENT FUNDS**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    DETERMINATION OF AUTHORIZED CLAIMS ........................................... 1

      A.    Valid and Properly-Documented Claims .................................................. 2

      B.    Deficient and Ineligible Claims ................................................................ 4

            1.    No Disputed Claims .................................................................... 4

            2.    Rejected Claim Forms.................................................................. 4

III.   PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND............................. 5

IV.   RELEASE OF CLAIMS ................................................................................... 7

V.    RECORDS RETENTION AND DESTRUCTION ......................................... 8

VI.   CONCLUSION ................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hartman v. Powell*,
   2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................................4

*In re "Agent Orange" Prod. Liab. Litig.*,
   689 F. Supp. 1250 (E.D.N.Y. 1988) ...........................................................................................3

*In re Authentidate Holding Corp. Sec. Litig.*,
   2013 WL 324153 (S.D.N.Y. Jan. 25, 2013) ................................................................................3

*In re Citigroup Inc. Sec. Litig.*,
   2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) .............................................................................3

*In re Crazy Eddie Sec. Litig.*,
   906 F. Supp. 840 (E.D.N.Y. 1995) .............................................................................................3

*In re Gilat Satellite Networks, Ltd.*,
   2009 WL 803382 (E.D.N.Y. Mar. 25, 2009)...............................................................................3

*In re Top Tankers, Inc. Sec. Litig.*,
   ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y. Dec. 14, 2009)......................................7

*In re Veeco Instruments Inc. Sec. Litig.*,
   ECF No. 320, Case No. 1:05-md-01695-CM (S.D.N.Y. Sept. 8, 2009)......................................8

## I.    INTRODUCTION

This action has been settled pursuant to the terms of the Stipulation and Agreement of Settlement filed with the Court on July 26, 2023 (the "Stipulation") (Dkt. No. 64-1). Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation.

Lead Plaintiff Lawrence Kelemen and Named Plaintiff Charles Hymowitz ("Plaintiffs") and Northern Dynasty Minerals Ltd. and the Individual Defendants ("Defendants") have agreed to settle this Action for $6,375,000.00 in cash by the terms stated in the Stipulation.  On August 24, 2023, the Court entered an Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (Dkt. No. 67-1).  On January 26, 2024, the Court entered the Order and Final Judgment (Dkt. No. 79-1).

The Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has advised Lead Counsel that it has completed all analyses and accounting procedures and quality control procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are rejected. *See* Declaration of Morgan Kimball Regarding Distribution Plan (the "Kimball Declaration") ¶30.  All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants.  Lead Counsel therefore requests that the Court authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits B-1 and B-2 to the concurrently-filed Kimball Declaration.

## II.    DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, Settlement Class Members wishing to participate in the Settlement were required to submit a Proof of Claim and Release Form ("Claim Form") postmarked or submitted online no later than December 14, 2023.  Kimball Declaration

1

¶3. The Claims Administrator continued processing all claims postmarked or submitted online through May 1, 2024. *Id*. ¶24. As a result of an effective notice program, through May 1, 2024, Epiq received 22,282 Claim Forms. *Id*. ¶3. After reviewing, analyzing, and processing all these Claim Forms, Epiq has finalized its determination of which claims are authorized and which are rejected. *Id*. ¶30.

Of the 22,282 Claim Forms submitted to and fully processed by the Claims Administrator, 2,316 were paper Claim Forms that were mailed, emailed, or uploaded through the case website. *Id*. ¶6. The remaining 19,966 claims were submitted electronically ("Electronic Claims") and are typically submitted by, or on behalf of, institutional investors who may have hundreds or thousands of transactions during the Class Period. *Id*. ¶9.

### A.    Valid and Properly-Documented Claims

Epiq analyzed the 22,282 Claim Forms received through May 1, 2024, and determined that 4,879 valid and properly-documented claims were received.  Kimball Declaration ¶¶3, 33.  Of these valid claims, 4,334 were timely (*i.e.*, postmarked or submitted online no later than December 14, 2023) ("Timely Eligible Claims") and 545 were postmarked or submitted online after December 14, 2023, but on or before May 1, 2024 ("Late But Otherwise Eligible Claims").  *Id*. ¶¶24, 33. These valid claims represent Recognized Losses of $41,463,899.43 under the Court-approved Plan of Allocation. *Id*. ¶33. Furthermore, the total Recognized Losses include Recognized Losses for Timely Eligible Claims of $36,428,934.04 and Recognized Losses for Late But Otherwise Eligible Claims of $5,034,965.39.  *Id*.

Plaintiffs request that the Court accept all 4,879 valid and properly-documented claims, including the 4,334 Timely Eligible Claims and the 545 Late But Otherwise Eligible Claims.  The Late But Otherwise Eligible Claims have not caused delay in the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant.  Accordingly, Plaintiffs believe that it

would be unfair to prevent otherwise valid Claimants from participating in the Net Settlement Fund solely because their claims were submitted after the December 14, 2023 submission deadline, but while other claims were still being processed. *See In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at \*1 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims"); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 843-47 (E.D.N.Y. 1995) (stating that the "determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court," and allowing late claims postmarked after original deadline to participate in the distribution of settlement funds); *In re Gilat Satellite Networks, Ltd.*, 2009 WL 803382, at \*6 (E.D.N.Y. Mar. 25, 2009) (including late-filed claims as part of a settlement). Accordingly, Plaintiffs respectfully request that the Court approve the 4,879 valid and properly-documented claims as listed in Exhibits B-1 and B-2 to the Kimball Declaration.

The Court should also enter an Order directing that no claims postmarked or submitted online after May 1, 2024, or any responses to deficiency and/or rejection notices received after June 14, 2024, be included in the distribution. Kimball Declaration ¶¶25, 38(d). To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at \*4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and . . . the matter must be terminated.'");

3

*Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action").

### B.   Deficient and Ineligible Claims

To be eligible for a payment from the proceeds of the Settlement, Settlement Class Members must submit a Claim Form with adequate supporting documentation. *See* Preliminary Approval Order ¶19. Likewise, Settlement Class Members must evidence transactions that result in a Recognized Loss under the Court-approved Plan of Allocation. *See* Stipulation, Ex. A-1 ¶7. If a Claim Form was determined to be deficient or ineligible, Epiq sent a Deficiency Notice to the claimant (in the case of paper Claim Forms) or sent a Transaction Report (in the case of Electronic Claims) describing the defect(s) or condition(s) of ineligibility of the Claim Form and advising what, if anything, was necessary to cure the defect(s) in the Claim Form. Kimball Declaration ¶18, 20. A sample Deficiency Notice is attached as Exhibit A to the Kimball Declaration. *Id*. ¶18 To date, Epiq has sent 1,671 Deficiency Notices and sent Transaction Reports to 23 filers who submitted 10,103 deficient or ineligible Electronic Claims. *Id*. ¶¶18, 20.

#### 1.   No Disputed Claims

Epiq received seventeen (17) requests for Court review of the administrative determination made by Epiq. *Id*. ¶23. In an attempt to resolve the issues without the Court's intervention, Epiq contacted all of the claimants requesting Court review in order to answer their questions, explain Epiq's determination of the claim's status, and facilitate the submission of missing information or documentation, where applicable. *Id*. As a result of these efforts, all 17 requests for Court review were either withdrawn or were rendered moot by the curing of the deficiency. *Id*.

#### 2.   Rejected Claim Forms

Epiq recommends the complete rejection of 17,403 claims. *Id*. ¶30. The reasons for rejection are the following:

4

(a) 5,918 Claim Forms had no eligible purchases during the Class Period;

(b) 5,583 Claim Forms did not result in a Recognized Loss pursuant to the Court-approved Plan of Allocation;

(c) 388 Claim Forms had uncured conditions of ineligibility;

(d) 26 Claim Forms were duplicates; and

(e) 5,488 Claim Forms were withdrawn or voided by request.

*Id.* ¶31. A list of these claims is attached as Exhibit B-3 to the Kimball Declaration.

As part of its due diligence in processing the claims, Epiq also conducted a Questionable Claim Filer search of all claims filed in the Settlement. *Id.* ¶29. Epiq maintains a database of known questionable filers which contains names, addresses, and aliases of individuals who have been investigated by government agencies for fraudulent claim filing, as well as the names and contact information compiled from previous settlements that Epiq has administered where fraudulent claims were received. *Id.* The database for the Settlement was searched for all individuals identified in the Questionable Claim Filer Database. *Id.* In addition, all of Epiq's claim processors are trained to identify any potentially inauthentic documentation when processing claims, including for claims submitted by claimants not previously captured in the database as Questionable Claim Filers. *Id.* Processors are instructed to flag claims as Questionable Claims and route them to the Project Manager and Securities Team for review. *Id.* One (1) claim was located, and rejected, as a result of these searches. *Id.* The claimant has not disputed the rejection of the claim. *Id.*

III.     **PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND**

Pursuant to the Preliminary Approval Order, "[a]ll funds held by the Escrow Agent shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to

5

the Stipulation and Plan of Allocation and/or further order(s) of the Court." Dkt. No. 67-1 ¶31. The Court's Order and Final Judgment provides that "Class Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation." Dkt. No. 79-1 ¶11. Further, pursuant to the Stipulation, "[t]he Claims Administrator shall allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants." Stipulation, Ex. A-1 ¶7. The Plan of Allocation sets forth the formula for calculating each claimant's Recognized Loss. *Id.* The Plan of Allocation was approved by the Court in the Order and Final Judgment. *See* Dkt. No. 79-1 ¶¶6, 11.

Lead Counsel now seeks to distribute the Net Settlement Fund to the Settlement Class Members whose 4,879 claims have been accepted as set forth in Exhibits B-1 and B-2 of the Kimball Declaration, in proportion to their Recognized Losses as shown therein. The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, no earlier than six (6) months after the initial distribution, if any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, and if Lead Counsel, in consultation with the Claims Administrator, determine it is cost-effective to do so, the Claims Administrator will conduct a second distribution (the "Second Distribution"). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the initial distribution, after payment of amounts mistakenly omitted from the initial distribution to Authorized Claimants, and after payment of notice and administration expenses (including the estimated costs of such Second Distribution), taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the initial distribution who cashed their distribution checks and would receive at least $10.00 from the

6

Second Distribution. Stipulation ¶8.7; Stipulation, Ex. A-1 ¶7. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until the balance remaining in the Net Settlement Fund is *de minimis* or until Lead Counsel, in consultation with the Claims Administrator, determines additional distributions are no longer economically feasible. *Id*. If at that point any funds remain in the Net Settlement Fund after payment of any further notice and administration costs and taxes, the remaining balance shall be contributed to a non-sectarian, not-for-profit organization identified by Lead Counsel and approved by the Court. *Id.*

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the distribution order. *See In re Top Tankers, Inc. Sec. Litig.*, Order Authorizing

Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y. Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, Order Approving Distribution of Settlement Fund at ¶8, ECF No. 320, Case No. 1:05-md-01695-CM (S.D.N.Y. Sept. 8, 2009).

## V.   RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one year after the final distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the claims and all supporting documentation.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve and enter the [Proposed] Order Granting Plaintiffs' Motion for Distribution of Class Action Settlement Funds submitted herewith.

Dated: June 20, 2024

Respectfully submitted,

**POMERANTZ LLP**
*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Villi Shteyn
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Plaintiffs and for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC

8

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Named Plaintiff and
for the Class*

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Emma Gilmore*
Emma Gilmore

10